UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

J. KRISS and MICHAEL EJEKAM alone and for BAYROCK, MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK CAMELBACK LLC; and E/O ERNEST, E/O JUDIT GOTTDIENER; ERVIN TAUSKY; and SUAN INVESTMENTS

   Plaintiffs,

   v.

BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ; FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA; ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC; AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN; DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS & HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100; BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC; BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100; WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP; ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100; NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;

13-CV-3905

AFFIRMATION AND MEMORANDUM

**INTERIM MOTION *PRO TEMPORE***
**FOR REMAND ON OTHER THAN JURISDICTIONAL GROUNDS**
**IN RESPECT OF THAT NOTICE OF REMOVAL OF JUNE 21, 2013 ECF NO. 8**

**ORAL ARGUMENT WILL BE REQUESTED BY LETTER**

28 U.S.C. §1447, LOCAL R. 6.3, IND. R. III(B)

**FREDERICK M. OBERLANDER**
**LAW OFFICE OF FREDERICK M. OBERLANDER, PC**
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Telephone: (212) 826-0357
Facsimile: (212) 202-7624
Email:  fred55@aol.com

*Counsel for Plaintiffs*

**RICHARD E. LERNER**
**LAW OFFICE OF RICHARD E. LERNER, PC**
255 West 36th Street
New York, NY 10018
Telephone: (917) 584-4864

Email:  richardlerner@msn.com

*Co-Counsel for Plaintiffs*

# PRELIMINARY STATEMENT

On June 7, 2013, AUSA Jessica Hu, SDNY Civil Division, representing Todd Kaminsky, purported to remove this action from New York Supreme Court, where it had been commenced by filing a Notice of Removal in this courthouse, then filing the Notice with the state court.

On July 8, 2013, Plaintiffs asked for a ruling they had dismissed Kaminsky from the state court case two days earlier, June 5, Hu's Notice was a nullity, and the case never left state court.

On July 16, 2013, this Court ruled that Hu's removal was ineffective in that Plaintiffs' June 5 voluntary dismissal had been effective and he was no longer in the state court case on June 7.

On June 21, 2013, Defendant Sater filed removal papers, thus for the first time actually removing this case from New York Supreme Court.

On July 8, 2013 Plaintiffs transmitted a pre-motion letter to Sater advising him of their intent to move for remand on grounds including lack of subject matter jurisdiction.

On July 16, 2013, this Court issued a scheduling order requiring Plaintiffs' motion to remand be submitted by July 30. ECF No. 19. But, 28 USC §1447 requires a motion to remand on grounds *other than* lack of jurisdiction be made within 30 days of the filing of the Notice of Removal, and as, while not jurisdictional, it is mandatory and can't be extended by court order, and as it isn't clear that some of Plaintiffs' objections to the removal would not fall under that "other than jurisdictional" category, in caution Plaintiffs file this motion to remand on *other than* jurisdictional grounds, with the intent of amending it on or before July 30, 2013 (or alternatively filing a second motion to remand on jurisdictional grounds on or before said date). *As this motion is to preserve the dates and consists solely of the previous pre-motion letter, to convert said letter into a motion on other than jurisdictional grounds, we ask the Court not consider, and opposing counsel save time and not respond to, this motion until it is amended (or the alternative equivalent, of a second motion on jurisdictional grounds is submitted) by July 30, 2013.*

1

# MOTION TO REMAND
# ON OTHER THAN JURISDICTIONAL GROUNDS

The burden to **establish** the basis for removal is on the removing defendant[1]. For example, where based on diversity, the defendant must **establish**, not merely assert, diversity and amount. And for example where, as here, based on federal officer jurisdiction, 28 U.S.C. §1442, the defendant must **establish**, not merely assert, that *with respect to the act* **complained of**, the **operative facts** pleaded in the state court initial pleading, he did the act as a federal officer within the scope of his duty and has a colorable federal defense.

Often, a defendant addresses this burden readily, as the claims and operative facts in the state court initial pleading make the situation clear, for example addresses on a summons establish diversity, or claims in the complaint allege the defendant was a federal officer acting in the scope and the federal defense is clear.

