# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

J. KRISS and MICHAEL EJEKAM alone and for BAYROCK,
MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING
STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK
CAMELBACK LLC; and E/O ERNEST, E/O JUDIT GOTTDIENER;
ERVIN TAUSKY; and SUAN INVESTMENTS

      Plaintiffs,

      v.

BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ;
FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA;
ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC;
AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN;
DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID
GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS &
HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL
DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC;
BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR
SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100;
WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE
LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER
MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP;
ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100;
NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;

**13-CV-3905 (LGS)**

**AFFIRMATION
AND
MEMORANDUM**

---

### MOTION FOR REMAND
### AND FOR ENLARGEMENT OF TIME
### IN RESPECT OF THAT NOTICE OF REMOVAL OF JUNE 21, 2013 ECF NO. 8

### ORAL ARGUMENT WILL BE REQUESTED BY LETTER

### 28 U.S.C. §1447, FED. R. CIV. P. 6, LOCAL R. 6.3, IND. R. III(B)

---

**FREDERICK M. OBERLANDER**
**LAW OFFICE OF FREDERICK M. OBERLANDER, PC**
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Telephone:   (212) 826-0357
Facsimile:    (212) 202-7624
Email:      fred55@aol.com

*Counsel for Plaintiffs*

**RICHARD E. LERNER**
**LAW OFFICE OF RICHARD E. LERNER, PC**
255 West 36th Street
New York, NY 10018
Telephone:   (917) 584-4864

Email:      richardlerner@msn.com

*Co-Counsel for Plaintiffs*

<u>**PROCEDURAL HISTORY**</u>

**The Ineffective Kaminsky Removal**

On June 7, 2013, AUSA Jessica Hu, SDNY Civil Division, representing Todd Kaminsky, purported to remove this action from New York Supreme Court, where it had been commenced by filing a Notice of Removal in this courthouse, then filing the Notice with the state court.

On July 16, 2013, this Court ruled that Hu's removal was ineffective in that Plaintiffs' June 5 voluntary dismissal had been effective and he was no longer in the state court case on June 7.

**The Effective Sater Removal**

On June 21, 2013, Defendant Sater filed removal papers, thus for the first time actually removing this case from New York Supreme Court.

On July 16, 2013, this Court issued a scheduling order requiring Plaintiffs' motion to remand be submitted by July 30. ECF No. 19. That was subsequently extended through August 1.

But, as 28 USC §1447 requires a motion to remand on grounds *other than* lack of jurisdiction be made within 30 days of the filing of the Notice of Removal, and as, while not jurisdictional, it is mandatory and can't be extended by court order, in caution Plaintiffs filed an interim this motion to remand on *other than* jurisdictional grounds, with the intent of amending it or supplementing it on or before July 30 (August 1) with jurisdictional objections. This is that amendment or supplement.

In addition, Plaintiffs request an enlargement of time to file and serve a Complaint until disposition of this motion (obviously only if by denial). It is unfair to require Plaintiffs to file and serve a Complaint here, which in service fees alone would cost thousands of dollars, only to have to do it all over again upon any remand, *a fortiori* as such service and filing would be nugatory *ab initio* upon a finding of lack of jurisdiction here, **and a complaint filed after removal cannot be used to determine subject matter jurisdiction, which must be judged at the time of removal**.

1

Having said all that, we note that the Court's suggestion at the July 16, 2013 conference that Plaintiffs file a complaint here to resolve the forum issue is not without merit. It cannot resolve the question whether removal was proper, but it can do the next best thing by compelling remand.

Unfortunately, we have simply not the time to have prepared such a complaint in the last two weeks, given all the other filings, thus while we can do so in the future, we must file this motion to comply with the Court's scheduling order and moreover it seems pointless to file a complaint here at all if the Court is inclined to remand in the first place, particularly given that Defendants will not likely meet their evidentiary burden in opposition.

*****

The Court is assured this is well within the 25 page limit for a Memorandum of Law in that it combines the affirmations of fact which had they been separate would have reduced the page count herein substantially below 25

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Colorado v. Syms*, 286 US 510 (1932) ........................................................................................25

*Discovision v. Fuji Photo*, 07-CV-6348 (PAC), 2007 U.S. Dist. LEXIS 96904 (SDNY 2007) .................12

*Ehrenspeck v. Spear, Leeds & Kellogg*, 389 F. Supp. 2d 485 (S.D.N.Y. 2005) ...............................18

*Finley v. United States*, 490 U.S. 545 (1989) ...............................................................................7

*Great Northern Ry. Co. v. Alexander*, 246 U.S. 276 (1918) ...........................................................8

*Hill v. Delta Intern. Mach. Corp.*, 386 F. Supp. 2d 427 (S.D.N.Y. 2005) ....................................18

*In re Asbestos Litig.*, 897 F.2d at 630 (2d Cir. 1995) .................................................................23

*In re MTBE Prods. Liab.*, 488 F.3d 112 (2d Cir. 2007) ...............................................................7

*Nixon v. O'Callaghan*, 392 F. Supp. 1081 (SDNY 1975) ...........................................................12

*Pullman v. Jenkins*, 305 U.S. 534 (1939) ...................................................................................7

*R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) .........................18

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) .........................................................7

*Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043 (2d Cir. 1991) ...............................................7

*U.S. v. Gushlak*, 03-CR-00833 (EDNY) ....................................................................................21

*U.S. v. Gushlak*, 495 Fed. Appx. 132 (2d Cir. 2012) .................................................................21

*Westfall v Erwin*, 484 U.S. 292 (1988) ....................................................................................22

*Whitaker v. Am. Telecasting*, 261 F.3d 196 (2d Cir. 2001) .........................................................5

**Statutes**

28 USC §1447 .............................................................................................................................4

28 USC §1746 ...........................................................................................................................26

28 USC §2679 ...........................................................................................................................23

**Rules**

Fed. R. Civ. P. 11 .....................................................................................................................24

This is a motion for remand on grounds of improper removal, most especially because the removal was predicated on a Summons with Notice and based on that Summons with Notice, as determined as of the date of removal, June 21, 2013, the Court lacked subject matter jurisdiction. The test for improper removal is not the same as the general test for remand. The test for improper removal is, again, made with respect to the pleadings as they existed the time the petition for removal was filed. Nothing that happens after that is relevant. There was or was not subject matter jurisdiction *then*.