But sometimes everything necessary to establish removal **isn't** clear. In this Circuit that's typical when a defendant removes a state action where there is no complaint, only a summons with notice. As the Court is aware, a summons with notice is not a pleading; **it contains no claims and no operative facts**. And while the Second Circuit has held that a summons with notice **can** be an initial pleading for removal purposes, it's **only** where it is intelligently ascertainable, **definitively**, from the summons with notice that the action *is* removable. Not *might be removable*, or *probably will be removable*, or *one day could be removable*, but *is removable*. For example, in *Whitaker v. Am. Telecasting*, 261 F.3d 196 (2d Cir. 2001), the court held that where a state action had been commenced by a summons with notice, and defendant served with it, but didn't remove on diversity for months, until after receipt of a complaint much later, removal was nevertheless timely because, as diversity could not have been

---

[1] The Court has an independent duty to investigate jurisdiction even if Plaintiff doesn't contest removal. *Moore*.

definitively ascertained from the summons with notice in the case, for removal purposes **the summons with notice was not the initial pleading, the subsequent complaint was**.

The same situation can occur without a summons with notice, with a traditional complaint from which it's impossible to establish removability. Then, removal cannot occur until, if at all, until a complaint is served from which a defendant **can** establish grounds. In *Nixon v. O'Callaghan*, 392 F. Supp. 1081 (SDNY 1975), plaintiff filed a complaint in state court alleging that a provision in a trust plan was unreasonable in light of a certain federal regulation. The court held that the mere fact that the federal regulation was the standard the complaint used to claim the provision was unreasonable did not create a federal question, and that even if the complaint *could* have pleaded a federal question, possibly violation of that regulation as a federal cause of action, it *didn't*, or at least it couldn't be definitively said that it did, as the complaint simply alleged that the provision in the trust plan was "unreasonable" in light of the regulation so the complaint could be read as having alleged only a state court claim of breach of fiduciary duty.

Thus, in the instant case, an adequate Notice of Removal would have to point to statements in the Summons with Notice which **unequivocally** set provide intelligently ascertainable **definitive, unambiguous** notice that Sater **is** to be sued for acts taken as a federal officer in the scope of duty to which he has a federal defense. **There are no such statements thus removal was improper and cannot be sustained.**

For example, the Summons with Notice describes fraud *in connection with* concealment of Sater's conviction, but says nothing about what if any fraud **Sater** will be charged with. Assume – as is the case – Sater's attorneys knowingly submitted falsified evidence of a non-existent threat in federal court proceedings before EDNY Judges Glasser and Cogan to try to keep his case concealed. That is statutory fraud actionable against them under New York law, Jud. Law §487, a state law claim, and

3

Sater, as the client in whose interest they perpetrated the fraud, *a fortiori* as he no doubt knew of and assisted in it, will be vicariously liable under §487 by the state law of agency. That's fraud *in connection with* the concealment, fits the description in the summons with notice, but is not fraud *by* the concealment of his conviction, which he says in his Notice is what we're really claiming and so is the basis for removal. How would that be removable? *It wouldn't.*

Another example: The Summons with Notice lists "unjust enrichment" as a possible cause of action against Sater in a subsequent complaint (*there is no requirement in New York law that any complaint filed after a summons with notice must include all possible claims noticed therein*). But it doesn't say a thing about a claim that will or might be made. He doesn't get to imagine what such a claim, if any might be, but that's exactly what he does, admitting in his Notice there's no such claim in the Summons with Notice but insisting that whatever any claim turns out to be, Sater will have federal officer removal jurisdiction in respect of it.

Not so. In early 2008, after *The New York Times* outed him in December 2007, Sater created a trust for his wife and children, transferred his membership interests in Bayrock into it[2], then had the trust flip them to Bayrock for a seven-figure sum. We will claw that back by charging that he did so as a fraudulent transfer, to place those assets out of the reach of his stock fraud and Bayrock victims, who are creditors under state law, as that is unjust enrichment under state law. So if we had explicitly pleaded that in a complaint now, instead of just noticed the possibility of it, how would that make the case removable? *It wouldn't.*