**If there was not** subject matter jurisdiction, the removal was jurisdictionally defective and nothing that happens after that in this forum, for example not the filing of a complaint, or an amended complaint, or anything else, makes a difference for the simple reason this Court never had jurisdiction and anything other than deciding its own jurisdiction at the time of removal is a legal nullity.

**If there was** jurisdiction, the removal was not jurisdictionally defective (though that may leave other than jurisdictional defects). In that case, the jurisdiction that was present can be removed, at which time the lack of jurisdiction mandates the remand even without motion. 28 USC §1447(c).

In other words, Plaintiffs retain the plenary authority to remove any subject matter jurisdiction that might have existed at removal, thus requiring the Court to remand. And once remanded, again as of plenary right, Plaintiffs retain the authority to amend their pleading to assert federal question claims. Thus this Court's concern for remand followed by a possible pleading that allows removal again is misplaced, for that is absolutely Plaintiffs' right, certainly of course in the absence of fraud, to add and subtract claims that bring in and remove federal question jurisdiction all along the path of the case

In short, federal jurisprudence affords Plaintiffs, and only Plaintiffs, the right to change their pleading throughout the course of litigation, even if that changes the removability or remandability of the case. The Supreme Court has said so, establishing what we call **the rule of <u>embedded optionality</u>**.

## ARGUMENT I

## THE VOLUNTARY-INVOLUNTARY RULE OF EMBEDDED OPTIONALITY

*If the Court needs to see a subsequent Complaint to decide whether the initiating Summons with Notice was removable, by definition it wasn't; nor would such a process be lawful, as removal must be judged by the Summons with Notice as it existed at the time of removal. Even if it were constitutional, removal would still be Plaintiffs' to command, as Supreme Court authority would afford Plaintiffs the absolute right to file a Complaint devoid of federal question, compel remand, then later in state court in their sole discretion amend to include a federal question and make the case (first) removable at that time, a doctrine federal jurisprudence calls the voluntary-involuntary rule and we call **the rule of embedded optionality**.*

**Removal at the Start of a Case Is Based on an Initiating Document Which Usually Is a Complaint But *Can* be a Summons With Notice, a Proposition, Frankly, of no Real Importance Here Whatsoever**

If we adopt the terminology that removal is based on a state court pleading, but where the term "pleading" is defined by federal removal jurisprudence, not state law, then yes, the law in this Circuit is that an action commenced in a New York State court by Summons with Notice can be removed if, and **only** if, that Summons with Notice is a pleading according to that definition. *Whitaker v. Am. Telecasting*, 261 F.3d 196 (2d Cir. 2001), held that a Summons with Notice can be such a pleading.

Who cares. As we explain, all that does is dictate that we apply to a Summons with Notice the same test we apply to a complaint, *viz.* "Is the case removable based on the contents of that paper?"

Please take no offense. This isn't flippant. Quite the opposite. We are about to develop a syllogistic reasoning for removability, and the label "Summons with Notice" is irrelevant to the process, which begins and ends with the question, "What does the paper in question say?"

Of course, as a Summons with Notice has no operative facts and makes no claims, it's likely that most of the time – and the case at bar is one of those times – a Summons with Notice will not provide a basis for removal, but that doesn't change the fact that it's a trivial special case of the general proposition that cases are or are not removable based on the pleading in effect at the time in question.

**The General Paradigm**

(1) A case is initiated by plaintiff's filing a pleading. Call the time when the case is initiated time zero, or $t_0$, and the initial pleading $P_{t=0}$, "the pleading in effect at time $t = 0$," or $P_0$.

(2) Call the time when the case is over, by final judgment, discontinuance, etc., time $T$.

(3) As time flows from the start of the case, $t_0$, to its end, $T$, there can be arbitrary many times along the way where new (typically amended) pleadings are filed, which we can visualize:

**Time** $\quad = \quad t_0, \quad t_1, \quad t_2, \quad t_3, \quad \ldots., \quad T\text{-}1, \quad T$
**Pleading** $\quad = \quad P_0, \quad P_1, \quad P_2, \quad P_3, \quad \ldots., \quad P_{T\text{-}1}$

This means that at any given time $t$ there is one pleading $P_t$ controlling the case, and that pleading controls from time $t$ until time $t+1$, when the next pleading is filed (obviously there is no pleading filed at time T, the end of the case, so the last pleading is at $T\text{-}1$).

(4) Whether a case is removable at any given time $t$ is determined by the pleading $P_t$.

(5) As the case progresses from t=0 through t=T, it may go in and out of removability as the pleadings change from P0 through PT-1, visually:

**Time** $\qquad = \quad t_0, \quad t_1, \quad t_2, \quad t_3, \quad \ldots., \quad T\text{-}1, \quad T$
**Pleading** $\quad = \quad P_0, \quad P_1, \quad P_2, \quad P_3, \quad \ldots., \quad P_{T\text{-}1}$
**Removable** $= \quad Y, \quad N, \quad N, \quad Y, \quad \ldots., \quad N$

(6) The right to control removability, to have it come and go, is the plenary right of plaintiff (of course subject to rules for amending, for example whether by right or by leave).

(7) By simply considering a New York State court action Summons with Notice to be a P0 as set forth in this paradigm (it's a pleading, so a "P," and can only be made at time t0), the issue of "is an action commenced by Summons with Notice" essentially disappears as a special case and is resolved by step (4) as would the question "is an action commenced by (complaint, petition, order to show cause, etc.) removable, as we next demonstrate, simply by ensuring that the test applied at step (4) is robust enough to analyze all such papers.

**The Supreme Court Set This Paradigm**

The Supreme Court has held, "The right to remove…[is] to be determined according to the plaintiffs' pleading at the time of the petition for removal." *Pullman v. Jenkins*, 305 U.S. 534 (1939).

In the instant case the question is determined according to the Summons with Notice (as it existed on June 21, 2013, the time of removal). Yes, Plaintiffs can file a complaint tomorrow, but all that would do is set a new time $t_1$ at and after which that complaint, $P_1$, would determine removability, were the case still in state court, and remandability, as it is not, but "**would** the action be removable or remandable because of $P_1$" is not now the question before the Court, which is rather, "**was** the action removable by $P_0$." So, with respect, the Court's suggestion at the July 16, 2013 conference

> THE COURT: Okay. So let me ask Mr. Oberlander. Why not file a complaint so that we can fully address the remand issue once, and if it belongs in state court, let it go to state court? [Tr. at pg. 22]

may be seen as error with respect to the question of the removal. Yet, while that's true, in fact it helps demonstrate that removal was improper for want of jurisdiction, and does solve the problem:

It helps demonstrate the removal was improper because the very need to put the suggestion demonstrates the inability to determine removability from the Summons $P_0$. Even with a "federal officer" removal under §1442, which we discuss in more detail *infra*, if the Court can't determine removability from $P_0$, by definition it isn't removable. This is a Court of limited jurisdiction, and

> "[D]ue regard for the rightful independence of state governments requires that federal courts scrupulously confine their own jurisdiction to the precise limits which the statute has defined."[1]
>
> "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute[s] narrowly, resolving any doubts against removability."[2]

---

[1] *Finley v. United States*, 490 U.S. 545 (1989).