---

[2] In testimony before Judge Glasser June 21, 2010, Sater perjured himself, denying he was a member (equity owner of membership interests) of Bayrock, a limited liability company, testifying he was a member, than at a signal from his attorney back-pedaling, saying by member, he didn't mean *member* but meant "someone at the firm," denying ownership in Bayrock. His attorney then, Kelly Moore of Morgan Lewis, suborned it, as she later admitted she knew 2 years earlier in 2008 of the trust and transfer of *membership interests* into it thus had to know of his *membership*. Again, Sater was not to be sued in the state court action for perjury, Kelly Moore and Morgan Lewis were to be sued for subornation, under Jud. Law §487, and Sater would be vicariously liable; we mention to show again one cannot look at that Summons with Notice and definitively determine the case is removable. See page 5.

To complete the didactic, consider Sater's fraud in November 2002, with Tevfik Arif, on Elizabeth Thieriot. Ms. Thieriot is a wealthy, entrepreneur, investor, and philanthropist in San Francisco, California, with homes also in Sands Point, New York. In 2002 she was Tevfik Arif's Sands Point neighbor and rented one of her homes there to Sater for $11,000 per month. She also invested $1,000,000 in Bayrock, in response to an offer and sale of membership interests made to her by Sater and Arif, both controlling members.

She soon regretted both, as she was wrongfully deprived of distributions (dividends) in respect of her Bayrock investment and wrongfully deprived of rent in respect of her lease. She sued and won for both.

Now understand: Plaintiffs have *never* said Sater is liable for concealing his conviction, and they never said he is liable for "failing to publicize it," which is what his Notice of Removal claims Plaintiffs are saying. *Concealment is not a crime. Concealment is not a civil wrong. Rather, it is <u>wrongful</u> concealment, concealment of a material fact in the face of a duty to disclose it, that is a crime and a civil wrong.*

So unless the lease application, if any, Thieriot gave Sater at the inception of his lease asked him to disclose prior convictions, and we assume it didn't, Sater had no obligation to disclose to her, *as his landlady*, that he was hiding a racketeering conviction predicated securities fraud and money laundering.

But when he offered and sold Thieriot a $1M investment in Bayrock, *that* triggered state and federal obligations of disclosure to her, *as his investor*, of material facts, and his conviction was *per se* material.

Two concealments of the same conviction at the same time to the same woman, one legal, the other not. That is the paradigm with which to see that even if Sater's fantasies about eventual claims he thinks will come in a complaint not yet written are to be given credence today in respect of

5

which he may remove today, those claims won't charge *concealment* of his conviction, but the *wrongful concealment* of his conviction.

*The Second Circuit confirmed this paradigm controls, swatting away another identically situated cooperator's identical attempts to justify his continuing crimes and frauds predicated on the identical wrongful concealment of his "sealed" conviction.* In *U.S. v. Gushlak*, 03-CR-00833 (EDNY). Gushlak, like Sater, engaged in a pump-and-dump stock fraud similar to Sater's. Gushlak, too, like Sater cooperated and Gushlak, too, like Sater, had his case hidden for a decade. When he was finally sentenced in November 2010, Judge Garaufis sentenced him to 6 years' imprisonment and a $25M fine (plus $17M in restitution) because he found Gushlak had used the "sealing" of his case to continue to defraud, taking advantage of its secrecy to get away with *wrongfully concealing* his conviction from his partners and investors (Judge Garaufis also found a fraudulent conveyance in, yes, Gushlak's transferring assets into a trust for his wife and children to put them out of the reach of his victims). *And Gushlak, too, tried to get away with the same defense Sater is: "I had to commit concealment fraud because the cooperation agreement made me." Judge Garaufis, no doubt aware that all cooperation agreements prohibit the commission of crime so could not be twisted in some bizarre way to be interpreted to authorize it, said such excuse could not be heard unless Gushlak established he had asked the government what to do with respect to concealments that would be wrongful, and had been told to go right ahead and commit the frauds anyway.* See pg.6. The Second Circuit, recognizing the difference between cooperator concealment, which *may* be legal, and cooperator *wrongful concealment*, which is not, affirmed, *U.S. v. Gushlak*, 495 Fed. Appx. 132 (2d. Cir. 2012), holding it proper to deny leniency notwithstanding his service as a cooperator given his continuing *wrongful concealment* frauds, illegally using his "sealed" case to commit fraud. Excerpts from Gushlak's sentencing are on pg. 6.