[2] *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043 (2d Cir. 1991) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)); see *In re MTBE Prods. Liab.*, 488 F.3d 112 (2d Cir. 2007).

And it solves the problem, because while it doesn't determine removability at $t_0$, by establishing removability at $t_1$, though technically moot because the case is already here, it also establishes **remandability** at $t_1$, which is good enough. The **remand** statute, 28 USC 1447(c), says [Emph. add.]:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). **If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, <u>the case shall be remanded</u>**.

While not immediately obvious, this does solve the problem in a perfectly lawful way by resolving the issue in favor of remand by recognizing we could always compel same by a complaint:

In *Great Northern Ry. Co. v. Alexander*, 246 U.S. 276 (1918), the Supreme Court said:

> [I]n the absence of a fraudulent purpose to defeat removal, **the plaintiff may, by the allegations of his complaint, determine the status with respect to removability of a case, arising under a law of the United States, when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case nonremovable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, *in invitum,* order, but solely upon the form which the plaintiff, by his voluntary action, shall give to the pleadings in the case as it progresses towards a conclusion**.

They don't come any clearer than that. Together with the Court's statements (including in *Great Northern*, 246 U.S. at 281, as well as in *Pullman*, 205 U.S. 534, *supra*) that removability at commencement [and so obviously at any time **t**, not just at $t_0$] is determined by $P_t$, and not by any subsequent $P_{t+i}$ and not by anything in the petition for removal], this is proof the General Paradigm we stated two pages ago is indeed the law of the matter as set forth by the Supreme Court, that removability may be created and destroyed from pleading to pleading at the sole discretion of Plaintiffs and that whatever given pleading controls the case at the time is the only factor determining removability (or remandability) at that time. This is **the rule of embedded optionality**.

The Court of course is no doubt familiar with the concept of a financial option, which gives the holder today the right, at some future time **t,** but not the obligation, to buy or sell an asset at some price. Such a methodology of analysis, that is, the analysis of the indefeasible right possessed today to make a certain decision in the future is readily expanded into general use to model the value and optimal strategy of obtaining in advance the right to make certain decisions in the future.

The Court may have personal experience with such a right in the form of an embedded option. If the Court has a mortgage, then the Court has a circumstance where, embedded within that mortgage is the right, but not the obligation, to prepay it, even if at a penalty, to refinance at a lower rate.

The presence of dual sovereignty, and concomitant dual court system, with claims which can only be brought in federal courts, claims that can only be brought in state court, and claims that can be brought in either, with the right of Plaintiffs to decide which forum, or **combination** of forums, in which to present which claims, when to take advantage of abstention by federal courts for a state court to resolve a significant issue of state law, when not to, and the right to plan litigation strategy today knowing that in the future as their case progresses they will remain possessed of the right to dynamically alter jurisdiction and with it their forum by amending pleadings to suit their legitimate litigation strategy is an exemplar of **embedded optionality** present in every case for the benefit of plaintiffs, one many litigators may not understand or use well but one that is there nonetheless.

And it highlights an embedded optionality that must **not** be allowed, the right of defendants to game the system by insisting there was federal jurisdiction from removal until the day before final judgment then for the first time deciding there wasn't all along, or even attempting to first raise the issue on appeal. That risk, that the entire case will proceed on a "free look" for defendants until they decide things are bad and "opt out" is precisely why this Court must not wind up in a long complex case that may turn out to be an entire nullity if jurisdiction isn't absolutely certain *ab initio.*

Accordingly then, we respectfully suggest to the Court that its optimal strategy is to remand, for the following reasons, given that it would **have** to remand pursuant to §1447 were we to file a complaint devoid of federal question and therefore might as well remand based on an assumed or hypothetical such filing as it will save time and expense:

<u>First</u>, as noted more fully below there is no question subject matter jurisdiction either didn't exist at removal or the question cannot be decided from the Summons and thus jurisdiction didn't exist as a matter of law given that inability to decide, which must be resolved in Plaintiffs' favor.

<u>Second</u>, Defendants will not be prejudiced. The moment a complaint is filed after remand they will have their own right to exercise their own option to remove (if there be federal jurisdiction).

<u>Third</u>, just as Plaintiffs will always have the right to amend, subject to applicable rules, to add or remove federal jurisdiction, Defendants will always have the right to remove, so the Court's understandable concern about efficiency and avoiding "ping pong" cannot be resolved, it's an inherent risk built into the system, put there by the Supreme Court 100 or more years ago.

<u>Fourth</u>, failure to remand will very much prejudice Plaintiffs, who are now barred from filing an action in Court of Claims but would not be barred were the case remanded, and we note that such a filing would not then prevent Defendants from removing afterwards back to this Court.

*****

In closing this first section, we address the remaining issue of how to tell whether a Summons with Notice, as a pleading $P_0$ for this, and only this, precise purpose, was removable, given that there are no operative facts or claims in such a paper and that it must be unconstitutional to force upon Plaintiffs who wrote the Summons as of right not intending their statements to be operative facts or claims that they have to now live with them as such.

We believe the answer may best be presented, at least first, Socratically:

## Hypothetical I

P sues D in state court, alleging in his complaint that for years D ran his wholly owned small business, a New York corporation, through dozens of related acts of fraud, one of which bilked P of money, suing D for compensatory and punitive damages in common law fraud.

D removes on federal question, arguing that as P's allegations state a cause of action in RICO (noting that, though no predicate act is pled, D sent mail to P as part of the alleged scam), while the only claim in the complaint is in state law there's no guarantee P won't one day amend to plead RICO so the case is removable now. D's theory is, **if it might be removable one day, it is removable now**.

*Quaere*: Is D's removal valid? Or is it at best premature, more likely incompetent, even in bad faith, but in all events invalid with the court thus lacking jurisdiction to do anything but remand.