Nor is it sufficient to parrot the statute saying "I was a federal officer acting under orders." He must give *evidence* to *support* his Notice of Removal, establishing federal officer jurisdiction in the

6

context of the wrongful acts *as stated in the initiating pleading*. So even if we *had* pleaded the preceding four examples in a complaint, to remove on them Sater would have to *establish*, not just assert, that (1) Kelly Moore suborned under his *lawful* orders, which he gave *lawfully* because he was under *lawful* orders from a federal officer controlling him specifically ordering him to tell her to suborn; (2) his current counsel suborned under his *lawful* orders, which he gave lawfully because he was under *lawful* orders from a federal officer controlling him specifically ordering him to tell them to suborn; (3) he transferred assets, for no consideration, for his wife and children to evade his creditor-victims because he was under *lawful* orders from a federal officer controlling him specifically ordering him to fraudulently transfer; and (4) he perpetrated fraud on Thieriot in the offer and sale of that investment without disclosing his racketeering conviction because he was under *lawful* orders from a federal officer controlling him specifically ordering him to defraud her. See n.3.

These are standards he cannot meet, as for one thing, as he himself admits in his Notice, he doesn't know what Plaintiffs' claims will be, *which again compels remand so he can wait for a complaint to find out*. But more important, relatedly, in his Notice of Removal Sater doesn't just assert federal officer removal, he asserts *sovereign immunity* and common law immunity as federal defenses, confusing the two (The federal government has plenary sovereign immunity, so cannot be sued without its consent. Non-employee federal officers do not. They may *inherit* it but its scope depends on its source, *viz*. either common or statutory law.)

<u>Common law immunity</u> is for *discretionary* acts within the scope of employment. *Westfall v Erwin*, 484 U.S. 292. Sadly for Sater, as noted, to prove he is the "federal officer" he says he is, he has to prove he was under such direct control with respect to claims asserted – "I *had* to defraud Thieriot and banks and the condominium buyers, the government told me to do it, *I had no choice*" – that under

7

*Westfall* his acts complained of, *would be nondiscretionary by definition*[3]. Thus, the mere existence of his claim of federal officer status, without Westfall proceedings, see next, *requires the Court deny the existence of a federal defense of immunity for the acts complained of* (and if the Court first says, "What acts specifically?" the Court proves the initial point we keep repeating, *that here must be remand to wait for a complaint to find out*).

Statutory immunity, the Westfall Act, 28 USC §2679, would immunize a federal employee for non-discretionary acts within the scope, but to use it, Sater must present the Court a "Westfall Certification" signed by the Attorney General certifying he was, in respect of the acts complained of, acting within the scope. Had he done so, Supreme Court and Second Circuit precedent would have entitled Plaintiffs to an evidentiary hearing with discovery to challenge the certification. *Without* it, Plaintiffs are entitled to no less, and the only course open to Sater was ask the AG for a certificate, be denied, then petition *state* court *before* removal for a scope hearing, at which point *only* the AG could remove the case prior to it. 18 USC §2679(d). So, to the extent the petition can be said to ask for scope determination, there must be remand for evidentiary hearing and discovery, *or the Court must deny his claim of a federal immunity defense for discretionary acts*.

Lastly, we ask the Court find that as *immunity* and *property* as presented here are mutually zero sum. *The Court must remand as it lacks the jurisdiction to adjudicate whether he has the immunity he says he does.* Property rights, including for purposes of Fifth Amendment takings, are bundles of sticks, the biggest stick being the right to exclusive dominion and control, to exclude others from possession or use. When the government condemns such a right, snaps that stick in two, it must compensate the owner for loss of the right.

---

[3] In "failure to warn" cases, *cf.* "failure to tell Thieriot I'm a convicted RICO fraudfeasor," The Second Circuit requires a defendant invoking the government contractor, *cf.* federal officer, defense to show "the…federal contract includes warning requirements that significantly conflict with those that might be imposed by state law"; "whatever warnings accompanied a product resulted from *a determination of a government official*," and "the Government itself 'dictated' the content of the warnings." *In re Asbestos Litig.*, 897 F.2d at 630 (2d. Cir. 1995) [Emph. Add.]