## Hypothetical II

Same as above, but instead of a complaint, P initiates the state court action by Summons with Notice, thus only noticing, not pleading, a claim of fraud against D because for years D ran his wholly owned small business, a New York corporation, through dozens of related acts of fraud, etc…

*Quaere*: If D removes on his same theory that **if it might be removable one day, it is removable now**, but now there aren't even claims, a Summons with Notice is not a pleading, is the removal valid?

Obviously the answer must in both cases be "No," for the reasons exhaustively stated, *viz.* the mere fact that Plaintiffs retain the option to later plead claims that raise federal questions does not mean that a present pleading that contains no such claims (or claim-equivalents, in a Summons with Notice) therefore is removable on account of that embedded option, in fact it means the contrary.

Again there is nothing special about the issue of ambiguity or uncertainty as to federal question jurisdiction just because a document is a Summons with Notice; if anything, the ambiguity is enhanced by the absence of actual claims and operative facts.

To see this, consider *Nixon v. O'Callaghan*, 392 F. Supp. 1081 (SDNY 1975), where plaintiff filed a complaint in state court alleging that a provision in a trust plan was unreasonable in light of a certain federal regulation. The court held that the mere fact that the federal regulation was the standard the complaint used to claim the provision was unreasonable did not create a federal question, and that even if the complaint **could** have pleaded a federal question, possibly violation of that regulation as a federal cause of action, it didn't, **or at least it couldn't be definitively said that it did**, as the complaint simply alleged the provision in the trust plan was "unreasonable" in light of the regulation so the complaint could be read as having alleged only a state court claim of breach of fiduciary duty.

Similar issues come up all the time in patent royalty disputes, where plaintiff files in state court claiming the dispute is simple contract law, while defendant insists on removing claiming that the dispute presents federal questions of patent. Plaintiff almost invariably prevails. See for example *Discovision v. Fuji Photo*, 07-CV-6348 (PAC), 2007 U.S. Dist. LEXIS 96904 (SDNY 2007).

So there is nothing new about latent, or not-so-latent, ambiguities, nor anything that confines them to presence only in removal cases based on Summonses with Notice.

On that note, now consider the controlling case in this Circuit on removals based on Summonses, *Whitaker v. Am. Telecasting*, 261 F.3d 196 (2d Cir. 2001). There, plaintiff commenced a state court action by Summons with Notice and served it, thus starting the 30-day removal clock, which defendants ignored, followed months later by service of a complaint, which defendants did not ignore but responded to by a petition to remove on diversity grounds. Plaintiff moved for remand, arguing that the Summons with Notice showed the case removable on diversity and thus the 30 days had long passed. The Second Circuit disagreed, holding that no, it was not ascertainable that the case was removable from the Summons with Notice, thus the 30-day clock didn't start until the second "pleading," the service of the complaint, as only from that pleading was removability ascertainable.

(Unfortunately that court screwed up the math terminology, holding that lack of ability to ascertain from it made the Summons not even a pleading at all, so the complaint was the initial pleading for removal purposes, in other words holding that the complaint was $P_0$; of course the better view is to consider that the Summons was as always the initial pleading for removal purposes $P_0$ but that it was not until the second pleading for removal purposes, $P_1$, that there was a **removable** pleading.)

Finally, consider this last hypothetical, which should bring the point home.

## Hypothetical III

$D_1$ manufactures drones under contract to the Army. $D_2$ manufactures video cameras under contract to a movie studio. $D_1$ and $D_2$ lease their products to their contracting parties, regaining possession at the lease end. $D_1$ and $D_2$ are 50:50 owners of $D_1D_2$ LLC, a New York limited liability company 50:50 member managed. $D_1$ and $D_2$ contribute their off-lease drones and cameras to $D_1D_2$, which sells them at retail; they are popular with hobbyists, who fly the drones against each other in competition, installing the cameras in the drones for remote views of the aerial maneuvers and to detect "hits" from onboard lasers so they can stage dogfights and keep score.

One day a drone with a camera being piloted by a hobbyist in one of those dogfights crashes into a school bus carrying 12 year old violin prodigies *en route* to give a sold-out concert, badly breaking their wrists and badly breaking the Amatis and Stradivarii on loan to the them for the concert.

On learning of the crash, $D_1$ and $D_2$, as its managers, cause $D_1D_2$ to distribute to themselves, as members, all its assets, even causing $D_1D_2$ to draw down its lines of credit and distribute that, too, then they establish *inter vivos* trusts for their wives and kids and put that cash into those trusts as gifts.

P, one of the kids, initiates a direct and derivative state court action by Summons with Notice against $D_1$, $D_2$, $D_1D_2$, the pilot who crashed, the pilots of the other planes, the trusts, the trustees, and the wives and kids, giving notice in the Summons of the preceding facts and her belief the crash wouldn't have occurred but for defective manufacture of the drones and cameras. P includes products liability and unjust enrichment among her coming causes of action.

P's theory on products liability is that while $D_1$ **may** have a federal contractor defense, assuming P eventually sues D1 on that basis, which P hasn't decided to do yet anyway, but $D_2$ certainly does not, nor does $D_1D_2$, and as its managers $D_1$ and $D_2$ are personally and vicariously liable for its products liability, and may be as well as its owners if it was too thinly capitalized per *Deep Rock*, too, if not for the damage to P's violin at least for P's personal injury under the applicable Restatement of Torts provisions.

P's theory on unjust enrichment is, first, transfer without consideration into trusts after the crash is a fraud on P and the other kids as creditor claimants against $D_1$ and $D_2$, so may be directly recaptured; second, as $D_1D_2$ became insolvent upon the crash due to prospective claims against it, its distributions to $D_1$ and $D_2$ are also fraudulent so a derivative action in behalf of $D_1D_2$ to "claw back" the distributions should lie. NY LLC Law §508 (member liable to company for excess distribution).

P's theory on derivative standing is $D_1D_2$'s insolvency immediately upon impact, let alone after asset stripping, gives P standing to sue in its behalf by trust fund doctrine.

However, P doesn't put any of this reasoning in the Summons with Notice because, for one thing, P doesn't have to; nor does P state whom P will sue for products liability, or on what theory of liability, direct or vicarious, or what P means by unjust enrichment; all this, again, because P doesn't have to.