Money is property for takings purposes, as is a chose in action. By claiming the right, again in our hypothetical claims as there are no real ones, to take money from people like Thieriot as a federal officer by wrongful concealment **and** claiming sovereign immunity from suit for damages on account of it, there is a taking, and not just of her money: that condemnation of her chose in action against him for damages is a taking. When the government condemns A's right to sue B so B may steal from A with immunity for the public good of enhancing cooperator recruitment, as Sater says applies here, the government has taken a chose in action from A and must pay for it. If and when real claims in a real complaint are analyzed against a *proper* removal, and Sater proffered evidence to establish his status and immunity, this court, if it found his defense of immunity valid, would be finding a taking, and this court can't do that, only the Court of Claims can. 28 USC §1491. (And it would be a very big taking indeed, as it would make the government liable compensation to everyone defrauded of their choses, including every victim from whom the case was hidden.

Relatedly, Plaintiffs never had the chance to elect whether to proceed federally in district court or in the court of claims, but it is their right to so elect. 28 USC §1500 prohibits parallel litigation based on the same operative facts, and as long as this court holds this case in removal it prohibits Plaintiffs from suing for any taking in the Court of Claims. Again, equity and justice command remand so that Plaintiffs can choose between their federal theories – taking or constitutional tort – if any and then accordingly choose their forum.

In closing, we ask the Court note that a Notice of Removal is subject to Fed. R. Civ. P. 11, so must be in good faith. Yet in March 2010, Sater gave testimony in a New York state case, *Bernstein v. Bayrock*, which was filed in motion submissions and is admissible here to impeach, and when asked if he had been convicted of a crime other than assault with a deadly weapon (for which he was convicted before the racketeering) Sater refused to answer on Fifth Amendment grounds,

waiving privilege by saying his refusal was in reliance on advice of his counsel Leslie Caldwell of Morgan Lewis, former senior AUSA in EDNY.

*Quaere*, if Sater thought had the right, the *duty*, to lie to everyone even by wrongfully concealing his conviction, because of his cooperation agreement, officer status, etc. **and** thought he had sovereign immunity, why didn't he think he had the right to lie to the attorney taking his deposition? What's the difference between lying about a conviction in securing a billion dollars of bank loans (applications usually subscribed under oath) and lying about a conviction in a deposition? *None.* Unless he admits obstruction for fraudulent claim of the privilege, if he took the Fifth rather than truthfully say he had a conviction, *how could he (and Leslie Caldwell) have thought telling the truth would have incriminated him unless he (and Caldwell) thought all those prior concealments of it were not lawful, were not authorized, but were indeed crimes?*

The Supreme Court has held that one removing claiming federal officer sovereign immunity loses Fifth Amendment privilege. "In invoking…protection of…federal court…a federal officer abandons his right to refuse to testify...to the extent of *disclosing in his application for removal all the circumstances known to him out of which the prosecution arose* ... He must establish…this defense by the allegation of his petition for removal...to make the case…so the court may be …advised and the state may take issue by a motion to remand." [He] should be *candid, specific and positive* in explaining…the *transaction…of which he has been indicted, and…his relation to it was confined to his acts as an officer.*" Colorado v. Syms, 286 US 510 (1932).

The Notice of Petition comes nowhere near this, and if Sater says it's because we made no claims, *that brings us full circle to required remand until we do.* (And if he declines to answer any question at scope or other hearing on Fifth Amendment grounds, Plaintiffs will seek contempt and

imprisonment until he answers all questions about his wrongful concealments if and when charged in a complaint. *He can't duck this any longer.)*

\* \* \* \* \*

Pursuant to 28 USC §1746 the undersigned attest under penalty of perjury that the following inclusions of transcript excerpts are true to the originals as cited.

Plaintiffs request this motion, when taken up and considered, together with any opposition and reply thereto, after it has been amended, supplemented, or replaced, as the case may be, be granted, and the case remanded, and request the Court award all other relief as may be just and proper.