$D_1$ removes on federal contractor grounds, assserting a federal defense to a claim of products liability based on the original manufacture (but doesn't address possible other, including vicarious, bases for its products liability) and claiming that by unjust enrichment P "must have" meant some theory that $D_1$ shouldn't have been permitted to retain the drones, for which $D_1$ will also claim federal defense; $D_1$ isn't even clear on what that means, or why $D_1$ knows, $D_1$ just "knows."

*Quaere*: Is $D_1$'s removal valid because $D_1$'s theory of what P's subsequent complaint **might** look like is plausible? **Can** the court wait for P's complaint to decide? Or is the fact that the complaint **could** state only claims for which $D_1$ wouldn't have contractor defense dispositive that the removal was invalid and the court lacks jurisdiction until, if ever, a complaint states federal question claims?

The answer(s) are now seen obvious. **Embedded optionality belongs to Plaintiffs**. **Defendants do not get to decide how those options will be exercised, <u>which in the case of a Summons means how the Plaintiffs will eventually plead in the subsequent complaint</u>**.

The creation and existence of ambiguity in a Summons, where it isn't at all clear exactly who will get sued for what precisely, only generally, and there are many possibilities, is a matter of right under New York law. The right to use statements of facts and causes of action that <u>could</u>, <u>but need not</u>, produce a subsequent pleading that raises a federal question is also an embedded optionality, more formally the embedded optionality, the right, exclusive to Plaintiffs, if you will, to instantiate (removing the ambiguity) a Summons with Notice $P_0$ by a subsequent pleading $P_1$ that does not raise federal questions even though a different subsequent pleading $P_1$ could have.

Think of these as what we call "chooser" options, meaning the right, vested today, to at some time in the future buy any one, but only one, of a set of two or more different assets, or in our case the right, vested today, to at some time in the future elect one, but only one, of a set of two or more different pleadings *qua* Complaints $P_0$ consistent with the pleading *qua* Summons with Notice $P_1$.

By all that Supreme Court precedent, it must be the case that where the subsequent complaint can "go either way" as to presenting a federal question, then (1) until Plaintiffs elect it is inchoate; and (2) so long as it remains inchoate there is no federal jurisdiction.

Again that does not mean that at time t1 of the subsequent pleading, the Complaint, then the question of federal jurisdiction at time t0 is resolved.

Rather, it means that the existence of the unresolved issue, the ambiguity, the optionality, the multiple possible instantiations, call it what you will, that **the existence of that uncertainty as to federal jurisdiction is and must be the absence of federal jurisdiction as a matter of law**.

So no, the court cannot wait and see, as the presence of the need to exercise the option to be able to determine subject matter jurisdiction itself determines the issue *ab initio* with the answer "No."

**The <u>indeterminacy</u> of a Summons with Notice, as in the case at bar, <u>is</u> the absence of federal jurisdiction**. **There is no superposition of federal-and-not-federal jurisdictional states. If it's not a clear picture of federal jurisdiction it's not federal jurisdiction. <u>There is a difference between a shaky or out-of-focus photograph and a snapshot of clouds and fog banks</u>**.[3]

---

[3] That is, a Summons with Notice is not *Schrodinger's Cat*. To wit:

A cat is put in a chamber, along with this device (secured against direct interference by the cat): in a Geiger counter, there is a tiny bit of radioactive substance, so small that perhaps in the course of the hour, one of the atoms decays, but also, with equal probability, perhaps none; if one does decay, the counter tube discharges, and through a relay releases a hammer that shatters a small flask of hydrocyanic acid. If one has left this entire system to itself for an hour, one would say the cat still lives if no atom has decayed, and is dead if one has. The psi-function of the system would express this by having the cat simultaneously living and dead mixed or smeared out in equal parts, waiting until direct observation by opening the box to resolve it either way.

Thus, in the instant case, an adequate Notice of Removal would have to point to statements in the Summons with Notice which **unequivocally** and provide intelligently ascertainable **definitive, unambiguous** notice that Sater **is** to be sued for acts taken as a federal officer in the scope of duty to which he has a federal defense. **There are no such statements thus removal was improper and cannot be sustained.**

For example, the Summons with Notice describes fraud **in connection with** concealment of Sater's conviction, but says nothing about what if any fraud **Sater** will be charged with. Assume – as is the case – Sater's attorneys knowingly submitted falsified evidence of a non-existent threat in federal court proceedings before EDNY Judges Glasser and Cogan to try to keep his case concealed. That is statutory fraud actionable against them under New York law, Jud. Law §487, a state law claim, and Sater, as the client in whose interest they perpetrated the fraud, *a fortiori* as he no doubt knew of and assisted in it, is vicariously liable under §487 by the state law of agency. That's fraud **in connection with the concealment**, fits the description in the summons with notice, but is not fraud **by** the concealment of his conviction, which he says in his Notice is what we're really claiming and so is the basis for removal, and it isn't even a fraud he himself committed (we remind the Court that federal officer removal is personal to the "officer" in question; his lawyers don't inherit it from him). Defendants don't get to decide what we'll sue for consistent with the Summons. **We** do.

Another example: The Summons with Notice lists "unjust enrichment" as a possible cause of action against Sater in a subsequent complaint (**there is no requirement in New York law that any complaint filed after a summons with notice must include all possible claims noticed therein**). But it doesn't say a thing about a claim that will or might be made. He doesn't get to imagine what such a claim, if any is going to be, but that's exactly what he does, admitting in his Notice there's no

such claim in the Summons with Notice but insisting that whatever any claim turns out to be, Sater will have federal officer removal jurisdiction in respect of it.

Not so. In early 2008, after *The New York Times* outed him in December 2007, Sater created a trust for his wife and children, transferred his membership interests in Bayrock into it[4], then had the trust flip them to Bayrock for a seven-figure sum. We will claw that back by charging that he did so as a fraudulent transfer, to place those assets out of the reach of his stock fraud and Bayrock victims, who are creditors under state law, as that is unjust enrichment under state law. So if we had explicitly pleaded that in a complaint now, instead of just noticed the possibility of it in a Summons with Notice, and if anything ambiguously so, how would that make the case removable? **It wouldn't**.