\* \* \* \* \*

Respectfully submitted,

/s/ Frederick M. Oberlander  /s/ Richard Lerner
Counsel for Plaintiffs         Co-Counsel

```
A.   I'm sorry.  No, it was actually in his job description to
assist and help the members of Bayrock and the requests they
made of him which may have been whatever request they were
making of him.  In fact, many of the things he was creating
were in electronic form, so there may have been a time when he
was asked to do something in a tech capacity, yes.
Q.   You just referred to yourself as a member of Bayrock?
A.   I referred to myself -- yes, I was.
         MS. MOORE:   Objection, your Honor.
         THE COURT:   Overruled.
Q.   Please clarify, were you an owner of Bayrock?
A.   No.
Q.   What did you understand yourself to be when you referred
to yourself as a member of Bayrock?
A.   A member is one of the people who was at the firm.
```

Case 1:03-cr-00833-NGG   Document 32   Filed 02/11/11   Page 13 of 29

*But defendant was far from a model cooperator. There are substantial and troubling indications that defendant regarded the secrecy of his cooperation not as a necessary protection of his future usefulness to the government but as a license to continue to deceive those with whom he conducted business.*

*In a brazen example of defendant's efforts to take advantage of the secrecy of his cooperation, the Website of defendant's private investment bank continued to display for several years after defendant pleaded guilty the name and logo of GlobalNet as a former client. GlobalNet was one of three companies whose stock defendant pleaded guilty to pumping and dumping in 2003. Defendant was only able to use the name and logo of the company to entice future clients because the information charging him with fraud in relation to GlobalNet was kept under seal.*

*The government has also provided the court with direct evidence of defendant's false statements to a business associate, Patrick Kealy, about the defendant's history and involvement with U.S. law enforcement agencies.*

Contemporaneous with his lies to Kealy, the government represents that the defendant pressured the New York County's District Attorney's office not to put him on the witness stand in a case that was then set for trial. While reluctance to testify is not unknown among witnesses in general, it should have been one of defendant's most important goals as the opportunity to testify would provide the government with compelling evidence to include in a Section 5K1.1 substantial assistance motion that defendant believed the government would make on his behalf.

*The court can only infer from this behavior that defendant was less concerned with this court's sentencing decision than he was with presenting himself from being outed as a convicted felon and fraudster because of the obvious negative impact that information would have on his business activities.*

*While defendant argues that he lied to Kealy because he believed he was obligated to do so by his cooperation agreement, he freely admits that he did not at any time seek the government's advice on how to handle the inquiry which prompted his lie.*

*Indeed, defendant's sentencing submissions indicate that keeping secret the fraudulent schemes that are the basis for this conviction has always been a central goal of defendant's cooperation. Defendant notes in his sentencing memorandum that he pressed the government to quickly release him from jail following his initial arrest so that others against whom defendant could cooperate would not learn of the U.S. Attorney's office's investigation into his conduct.*

*It seems apparent that defendant has always been more interested in keeping his cooperation secret than the government has.*

*Defendant's behavior has also been inconsistent with the appropriate relationship between cooperator and his law enforcement handlers.*

*[D]efendant earned a fortune speculating on penny energy stocks mere months after telling the government that he lacked the means to pay a relatively small forfeiture judgment, but failed to tell the government this until after he funneled what now amounts to $50 million into an irrevocable trust he established for the benefit of his children. Defendant admitted to the court that even though he knew he would be subject to a fine and an order of restitution as a result of a guilty plea, defendant did not consult with the government before placing these substantial assets into a trust which is potentially beyond the reach of this court's legal process. Defendant never approached the government to ask how he might use his sudden wealth to pay restitution to the victims of his criminal conduct.*

These and other facts compel the court to question whether defendant is truly remorseful for his criminal conduct and appreciates the seriousness of the offenses he committed. While defendant is entitled to some credit for his assistance to law enforcement, he is not situated similarly to Mr. Appel, one of his coconspirators in the GlobalNet fraud, who received an extremely lenient sentence as a result of his extensive cooperation. The court finds that a stiffer sentence is warranted for, among other reasons, the history and characteristics of this particular defendant, the need to protect the public from further crimes by the defendant, and to promote respect for the law.

12