---

[4] In testimony before Judge Glasser June 21, 2010, Sater perjured himself, denying he was a member (equity owner of membership interests) of Bayrock, a limited liability company, testifying he was a member, than at a signal from his attorney back-pedaling, saying by member, he didn't mean *member* but meant "someone at the firm," denying ownership in Bayrock. His attorney then, Kelly Moore of Morgan Lewis, suborned it, as she later admitted she knew 2 years earlier in 2008 of the trust and transfer of *membership interests* into it thus had to know of his *membership*. Again, Sater was not to be sued in the state court action for perjury, Kelly Moore and Morgan Lewis were to be sued for subornation, under Jud. Law §487, and Sater would be vicariously liable; we mention to show again one cannot look at that Summons with Notice and definitively determine the case is removable and therefore it is not. See transcript excerpts below the signature block.

When the party seeking remand challenges the jurisdictional predicate for removal, the removing party bears the burden of establishing its right to a federal forum by "**competent proof.**"[5] **If the removing party fails to meet this burden, the action will be remanded to the state court from which it was removed**[6]. [Emph. Add.]

We deny and refute every factual statement made in the petition as to federal officer status and related defense, including statements as to the presence or content of any court orders or instructions from anyone anywhere in or connected with the federal government, including without limitation any federal judge or magistrate, any probation officer, any FBI agent, any United States attorney or assistant or other subordinate thereto, with the following single exception: We admit that in or about November 1998 Sater signed a cooperation agreement by its terms facially obligating him to keep the existence of his cooperation secret, at least without prior approval.

First, we argue that the failure to include any such evidence, rather than mere statement, is a failure to establish a prima facie case for removal and by itself compels this court remand.

Otherwise, we argue that the burden of production and proof for removal remains with Mr. Sater, and in any event we demand Mr. Sater prove by **evidentiary submission** the existence, content, and nature of all matters (besides the existence of the cooperation) of fact which are the subject of the above-denied statements in the petition, as well as any other.

We reserve the right in our reply to refute the evidence (obviously we can't go first as we are moving to remand and the burdens of proof and production are on respondent, who in any event has the exclusive care, custody, and control of things and access to those in and out of government he knows but we do not), including without limitation by our own responsive evidentiary submission,

---

[5] *Ehrenspeck v. Spear, Leeds & Kellogg*, 389 F. Supp. 2d 485 (S.D.N.Y. 2005) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979))

[6] *Hill v. Delta Intern. Mach. Corp.*, 386 F. Supp. 2d 427 (S.D.N.Y. 2005).

and reserve the right to request discovery or reference or both to resolve such disputes.

Moreover we argue that the submissions must prove not that he was "told" not to disclose his cooperation, but that he was told not to disclose his conviction (and thus must explain how that could be given that his conviction was made public by the government in a March 2, 2000 press release that entered the Congressional Record soon thereafter) and that he was told not to disclose such at all times through and including the date of "unsealing" his criminal docket, 98-CR-110, in or about August 2012 (which again should be fascinating as we are prepared to counter with evidentiary submissions including judicial documents made public almost a decade ago by the government which reveal the fact of his conviction and his 2009 sentencing transcript reveals that he was to be sentenced many times since 2004 but continued at his own request to ask for adjournments for five more years, so we argue that once he began asking for adjournments then no order on him was ever the kind of order supporting federal officer jurisdiction as it was encountered by his voluntary act).

Moreover we argue that the submissions must prove that he was without discretion to disobey any of these orders and that indeed he did not, for example that he never told anyone at Bayrock about his hidden conviction, or anyone else save his lawyers, for example by his affidavit to that effect.

Moreover we argue that the submissions must prove that he was ordered not to disclose these things in the context – known to the person ordering him – that his failure to disclose would be wrongful, either civilly or criminally or both, and that the person ordering him to fail to disclose not only knew this but had the legal authority to order him to commit those wrongful acts.

For example, consider Sater's fraud in November 2002, with Tevfik Arif, on Elizabeth Thieriot. Ms. Thieriot is a wealthy, entrepreneur, investor, and philanthropist in San Francisco, California, with homes also in Sands Point, New York. In 2002 she was Tevfik Arif's Sands Point neighbor and rented one of her homes there to Sater for $11,000 per month. She also invested

$1,000,000 in Bayrock, in response to an offer and sale of membership interests made to her by Sater and Arif, both controlling members. She soon regretted both, as she was wrongfully deprived of distributions (dividends) in respect of her Bayrock investment and wrongfully deprived of rent in respect of her lease. She sued and won for both.

Now understand: Plaintiffs have *never* said Sater is liable for concealing his conviction, and they never said he is liable for "failing to publicize it," which is what his Notice of Removal claims Plaintiffs are saying. Concealment is not a crime. Concealment is not a civil wrong. Rather, it is **wrongful** concealment, concealment of a material fact in the face of a duty to disclose it that is a crime and a civil wrong.

So unless the lease application Thieriot gave Sater at inception of his lease asked him to disclose prior convictions, and we assume it didn't, he had no obligation to disclose to her, **as his landlady**, he was hiding a racketeering conviction for securities fraud and money laundering. But when he offered and sold Thieriot a $1M investment in Bayrock that triggered state and federal obligations of disclosure to her, **as his investor**, of material facts, and his conviction was *per se* material.

Two concealments of the same conviction at the same time to the same woman, one legal, the other not. That is the paradigm with which to see that even if Sater's fantasies about eventual claims he thinks will come in a complaint not yet written are to be given credence today in respect of which he may remove today, those claims won't charge **concealment** of his conviction, but the **wrongful concealment** of his conviction.

This is what Sater must prove that in respect of which he has a federal officer status (ordered to defraud her) and defense (sovereign immunity).

**The Second Circuit confirmed this paradigm controls, swatting away another identically situated cooperator's identical attempts to justify his continuing crimes and frauds**

**predicated on the identical wrongful concealment of his "sealed" conviction.** In *U.S. v. Gushlak*, 03-CR-00833 (EDNY). Gushlak, like Sater, engaged in a pump-and-dump stock fraud similar to Sater's. Gushlak, too, like Sater cooperated and Gushlak, too, like Sater, had his case hidden for a decade. When he was finally sentenced in November 2010, Judge Garaufis sentenced him to 6 years' imprisonment and a $25M fine (plus $17M in restitution) because he found Gushlak had used the "sealing" of his case to continue to defraud, taking advantage of its secrecy to get away with **wrongfully concealing** his conviction from his partners and investors (Judge Garaufis also found a fraudulent conveyance in, yes, Gushlak's transferring assets into a trust for his wife and children to put them out of the reach of his victims; they all do it, the EDNY cooperators who are let loose for ten years or more before anyone including their victims knows of their convictions, if they ever do). **And Gushlak, too, tried to get away with the same defense Sater is: "I had to commit concealment fraud because the cooperation agreement made me." Judge Garaufis, no doubt aware that all cooperation agreements <u>prohibit</u> the commission of crime so could not be twisted in some bizarre way to be interpreted to <u>authorize</u> it, said such excuse could not be heard unless Gushlak established he had asked the government what to do with respect to concealments that would be wrongful, and had been told to go right ahead and commit the frauds anyway**. The Second Circuit, recognizing the difference between cooperator concealment, which *may* be legal, and cooperator *wrongful concealment*, which is not, affirmed, *U.S. v. Gushlak*, 495 Fed. Appx. 132 (2d Cir. 2012), holding it proper to deny leniency notwithstanding his service as a cooperator given his continuing **wrongful concealment** frauds, illegally using his "sealed" case to commit fraud. Excerpts from Gushlak's sentencing are below the signature block.

And again, §1442 jurisdiction is personal to Sater. No matter what he proffers, his former attorney at Morgan Lewis, Kelly Moore, is no federal officer (even if she were Sater has no standing

to assert such in her behalf). So when in or about November 2010 Kelly Moore suborned, it had better be proven that she did so under Sater's **lawful** orders to do so, which he gave **lawfully** because he was under **lawful** orders from a federal officer controlling him specifically ordering him to tell her to suborn; similarly that in 2012 his current counsel suborned under Sater's **lawful** orders, which he gave lawfully because he was under **lawful** orders from a federal officer controlling him specifically ordering him to tell them to suborn; and so on, other examples including that he must prove he transferred assets, for no consideration, for his wife and children to evade his creditor-victims because he was under **lawful** orders from a federal officer controlling him specifically ordering him to fraudulently transfer; and that he perpetrated fraud on Thieriot in the offer and sale of that investment without disclosing his racketeering conviction because he was under **lawful** orders from a federal officer controlling him specifically ordering him to defraud her.

These are standards he cannot meet, as for one thing, as he himself admits in his petition for removal (or Notice of Removal), **he doesn't know what Plaintiffs' claims will be, <u>which again compels remand so he can wait for a complaint to find out</u>**. But more important, relatedly, in his Notice Sater doesn't just assert federal officer removal, he asserts **sovereign immunity** and common law immunity as federal defenses, confusing the two (The federal government has plenary sovereign immunity, so cannot be sued without its consent. Non-employee federal officers do not. They may **inherit** it but its scope depends on its source, *viz.* either common or statutory law.)

<u>Common law immunity</u> is for **discretionary** acts within the scope of employment. *Westfall v Erwin*, 484 U.S. 292 (1988). Sadly for Sater, as noted, to prove he is the "federal officer" he says he is, he has to prove he was under such direct control with respect to claims asserted – "I **had** to defraud Thieriot and banks and the condominium buyers, the government told me to do it, **I had no choice**"

– that under *Westfall* his acts complained of **would be nondiscretionary by definition**[7]. Thus, the mere existence of his claim of federal officer status, without *Westfall* proceedings, see next, **requires the Court deny the existence of a federal defense of immunity for the acts complained of** (and if the Court first says, "What acts specifically, the Summons with Notice is unclear?" the Court proves the point we keep repeating, **there must be remand to wait for a complaint to find out***).*

Statutory immunity, the Westfall Act, 28 USC §2679, would immunize a federal employee for non-discretionary acts within the scope, but to use it, Sater must present the Court a "Westfall Certification" signed by the Attorney General certifying he was, in respect of the acts complained of, acting within the scope. Had he done so, Supreme Court and Second Circuit precedent would have entitled Plaintiffs to an evidentiary hearing with discovery to challenge the certification. **Without** it, Plaintiffs are entitled to no less, and the only course open to Sater was ask the AG for a certificate, be denied, then petition **state** court **before** removal for a scope hearing, at which point **only** the AG could remove the case prior to it. 28 USC §2679(d). So, to the extent the petition can be said to ask for scope determination, there must be remand for evidentiary hearing and discovery, **or the Court must deny his claim of a federal immunity defense for discretionary acts.**

Lastly, we ask the Court find that as **immunity** and **property** as presented here are mutually zero sum. **The Court must remand as it lacks the jurisdiction to adjudicate whether he has the immunity he says he does.** Property rights, including for purposes of Fifth Amendment takings, are bundles of sticks, the biggest stick being the right to exclusive dominion and control, to exclude others

---

[7] In "failure to warn" cases, *cf.* "failure to tell Thieriot I'm a convicted RICO fraudfeasor," The Second Circuit requires defendants invoking government contractor, *cf.* federal officer, defense show "the…federal contract includes warning requirements that significantly conflict with those that might be imposed by state law"; "whatever warnings accompanied a product resulted from **a determination of a government official**," and "the Government itself 'dictated' the content of the warnings." *In re Asbestos Litig.*, 897 F.2d at 630 (2d Cir. 1995). [Emph. Add.]

from possession or use. When the government condemns such a right, snaps that stick in two, it must compensate the owner for loss of the right.

Money is property for takings purposes, as is a chose in action. By claiming the right to take money from people like Thieriot as a federal officer by wrongful concealment **and** claiming sovereign immunity from suit for damages for it, there is a taking, not of her money, but condemnation of her chose in action against him for damages is a taking. When the government condemns A's right to sue B so B may steal from A with immunity for the public good of enhancing cooperator recruitment, as Sater says applies here, the government has taken a chose in action from A and must pay for it. If and when real claims in a real complaint are analyzed against a **proper** removal, and Sater proffered evidence to establish his status and immunity, this court, if it found his defense of immunity valid, would be finding a taking, and this court can't do that, only the Court of Claims can. 28 USC §1491. (And it would be a very big taking indeed, as it would make the government liable compensation to everyone defrauded of their choses, including every victim from whom the case was hidden.)

Relatedly, Plaintiffs never had the chance to elect whether to proceed federally in district court or in the court of claims, but it is their right to so elect. 28 USC §1500 prohibits parallel litigation based on the same operative facts, and as long as this court holds this case in removal it prohibits Plaintiffs from suing for any taking in the Court of Claims. Again, equity and justice command remand so that Plaintiffs can choose between their federal theories – taking or constitutional tort – if any and then accordingly choose their forum.

In closing, we ask the Court note that a Notice of Removal is subject to Fed. R. Civ. P. 11, so must be in good faith. Yet in March 2010, Sater gave testimony in a New York state case, *Bernstein v. Bayrock*, which was filed in motion submissions and is admissible here to impeach, and when asked if he had been convicted of a crime other than assault with a deadly weapon (for which he was convicted

before the racketeering) Sater refused to answer on Fifth Amendment grounds, waiving privilege by saying his refusal was in reliance on advice of his counsel Leslie Caldwell of Morgan Lewis, former senior AUSA in EDNY.

*Quaere*, if Sater thought had the right, the **duty**, to lie to everyone even by wrongfully concealing his conviction, because of his cooperation agreement, officer status, etc. **and** thought he had sovereign immunity, why didn't he think he had the right to lie to the attorney taking his deposition? What's the difference between lying about a conviction in securing a billion dollars of bank loans (applications usually subscribed under oath) and lying about a conviction in a deposition? *None*. Unless he admits obstruction for fraudulent claim of the privilege, if he took the Fifth rather than truthfully say he had a conviction, **how could he (and Leslie Caldwell) have thought telling the truth would have incriminated him unless he (and Caldwell) thought all those prior concealments of it were not lawful, were not authorized, but were indeed crimes?**

The Supreme Court has held that one removing claiming federal officer sovereign immunity loses Fifth Amendment privilege. "In invoking…protection of…federal court…a federal officer abandons his right to refuse to testify…to the extent of **disclosing in his application for removal all the circumstances known to him out of which the prosecution arose** … He must establish…this defense by the allegation of his petition for removal…to make the case…so the court may be …advised and the state may take issue by a motion to remand." [He] should be **candid, specific and positive in explaining…the transaction…of which he has been indicted, and…his relation to it was confined to his acts as an officer**." *Colorado v. Syms*, 286 US 510 (1932).

The Notice of Petition comes nowhere near this, and if Sater says it's because we made no claims, **that brings us full circle to required remand until we do**. (And if he declines to answer any question at scope or other hearing on Fifth Amendment grounds, Plaintiffs will seek contempt

and imprisonment until he answers all questions about his wrongful concealments if and when charged in a complaint. **He can't duck this any longer**.*)*

\* \* \* \* \*

Pursuant to 28 USC §1746 the undersigned attest under penalty of perjury that the following inclusions of transcript excerpts are true to the originals as cited.

Plaintiffs request this motion, when taken up and considered, together with any opposition and reply thereto, after it has been amended, supplemented, or replaced, as the case may be, be granted, and the case remanded, and request the Court award all other relief as may be just and proper.

\* \* \* \* \*

Respectfully submitted August 02, 2013,

/s/ Frederick M. Oberlander        /s/ Richard Lerner
Counsel for Plaintiffs        Co-Counsel

A.   I'm sorry.  No, it was actually in his job description to assist and help the members of Bayrock and the requests they made of him which may have been whatever request they were making of him.  In fact, many of the things he was creating were in electronic form, so there may have been a time when he was asked to do something in a tech capacity, yes.

Q.   You just referred to yourself as a member of Bayrock?

A.   I referred to myself -- yes, I was.

      MS. MOORE:   Objection, your Honor.

      THE COURT:  Overruled.

Q.   Please clarify, were you an owner of Bayrock?

A.   No.

Q.   What did you understand yourself to be when you referred to yourself as a member of Bayrock?

A.   A member is one of the people who was at the firm.

But defendant was far from a model cooperator. There are substantial and troubling indications that defendant regarded the secrecy of his cooperation not as a necessary protection of his future usefulness to the government but as a license to continue to deceive those with whom he conducted business.

In a brazen example of defendant's efforts to take advantage of the secrecy of his cooperation, the Website of defendant's private investment bank continued to display for several years after defendant pleaded guilty the name and logo of GlobalNet as a former client. GlobalNet was one of three companies whose stock defendant pleaded guilty to pumping and dumping in 2003. Defendant was only able to use the name and logo of the company to entice future clients because the information charging him with fraud in relation to GlobalNet was kept under seal.

The government has also provided the court with direct evidence of defendant's false statements to a business associate, Patrick Kealy, about the defendant's history and involvement with U.S. law enforcement agencies.

Contemporaneous with his lies to Kealy, the government represents that the defendant pressured the New York County's District Attorney's office not to put him on the witness stand in a case that was then set for trial. While reluctance to testify is not unknown among witnesses in general, it should have been one of defendant's most important goals as the opportunity to testify would provide the government with compelling evidence to include in a Section 5K1.1 substantial assistance motion that defendant believed the government would make on his behalf.

The court can only infer from this behavior that defendant was less concerned with this court's sentencing decision than he was with presenting himself from being outed as a convicted felon and fraudster because of the obvious negative impact that information would have on his business activities.

While defendant argues that he lied to Kealy because he believed he was obligated to do so by his cooperation agreement, he freely admits that he did not at any time seek the government's advice on how to handle the inquiry which prompted his lie.

Indeed, defendant's sentencing submissions indicate that keeping secret the fraudulent schemes that are the basis for this conviction has always been a central goal of defendant's cooperation. Defendant notes in his sentencing memorandum that he pressed the government to quickly release him from jail following his initial arrest so that others against whom defendant could cooperate would not learn of the U.S. Attorney's office's investigation into his conduct.

It seems apparent that defendant has always been more interested in keeping his cooperation secret than the government has.

Defendant's behavior has also been inconsistent with the appropriate relationship between cooperator and his law enforcement handlers.

[D]efendant earned a fortune speculating on penny energy stocks mere months after telling the government that he lacked the means to pay a relatively small forfeiture judgment, but failed to tell the government this until after he funneled what now amounts to $50 million into an irrevocable trust he established for the benefit of his children. Defendant admitted to the court that even though he knew he would be subject to a fine and an order of restitution as a result of a guilty plea, defendant did not consult with the government before placing these substantial assets into a trust which is potentially beyond the reach of this court's legal process. Defendant never approached the government to ask how he might use his sudden wealth to pay restitution to the victims of his criminal conduct.

These and other facts compel the court to question whether defendant is truly remorseful for his criminal conduct and appreciates the seriousness of the offenses he committed. While defendant is entitled to some credit for his assistance to law enforcement, he is not situated similarly to Mr. Appel, one of his coconspirators in the GlobalNet fraud, who received an extremely lenient sentence as a result of his extensive cooperation. The court finds that a stiffer sentence is warranted for, among other reasons, the history and characteristics of this particular defendant, the need to protect the public from further crimes by the defendant, and to promote respect for the law.