UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

JODY KRISS, *et al.*,

               Plaintiffs,

        -against-

BAYROCK GROUP LLC, *et al.*,

               Defendants.

------------------------------------------------------------

13 Civ. 3905 (LGS)

**Defendant Felix Sater's Memorandum of Law in Opposition to Plaintiffs' Motion for Remand and for Enlargement of Time**

BEYS STEIN MOBARGHA & BERLAND LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel.: (646) 755-3600
*Attorneys for Defendant*
  *Felix Sater*

**TABLE OF CONTENTS**

PAGE

INTRODUCTION ..............................................................................................................1

BACKGROUND ..............................................................................................................3

    A.    According to the United States, Felix Sater Was One of Its
           Most Important Cooperating Witnesses Ever................................................3

    B.    Procedural Background of Related Scorched-Earth Federal Litigation Brought by
           Plaintiffs and Plaintiffs' Attorneys ............................................................5

    C.    Procedural Background and Plaintiffs' Decision to Litigate
           This Action in State Court ..........................................................................12

ARGUMENT ..............................................................................................................13

    A.    Removal Was Proper Under the Federal Officer Removal Statute ........................13

          1.    Sater "Acted Under" the Direction of a Federal Officer or Agency .............14

          2.    Plaintiffs' Claims Have a Causal Nexus to Sater's Actions
               Taken Under the Color of the Direction of a Federal Officer ......................18

          3.    Sater Has Colorable Federal Defenses to Plaintiffs' Claims........................22

    B.    There Is No Valid Basis for Plaintiffs' Request
           for an Enlargement of Time.........................................................................24

CONCLUSION ..............................................................................................................25

Cases

PAGE

*Allen v. Allen*, 291 F. Supp. 312 (S.D. Iowa 1968) ................................................................ 15-16

*Arizona v. Maypenny*, 451 U.S. 232 (1981) .............................................................................. 23

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006) .......................................... 13, 14

*Guarda Farms, Inc. v. Monroe County Legal Assistance Corp.*,
    358 F. Supp. 841 (S.D.N.Y. 1973) ...................................................................................... 13

*Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010) ...................................... 13, 14

*IMFC Prof'l Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*,
    676 F.2d 152 (5th Cir. 1982) ........................................................................................... 22-23

*In re MTBE Prods. Liability Litig.*, No. M21-88, MDL No. 1358(SAS),
    2004 WL 515535 (S.D.N.Y. Mar. 16, 2004) .................................................................... 14-15

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008) .................................................... 14, 15, 23

*Jefferson County v. Acker*, 527 U.S. 423 (1999) ...................................................................... 14

*Kuenstler v. Occidental Life Ins. Co.*, 292 F. Supp. 532 (C.D. Cal. 1968) .............................. 15

*McManus v. McCarthy*, 581 F. Supp. 302 (S.D.N.Y. 1984) ...................................................... 23

*Mesa v. California*, 489 U.S. 121 (1989) ................................................................................. 23

*Nat'l Audubon Soc. v. Dep't of Water & Power of City of Los Angeles*,
    496 F. Supp. 499 (E.D. Cal. 1980) .................................................................................... 22

*People of the State of Colorado v. Maxwell*, 125 F. Supp. 18 (D. Colo. 1954) .......................... 15

*Reiser v. Fitzmaurice*, No. 94 Civ. 7512 (CSH),
    1996 WL 54326 (S.D.N.Y. Feb. 8, 1996) .................................................... 17-19, 23-24

*Roth v. State Univ. of N.Y.*, 61 A.D.3d 476 (1st Dep't 2009) .................................................... 21

*Ryan v. Dow Chemical Co.*, 781 F. Supp. 934 (E.D.N.Y. 1992) .............................................. 14, 18

*State of Oregon v. Cameron*, 290 F. Supp. 36 (D. Or. 1968) .................................................... 16

*State of Texas v. Heaton*, 58 F.2d 656 (N.D. Tex. 1932) .................................15

*State of Texas ex rel. Falkner v. Nat'l Bank of Commerce*, 290 F.2d 229 (5th Cir. 1961) ........ 16-17

*Teague v. Grand River Dam Authority,* 279 F. Supp. 703 (N.D. Okl. 1968)..................................15

*Venezia v. Robinson*, 16 F.3d 209 (7th Cir. 1994)....................................17, 24

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007) .........................................15, 23

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001)....................................19, 21

*Willingham v. Morgan*, 395 U.S. 402 (1969) ....................................2, 13, 22

## Statutes & Rules

Act of Feb. 4, 1815, ch. 31, §§ 7, 8, 3 Stat. 198 ....................................16

18 U.S.C. § 1962 .........................................................................................3

28 U.S.C. § 1442(a)(1) ....................................1, 13, 14, 16, 17, 22, 24

28 U.S.C. § 1447(d) .................................................................................14

N.Y. C.P.L.R. § 305(b)............................................................................21

N.Y. C.P.L.R. § 306-B ..........................................................................2, 24

N.Y. C.P.L.R. § 3012(b)........................................................................2, 24

## Other Authorities

Br. for the United States as Amicus Curiae,
   *Watson v. Philip Morris Cos.*, No. 05-1284 (filed Feb. 2007). ................................16

Defendant Felix Sater ("Sater") submits this memorandum of law in opposition to Plaintiffs' Motion for Remand and for Enlargement of Time. (Dkt. No. 25.)

## **INTRODUCTION**

Having been rebuked by several federal judges for their contemptuous tactics in related litigation and currently under federal investigation for possible criminal contempt, Plaintiffs' attorneys filed this action in state court, in the apparent hope that a new forum will look more kindly on their scorched-earth litigation strategy. While plaintiffs generally have the ability to select the forum in which to bring claims, they may not resist federal jurisdiction when a defendant properly removes a case. Here, Sater has properly removed this action to this Court pursuant to 28 U.S.C. § 1442(a)(1), more commonly referred to as the Federal Officer Removal Statute, because as a cooperating witness Sater worked with prosecutors from the United States Attorney's Offices in the Eastern and Southern Districts of New York and law enforcement agents for over 10 years, providing information that the government has called "of an extraordinary depth and breadth, almost unseen."[1] As part of his duties, Sater was required by federal court orders and agreements with the United States government to keep confidential his conviction and his cooperation with the government.

While Plaintiffs now assert that the Summons with Notice they filed in state court on May 10, 2013, is so hopelessly vague as to prevent Sater and this Court from ascertaining whether removal is appropriate, the truth is that the Summons with Notice is sufficiently specific to support

---

[1] Tr. of Oral Arg. Before Second Circuit (Feb. 14, 2011), Affirmation of Joshua D. Liston ("Liston Aff."), Ex. 1, at 12:11-13.

removal. The crux of Plaintiffs' suit, in their own words, is that "Plaintiffs seek relief against those directly and vicariously responsible for the perpetration of perhaps a billion dollars or more of fraud *based on the illegal concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and subsequent 2009 sentencing . . . .*" (Summons with Notice (Liston Aff. Ex. 2), at 2 (emphasis added)). Those allegations relate directly to the federal court orders and directives to which Sater was subject in connection with his conviction, sentencing, and cooperation. It cannot seriously be argued otherwise.

Moreover, Plaintiffs specifically "seek relief against those directly and vicariously responsible for the fraud in the three years of litigation on dockets 98-CR-1101, 12-MC-150, and 12-MC-557, EDNY, and 10-CV-3959, SDNY." (*Id.* at 3). Plaintiffs' opposition to removal means that they believe that alleged common-law fraud in four federal litigations allegedly perpetrated by a federal cooperating witness who had acted pursuant to federal court orders and federal directives may only be litigated in state court. This is not the law. In opposing removal, Plaintiffs would have this Court ignore the Supreme Court's directive that the Federal Officer Removal Statute be liberally construed in favor of removal to federal court. *See Willingham v.* Morgan, 395 U.S. 402, 407 (1969) ("Th[e] policy [of providing the protection of a federal forum to federal officers] should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).").

Finally, Plaintiffs ask in their brief for an enlargement of time to file and serve a complaint. But no additional time is required or advisable. Under the CPLR, Plaintiffs have 120 days from the time they file a Summons with Notice to serve that document, then, upon demand by Defendants, Plaintiffs have another 20 days to serve a complaint. *See* N.Y. C.P.L.R. §§ 306-B, 3012(b). Plaintiffs have not yet served the Summons with Notice on any defendant. Plaintiffs'

time to serve the Summons with Notice expires on September 7, 2013, and then they will still have at least 20 additional days to file a complaint.   If Plaintiffs cannot find time to prepare and file a complaint almost five months after filing the Summons with Notice, then they should not receive additional time.

## **BACKGROUND**

A.   **According to the United States, Felix Sater Was One of Its Most Important Cooperating Witnesses Ever**

On December 10, 1998, in the U.S. District Court for the Eastern District of New York, Felix Sater (identified in most court papers as John Doe) pleaded guilty, pursuant to a written cooperation agreement, to an information charging him with participating in a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  *See In re Application to Unseal 98 Cr. 1101 (ILG)*, *United States v. Doe*, 12 Mc. 150 (ILG) (decided Aug. 27, 2012), Liston Aff., Ex. 3, at 1.  Sater's cooperation agreement was attached as Exhibit 2 to the Complaint filed by Plaintiffs' counsel in the related litigation, *Kriss et al. v. Bayrock Group LLC*, 10-CV-3959 (LGS) (S.D.N.Y. filed May 10, 2010) ("*Kriss I*") (10-cv-3959, Dkt. No. 1), and is therefore before the court.

The cooperation agreement entered into by Sater and the United States Attorney's Office for the Eastern District of New York required Sater to, among other things, (1) not reveal his cooperation, or any information derived therefrom, to any third party absent prior consent by the government (*id.* ¶ 3(c)); and (2) not commit or attempt to commit further crimes (*id.* ¶ 8).  If Sater cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the cooperation agreement, the government agreed to submit a letter pursuant to

Section 5K1.1 of the United States Sentencing Guidelines that would permit the sentencing court to downwardly depart from the Guidelines range. *Id.* ¶ 6.

Judge Glasser, who accepted the guilty plea, sealed Sater's entire case (the "EDNY Criminal Case") and its docket sheet at Sater's December 10, 1998 guilty plea hearing. A minute entry made on that day by the courtroom deputy states "all documents sealed" and "transcripts sealed," and Judge Glasser has found that the minute entry reflected both the court's grant of the government's oral application to seal, given Sater's cooperation, and the court's determination that sealing was "essential to protect the safety of Doe and narrowly tailored to serve that interest." Liston. Aff., Ex. 3, at 2.

Accordingly, because of the federal government's application to seal his criminal case, Judge Glasser's subsequent sealing order, and his cooperation agreement with the United States Attorney's Office, Sater was required to keep both his conviction and his cooperation confidential.

Following his guilty plea, Sater worked with prosecutors from the United States Attorney's Offices in the Eastern and Southern Districts of New York and law enforcement agents for over 10 years, providing information that the government has called "of an extraordinary depth and breadth, almost unseen." Liston Aff., Ex. 1, at 12:11-13. The details of Sater's cooperation remain under seal today, as the cooperation involved matters of national security.[2]

During his extraordinary service to the federal government, disclosure of Sater's conviction would have revealed his cooperation. Because of the unusually extensive information he provided the government, Sater was not sentenced until eleven years after his guilty plea. Anyone with

---

[2] Plaintiffs are currently appealing Judge Glasser's recent ruling protecting those highly sensitive details from public disclosure (*see* Notice of Appeal, Liston. Aff., Ex. 4), even though those details can have no bearing on the legal issues raised in any of the myriad litigations Plaintiffs' counsel are pursuing.

rudimentary knowledge of the criminal justice system would know that a person who has been convicted but not sentenced for many years was almost certainly a cooperating witness – a fact that would have imperiled Sater and many others caught up in ongoing investigations. That is why, compliance with his cooperation agreement (to say nothing of Judge Glasser's sealing order) required Sater to keep his conviction in confidence as well.

On October 23, 2009, Sater was sentenced to probation and a $25,000 fine. Prior to sentencing, the government – having satisfied itself that Sater cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the cooperation agreement – submitted the Section 5K1.1 letter promised in the cooperation agreement. Liston Aff., Ex. 5, at 7.

**B.      Procedural Background of Related Scorched-Earth Federal Litigation Brought by Plaintiffs and Plaintiffs' Attorneys**

Frederick Oberlander ("Oberlander" or, as often referred to in the relevant court documents, "Richard Roe"), counsel for Plaintiffs in this action, improperly obtained sealed and confidential information concerning Sater's conviction and his cooperation with the government ("Sealed and Confidential Information") and publicly disclosed it in the Complaint he filed in "*Kriss I*", which is presently before this Court.[3] It was this illegal act that exposed Sater and his family to danger and that spawned more than three years of litigation and counting in the courts of the Southern and Eastern District of New York and the Second Circuit Court of Appeals.

Oberlander improperly obtained the Sealed and Confidential Information from Defendant Bayrock Group LLC's ("Bayrock") hard drive. Specifically, Oberlander duped Joshua Bernstein

---

[3] Jody Kriss and Michael Ejekam are plaintiffs in both *Kriss I* and this action ("*Kriss II*").

("Bernstein"), a former analyst employee working at Bayrock, into providing him unfettered access to Bayrock's hard drive so that he could find information that could assist Oberlander in bringing the action that became *Kriss I*. (*See* Affidavit of Joshua Bernstein, Liston Aff., Ex. 6 (describing the circumstances under which Oberlander gained access to Bayrock's hard drive)). Ultimately, Oberlander discovered Sater's Sealed and Confidential Information (Sater worked for Bayrock); privileged communication between Bayrock and its counsel; and communications between Sater and his counsel.

Oberlander planned to use the Sealed and Confidential Information to extort the Defendants in *Kriss I*, including Bayrock, Sater, numerous law firms, and their insurance carriers. Oberlander made no secret of his extortionate plan. A few days after discovering the Sealed and Confidential Information, Oberlander disclosed his plan to Bernstein and Bernstein's father:

> I am so not kidding this is not a game this is not a $150,000 case anymore
> and DO NOT READ THIS WRONG this is a team and my job is to shake
> the living daylights out of them and it starts NOW.

(*See* Email from F. Oberlander to J. Bernstein et al. (Mar. 4, 2010), Liston Aff., Ex. 7.) For Oberlander and Plaintiffs Jody Kriss and Michael Ejekam, the discovery of Sater's Sealed and Confidential Information, combined with a threat to disclose them, could exponentially increase the value of their lawsuit. They also knew that the disclosure of the Sealed and Confidential Information would pose a real danger of physical harm to Sater and his family. With such a threat looming, they assumed that Sater would have no choice but to pay them to go away permanently, or more likely, because Sater did not have the money, to persuade the other deep-pocket defendants to do so.

Armed with Sater's Sealed and Confidential Information – and numerous privileged

communications between Defendant Bayrock and its counsel, and between Sater and his counsel –
Oberlander drafted a 165-page, 765-paragraph Complaint on behalf of Plaintiffs Kriss and Ejekam.
(*See* 10-cv-3959, Dkt. No. 1.)  The *Kriss I* Complaint essentially accuses a group of Bayrock
employees and principals (including Sater), accountants, law firms, and other corporate entities of
a massive civil RICO conspiracy with Sater's past as the foundation, and demands $100 million.
Oberlander attached Sater's Sealed and Confidential documents to the Complaint as exhibits and
disclosed sensitive details from these documents in his allegations.

      After drafting the Complaint, Oberlander sent an email to Bayrock through Ronald Kriss
(father of plaintiff Jody Kriss), attaching the Complaint and the exhibits and threatening to go
public with everything if Sater and Bayrock did not comply with his demands.  Specifically,
Oberlander states as follows:

> I recommend you forward this to Julius [Julius Schwarz of Bayrock] with
> the comment from me that there are three alternatives:
>
> (a)     I file publicly today
> (b)     I file under seal today
> (c)     He arrange a tolling agreement with EVERY defendant but Nixon
>         Peabody
>
> I don't care how many people he has to get on the phone and how fast he
> has to work.  He had year to give back the money and now it's over.  He
> can get Brian Halberg [Halberg was counsel to Bayrock] to help him
> I believe it's possible to get this in under seal if Bayrock joins in a joint
> motion in part 1 to seal the complaint pending a redaction agreement with
> the assigned judge but there are never any guarantees.
>
>     Thanks,
>     FMO

(Email from F. Oberlander to R. Kriss (May 12, 2010), Liston Aff., Ex. 8.)  The message of the
email was this:  pay us in excess of $100 million – or else the Sealed and Confidential Information

will be made public. The Defendants, however, never complied with these demands.

Consequently, staying true to his threats, Oberlander publicly filed the Complaint, exposing Sater's Sealed and Confidential Information to the world and, by extension, exposing Sater and his family to grave danger.

The reactions of both Judge Buchwald in the Southern District of New York, the first judge presiding over *Kriss I*, and Judge Glasser in the Eastern District of New York, the judge who had initially ordered that Sater's information be sealed, were swift. Judge Buchwald issued two orders, (i) preventing further dissemination of the Sealed Complaint, its exhibits, and the information in the complaint, and (ii) sealing the Sealed Complaint in its entirety, and ordering that a redacted version of the complaint, redacting any sealed documents or references to sealed documents, be filed. (*See* 10-cv-3959, Dkt. Nos. 2, 3.) In turn, Judge Glasser enjoined further dissemination of the Sealed and Confidential Information, and ordered a hearing to determine how Oberlander and Bernstein, the analyst, had obtained this information. Ultimately, Judge Glasser found that: (i) Oberlander knew the documents at issue were sealed prior to his public filing of those documents; (ii) Bernstein had wrongfully taken the documents and had no legal right to those documents; and (iii) the dissemination of the documents would cause irreparable harm which is imminent to Sater and would put Sater's safety at risk. (*See* Court of Appeals' Order (Dec. 20, 2012), Liston Aff. Ex. 9, at 4 (reciting Judge Glasser's findings)).

Oberlander was undeterred by Judge Buchwald's and Judge Glasser's orders, or Judge Glasser's findings. To the contrary, on November 9, 2010, Oberlander, still acting on behalf of the Plaintiffs in this case, continued to threaten to expose Sater's Sealed and Confidential Information:

> If you wish Sater's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve

the case before everything uploads to PACER and *goes public. The only way to try to prevent worldwide notoriety will be a globally stipulated sealed confidentiality order accompanying a global settlement.* No prior restraint was ever possible and thanks to your litigation in the EDNY and what it revealed and the transcripts thereof, all you have accomplished now is to guarantee *massive public interest* in the cover-up not only of the Sater conviction but the super sealed files and the evasion of mandatory restitution . . . .

(*See* Letter from F. Oberlander to B. Herman (Nov. 9, 2010), Liston Aff., Ex. 10 (emphasis added).)

Oberlander further threatened to put the sealed information "on the front pages everywhere, including New York, Iceland, Turkey, and Khazakhstan." (*Id.*) His threats continued: "If this case is not settled quickly, it will surely go viral. If you obstruct a settlement instead of helping get there, everything will go public with clockwork inevitability. This is not a threat, it is mathematics. And it is certain." (*Id.* at 2.)

Redoubling his efforts to publicize Sater's Sealed and Confidential Information, Oberlander and Richard Lerner (co-counsel in this action), appealed to the Second Circuit that aspect of Judge Glasser's order that permanently enjoined dissemination of Sater's Presentence Report ("PSR"). The Court of Appeals affirmed Judge Glasser's order, and further ordered that:

"all parties, their officers, agents…are temporarily…enjoined from publicly distributing or revealing in any way, to any person, or in any court, proceeding or forum, except to those persons directly involved in the parties' own legal representation any documents or contents thereof subject to sealing orders in [their Appellate docket] or in any related proceedings before the District Courts for the Eastern District of New York and the Southern District of New York."

(*See* Court of Appeals Order (Feb. 14, 2011), Liston Aff. Ex. 11, at 4.) Moreover, out of concern that Oberlander and Lerner had violated its previous orders by publicly filing a brief with the

United States Supreme Court,[4] the Court of Appeals ordered that the Chief Judge of the Eastern District of New York assign a separate judge "with the limited mandate of implementing and overseeing compliance with their orders and the orders previously entered by Judge Glasser." (*Id.* at 5.) Judge Brian Cogan was assigned with this mandate, which has been since expanded to include Oberlander and Lerner's violations of courts orders predating the Court of Appeals's February 14th Order.

Oberlander and Lerner were undeterred by the Court of Appeals' order, or the appointment of Judge Cogan to oversee their compliance with court orders. For the next two years, Oberlander, on behalf of Plaintiffs in this case, embarked on an odyssey of violating court orders by illegally disclosing Sater's Sealed and Confidential Information to the press (and having the press continuously publish articles about them), *see, e.g.*, *By Revealing Man's Past, Lawyer Tests Court Secrecy*, N.Y. Times, Feb. 5, 2012, Liston Aff., Ex. 12 (including a staged photo of Lerner and Oberlander), endangering the lives of Sater and his family, and insulting the government and the courts of the Second Circuit, even accusing them of sedition, fraud, corruption, maladministration, misconduct, conspiracy, and even racketeering.

This conduct has not gone unnoticed by the judges of this circuit. Judge Glasser found that "[i]n unilaterally deciding that a [sealing] order did not exist, or, if it did exist, it was binding on court personnel only; or in any event, he had a First Amendment right to publish that which was sealed, *[Oberlander] knowingly and intentionally flouted a court order."* (Judge Glasser's Scheduling Order (Mar. 23, 2011), Liston Aff., Ex. 13, at 4) (emphasis added); *see also* Liston Aff.,

---

[4] Worse yet, Oberlander and Lerner had disclosed Sater's Sealed and Confidential Information to the lawyer who represented the *very criminals that Sater had cooperated against.*

Ex. 12 (quoting Judge Glasser as saying "Something very bad and perhaps despicable was done by use of those documents").) Similarly, Judge Cogan, upon reviewing the specific statements Oberlander was seeking to publicly disclose, concluded that "[i]t seems obvious that Oberlander is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective." (*See* May 13, 2011 Order, Liston Aff., Ex. 14, at 4; *see also* Tr. of Hrg. (Apr. 1, 2011), Liston Aff., Ex. 15, at 3:7-9 (Judge Cogan asks Oberlander and Lerner, "[i]f there is a sealing order, do you think you can challenge it by violating it?")). Judge Cogan even referred Oberlander and Lerner for criminal prosecution and has allowed civil contempt proceedings against them to proceed after any criminal case. Finally, the Court of Appeals found that the PSR – the document that was the subject of the appeal before them and which was quoted in and attached to the Sealed Complaint – "is of dubious utility . . . *except as a tool to intimidate and harass Doe by subjecting him to danger."* (*See* Liston Aff., Ex. 9, at 7 (emphasis added).) The Court of Appeals further "warn[ed] [Oberlander] that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principle legal dispute . . . and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions, including the imposition of leave-to-file restrictions, requirements of notice to other federal courts, and monetary penalties. (*Id.* at 3).

But Oberlander and Lerner have not stopped. Rather, they filed yet another federal case in March of this year, *Estate of Ernest Gottdiener et al. v. Felix Sater and Sal Lauria*, 13 Civ 1824 (LGS) (S.D.N.Y. filed Mar. 18, 2013) ("*Gottdiener*"), which is also before this Court. The four named plaintiffs in *Gottdiener* are also plaintiffs in this action, meaning that all of the plaintiffs in this action are plaintiffs in either *Kriss I* or *Gottdiener*, two cases before this Court that are not

subject to the remand motion.

**C.**     **Procedural Background and Plaintiffs' Decision to Litigate
This Action in State Court**

On May 10, 2013, Oberlander, Lerner, and the *Kriss I* and *Gottdiener* Plaintiffs sought to

expand their campaign to state court.  Instead of simply adding state-law claims to their existing

federal actions, they filed a Summons with Notice naming Sater as a defendant, along with all of

the same defendants in *Kriss I* and more, in an action commenced in the Supreme Court of the

State of New York, New York County ("*Kriss II*").  The notice that accompanies the summons

purports to assert various claims against Sater, including claims of malicious prosecution, fraud,

negligence, defamation, unjust enrichment, and conversion.

The Summons with Notice makes plain that *Kriss II* arises from Sater's sealed conviction

and his confidential cooperation.  In the Summons with Notice, Plaintiffs state:

- "Plaintiffs seek relief against those directly and vicariously responsible for the
  perpetration of perhaps a billion dollars or more of fraud based on the illegal
  concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and
  subsequent 2009 sentencing . . . ."  (Liston Aff., Ex. 2, at 2.)

- "[Plaintiffs] were defrauded of their rights to restitution and, because the
  government illegally concealed Sater's entire case, their rights to sue him."  (*Id.*)

- "Plaintiffs seek relief against those directly and vicariously responsible for the fraud
  in the three years of litigation on dockets 98-CR-1101, 12-MC-150, and 12-MC-557,
  EDNY, and 10-CV-3959, SDNY."  (*Id.* at 3.)

The crux of Plaintiffs' claims against Sater arise from his cooperation agreement with the

federal government, the fact that he served as a cooperating witness, and the fact that the federal

government sought – successfully – to seal his criminal case.

Accordingly, on June 21, 2013, Sater filed his Notice of Removal.

## ARGUMENT

### A.    Removal Was Proper Under the Federal Officer Removal Statute

The Federal Officer Removal Statute provides that a case – either civil or criminal – may be removed from state to federal court when the case is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

This statute confers an "absolute" right of removal because federal jurisdiction rests on the federal interest in enforcing federal law and protecting individuals who act pursuant to that law. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969); *see also Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010) ("[T]hough it is perhaps true that the defendants in this and similar cases are not 'the paradigmatic federal officer' protected by Section 1442(a)(1), it is axiomatic that these defendants are nevertheless protected by the statute. After all, '[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (internal citations omitted))). The purpose of the Federal Officer Removal Statute, "whose ancestry is venerable, is to prevent federal officers or those acting at their direction from being held accountable in state courts for acts done within the scope of their federal duties." *Guarda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp. 841, 843 (S.D.N.Y. 1973).

Contrary to Plaintiffs' claim (Pls. Mem. at 7), the Federal Officer Removal Statute is not "narrow" or "limited." *Id.* Rather, it is broadly construed to protect the federal interests at stake.

*Id.*; *Jefferson County v. Acker*, 527 U.S. 423 (1999); *Durham*, 445 F.3d at 1252 ("We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal."); *Guarda Farms*, 358 F. Supp. at 843 ("[A] cursory survey of the application of [section 1442(a)] reveals it has been construed broadly, and its 'persons acting under' provision particularly so."). Moreover, the need to protect the federal interests at stake means that, unlike most other removal provisions, a party invoking ¶ 1442(a)(1) may seek an interlocutory appeal from an order granting plaintiff's motion to remand. *See* 28 U.S.C. § 1447(d).

Sater is entitled to invoke federal agent jurisdiction under 28 U.S.C. ¶ 1442(a)(1). A private party may satisfy ¶ 1442(a)(1) if three elements are met: (1) the private party acted under the direction of a federal agency or officer; (2) there is a causal nexus between the federal directive and the conduct in question; and (3) the private party has a colorable federal defense. *Jefferson County*, 527 U.S. at 431; *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008). Sater satisfies each element.

### 1.    Sater "Acted Under" the Direction of a Federal Officer or Agency

A private party demonstrates that it was acting under the direction of a federal agency or officer by "showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 946-47 (E.D.N.Y. 1992). This standard is to be construed broadly. "Although there is no precise standard for the extent of control necessary to bring an individual within the 'acting under' clause, a cursory survey of the application of [the Federal Officer Removal Statute] reveals it has been construed broadly and its 'persons acting

under' provision particularly so." *In re MTBE Prods. Liability Litig.*, No. M21-88, MDL No. 1358(SAS), 2004 WL 515535 (S.D.N.Y. Mar. 16, 2004) (internal citations omitted).  Although mere compliance with federal laws, rules, and regulations does not by itself satisfy this prong, *see Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007), the Second Circuit has held that the "acting under" element may be satisfied where there is a "special relationship" between the government and the private entity, such as where the private entity "assist[s], or . . . help[s] carry out, the duties or tasks of the federal superior," *Isaacson*, 517 F.3d at 137 (alteration and emphasis in original) (quoting *Watson*, 551 U.S. at 152).  In *Isaacson*, the Second Circuit observed that "close supervision of the private entity by the Government would constitute such a special relationship." *Id.*

Using these standards, courts have found a wide range of private parties to have acted under the direction of a federal officer.  *See, e.g.*, *State of Texas ex rel. Falkner v. Nat' l Bank of Commerce*, 290 F.2d 229 (5th Cir. 1961) (proceeding against banks operating branch offices on military bases held removable); *People of the State of Colorado v. Maxwell*, 125 F. Supp. 18 (D. Colo. 1954) (murder prosecution properly removed where city police chief, under the direction of an Air Force captain, arrested and shot a soldier); *Teague v. Grand River Dam Authority,* 279 F. Supp. 703 (N.D. Okl. 1968) (wrongful death action properly removed where defendant, acting under license from the Federal Power Commission and at the direction of a member of the Army Corps of Engineers, opened floodgates resulting in a death); *Kuenstler v. Occidental Life Ins. Co.*, 292 F. Supp. 532 (C.D. Cal. 1968) (upholding removal of an action for $72 from the Small Claims Court against a private insurance company which had contracted with the federal government to administer benefit provisions of Medicare); *Allen v. Allen*, 291 F. Supp. 312 (S.D. Iowa 1968)

(allowing removal of a garnishment action against a doctor who treated patients under Medicare); *State of Oregon v. Cameron*, 290 F. Supp. 36 (D. Or. 1968) (upholding removal of a criminal trespass action against VISTA volunteers who entered property to render medical assistance, on the grounds that the VISTA workers were persons acting under an officer of the United States and performed work contemplated by a federal statute though they were not federal employees).

Sater's status as a cooperating witness who, pursuant to agreements with and directives from the federal government, provided the United States information "of an extraordinary depth and breadth, almost unseen" is the type of person whom the Federal Officer Removal Statute was designed to protect. The United States itself has said cooperating witnesses are in fact "acting under" the government: "[T]he federal officer removal statute is most obviously implicated when private individuals are aiding law enforcement activity. Persons eligible for removal under that rationale would include not only undercover agents or informants who participate in a sting operation and telephone companies that place a wiretap on a line at federal behest, but also *cooperating witnesses* who aid a federal investigation by providing needed information. See Act of Feb. 4, 1815, ch. 31, §§ 7, 8, 3 Stat. 198 (an 'informer' providing information leading to forfeiture is a person 'aiding or assisting' a customs officer in the enforcement of the customs law)." Br. for the United States as Amicus Curiae 25, *Watson v. Philip Morris Cos.*, No. 05-1284 (filed Feb. 2007), *at* http://www.justice.gov/osg/briefs/2006/3mer/1ami/2005-1284.mer.ami.pdf.

Many courts have held that private parties who provide information to the federal government may remove state cases to federal court pursuant to § 1442(a)(1). For example, in *State of Texas v. Heaton*, 58 F.2d 656 (N.D. Tex. 1932), the court considered the predecessor to § 1442(a)(1) and approved the removal of a state criminal case brought against two federal

prohibition agents and an informer.  The court concluded that the informer's "employment was within the authority of the agents," meaning that the informer was "acting under" the federal agents.  *Id.*

In *Venezia v. Robinson*, 16 F.3d 209 (7th Cir. 1994), the court denied a motion to remand, holding that an informant acting under the direction of the Federal Bureau of Investigation was entitled to remove the action.  The court noted, "A federal agent or informant who asserts that he was (or is) acting in the course of a criminal investigation is entitled to remove under § 1442(a)(1), presenting to the federal tribunal all questions of justification and immunity – both of liability for yesterday's acts and of entitlement to take similar steps tomorrow."  *Id.* at 212.

Of particular relevance is *Reiser v. Fitzmaurice*, No. 94 Civ. 7512 (CSH), 1996 WL 54326 (S.D.N.Y. Feb. 8, 1996), in which plaintiff commenced an action for common law fraud in state court against two defendants.  The defendants had been indicted on charges arising out of a fraudulent scheme, but approached the government with an offer to cooperate.  The defendants produced evidence to the government suggesting that the plaintiff offered to have a friend at the Bureau of Prisons arrange a sentence of house arrest for the defendants in exchange for a bribe. The government entered into a written cooperation agreement with the defendants, who subsequently tape recorded conversations with the plaintiff.  It was later learned that the defendants had actually entrapped the plaintiff, and the government dropped all charges against the plaintiff.  The government went further and sent a letter to the sentencing judge, in which the government asked that the defendants not be given credit for their "cooperation."

In plaintiff's subsequent action against defendants, defendants removed pursuant to § 1442(a)(1), and the court denied plaintiff's motion to remand.  The court held that "[t]here is no

dispute that [defendants] were at least ostensibly acting as agents of the federal government. They were federal informants working as part of an FBI sting operation, and they had written cooperation agreements to prove it." 1996 WL 54326, at *6. The court also observed that "[w]ithout this protection, informants would be less willing to cooperate with government authorities, blunting one of the government's most effective weapons against crime. *Id.* at *5.

Here, as Plaintiffs themselves concede (Pls. Mem. at 18), Sater was a party to a 1998 cooperation agreement that obligated him to keep the existence of his cooperation secret. Moreover, Judge Glasser ordered at the government's request that Sater's entire criminal case, including the docket sheet, be sealed in December 1998. From that point forward, Sater was required to keep both his conviction and his cooperation confidential. Moreover, disclosure of his conviction would necessarily have revealed his cooperation. Because of the extraordinary extent of his cooperation, Sater was not sentenced for eleven years, until 2009. Anyone with rudimentary knowledge of the criminal justice system would know that a person who has been convicted but not sentenced until eleven years later was almost certainly a cooperating witness. That is why, in order to comply with his cooperation agreement (and Judge Glasser's sealing order), Sater was required to keep his conviction in confidence as well.

## 2. Plaintiffs' Claims Have a Causal Nexus to Sater's Actions Taken Under the Color of the Direction of a Federal Officer

This element, which requires a "causal nexus," simply demands that the defendant state in the removal notice that the acts complained of by plaintiff were undertaken pursuant to the directions of a federal officer, agency, or comprehensive and detailed regulations. *See Ryan*, 781 F. Supp. at 946-47. "To establish the requisite causal connection, a [removing party] does not have to prove at the outset that the acts sued upon were *actually* taken under official authority.

Rather, that authority must simply be 'asserted' at the removal stage. *Reiser*, 1996 WL 54326, at *6. This element is broadly construed. *Isaacson*, 517 F.3d at 137.

Plaintiffs argue that Sater cannot meet this element because (a) the Summons with Notice is too vague to demonstrate a nexus between Sater's status and the acts complained of; (b) Plaintiffs may include in the eventual complaint factual allegations that do not implicate Sater's obligations to comply with federal court orders and his cooperation agreement; and (c) Sater must show that he acted as a federal agent with respect to every alleged instance of fraud. Each of these arguments is unavailing.

First, Plaintiffs state that there are no facts in the Summons with Notice "which "***unequivocally*** . . . provide intelligently ascertainable ***definitive, unambiguous*** notice" of facts supporting removal. (Pls. Mem. at 16.) This is incorrect as a factual matter, and moreover, Plaintiffs incorrectly state the governing standard.

In *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001), the Second Circuit held that a Summons with Notice may constitute an initial pleading for purposes of the removal statute so long as the Summons with Notice "enables the defendant to intelligently ascertain removability from the face of such pleading, so that in its petition for removal, the defendant can make a short and plain statement of the grounds for removal." *Id.* at 205-06 (internal citations, quotation marks, and alterations omitted). The court continued, "A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support the removal petition." *Id.* at 206 (internal citations, quotation marks, and alterations omitted).

Plaintiffs appear to claim that the Summons with Notice is incomprehensively vague as to the claims against Sater (Pls. Mem. at 16 (writing that the Summons with Notice "says nothing

about what if any fraud ***Sater*** will be charged with")), and even presents a few hypothetical facts and claims that are *not* in the Summons with Notice to suggest that what *is* in the Summons with Notice is inscrutable (*id.* at 16-17). But the actual Summons with Notice is not as vague as the Plaintiffs claim.

The Summons with Notice states:

- "Plaintiffs seek relief against those directly and vicariously responsible for the perpetration of perhaps a billion dollars or more of fraud *based on the illegal concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and subsequent 2009 sentencing . . . ."* (Liston Aff., Ex.2, at 2 (emphasis added).)

- "[Plaintiffs] were defrauded of their rights to restitution and, *because the government illegally concealed Sater's entire case*, their rights to sue him." (*Id.*) (emphasis added).)

- "Plaintiffs seek relief against those directly and vicariously responsible for the *fraud in the three years of litigation on [four federal court] dockets* 98-CR-1101, 12-MC-150, and 12-MC-557, EDNY, and 10-CV-3959, SDNY." (*Id.* at 3.)[5] (emphasis added).)

These statements permit Sater to intelligently ascertain removal because they relate to Sater's status as a confidential cooperating witness, his agreements with the federal government, and the government's successful effort to seal his criminal case. The Summons with Notice could not be clearer that Plaintiffs are seeking relief based on (a) the alleged "illegal concealment" of Sater's 1998 federal conviction and 2009 sentencing; (b) that the federal government "illegally concealed Sater's entire case"; and (c) alleged "fraud" in four federal litigations, including the EDNY Criminal Case, *Kriss I*, and the contempt of court action before Judge Cogan. These issues

---

[5] The EDNY Criminal Case is 98-CR-1101; 12-MC-150 is the unsealing litigation before Judge Glasser; 12-MC-557 is the contempt proceeding before Judge Cogan; and 10-cv-3959 is *Kriss I* before this Court.

are unquestionably related to Sater's compliance with federal directives and therefore, they may be litigated in federal court.

Second, in the apparent hope of confusing the question, Plaintiffs suggest that they will eventually craft a complaint that does not implicate the Federal Officer Removal Statute, but this argument misses the mark. Plaintiffs filed a relatively detailed Summons with Notice, which is the initial pleading that forms the basis for removal – not a later filed document. *See Whitaker*, 261 F.3d at 206. Moreover, Plaintiffs cannot file a complaint that is so different from the Summons with Notice as it would have to be to defeat federal officer removal jurisdiction. While an action in state court may commence by means of a summons with notice, the summons must provide sufficient notice of claims. A plaintiff is bound by the specifics (or lack therefor) in the notice. *Roth v. State Univ. of N.Y.*, 61 A.D.3d 476 (1st Dep't 2009) ("The summons described the nature of this action as 'violations of federal, New York State, and New York City human rights laws, including but not limited to' various named statutes. Since numerous potential causes of action may be brought under these statutes, the summons left defendants to guess the precise claims against them. In thus failing to comply with the notice requirements of CPLR 305(b), the summons was jurisdictionally defective, and as such could not be amended." (citations omitted).)

There are two startling examples of how far Plaintiffs are trying to distance themselves from what is actually stated in the Summons with Notice. First, Plaintiffs go so far as to say it may be unconstitutional to hold them to what they included in the Summons with Notice. *See* Pls. Mem. at 10 ("[I]t must be unconstitutional to force upon Plaintiffs who wrote the Summons as of right not intending their statements to be operative facts or claims that they have to now live with them as such."). Second, Plaintiffs suggest that their later complaint may focus in part on an

alleged 2002 fraud on Elizabeth Thierot (Pls. Mem. at 19-20), but this allegation is completely irrelevant to the removal issue – and to the entire case – because Thierot is *not* a plaintiff in this action. Plaintiffs fail to comprehend that what is actually in the Summons with Notice matters.

Finally, Plaintiffs incorrectly argue that Sater must show that he was acting pursuant to federal directives as to each of Plaintiffs' allegations. (Pls. Mem. at 18-20.) However, the Federal Officer Removal Statute allows an entire action to be removed so long as the party claiming the statute's protection is defending against one claim that fits the statute. *See, e.g.*, *Nat'l Audubon Soc. v. Dep't of Water & Power of City of Los Angeles*, 496 F. Supp. 499, 509 (E.D. Cal. 1980) ("It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed . . . ."). Accordingly, it is not necessary for Sater to show that each and every allegation would support removal.

### 3. Sater Has Colorable Federal Defenses to Plaintiffs' Claims

Finally, a party removing pursuant to the Federal Officer Removal Statute must show that it has a "colorable" federal defense. This element is also broadly construed. *See Jefferson County*, 527 U.S. at 431 ("In construing the colorable federal defense requirement, [the Supreme Court has] rejected a 'narrow, grudging interpretation' of the statute." (quoting *Willingham v. Morgan*, 395 U.S. 402 (1969))). As the Supreme Court has stated, "One of the most important reasons for removal is to have the validity of the [federal] defense . . . tried in federal court. We therefore do not require the officer virtually win his case before he can have it removed." *Id.* Thus, "a defense may be 'colorable' even if it is ultimately rejected by the court, *In re MTBE Prods. Liability Litig.*, 2004 WL 515535, at *7, and the court has the discretion to retain jurisdiction (and not remand)

22

even if the federal defense fails, *IMFC Prof'l Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 158-60 (5th Cir. 1982).

As the Second Circuit has acknowledged, there are "few limitations on what qualifies as a colorable federal defense" and "[t]o be 'colorable,' the defense need not be 'clearly sustainable.'" *Isaacson*, 517 F.3d at 137; *see also Watson*, 420 F.3d at 863 (noting that "the threshold is quite low" for what constitutes a colorable federal defense). The Second Circuit also held that the predicate federal defense need not be an "official immunity defense" to satisfy the third prong. *Id.* at 139. A colorable federal defense is one that is defensive, based in federal law, and arises out of the removing party's compliance with the demands of a federal officer. *See Mesa v. California*, 489 U.S. 121, 129-30 (1989); *Arizona v. Maypenny*, 451 U.S. 232, 241 (1981).

Sater has a colorable federal defense of immunity. In *Reiser*, the court concluded that the confidential informants working pursuant to a written cooperation agreement "have raised a colorable federal defense of immunity. This is so, despite the fact that they are not federal officers." 1996 WL 54326, at *4. The court relied on a well-established line of cases holding that, "[i]n some instances, private persons acting under the direction of federal officials are treated like subordinate officials and granted immunity." *Id.* (citing *McManus v. McCarthy*, 581 F. Supp. 302, 305 (S.D.N.Y. 1984)).

The court made clear that the cooperating informants were not required to prove their defense at the removal stage:

> That cooperating informants are, in certain circumstances, entitled to the same immunity as federal officials does not mean that [the defendants] would necessarily be entitled to it here. That would be an issue for decision at a later time, and it would depend on whether the two defendants could demonstrate that their conduct was discretionary in nature and within the scope of their quasi-official duties. At this point, all

23

> that is required of the two defendants is that they raise a colorable issue as
> to the applicability of the defense. They have clearly done so.

*Id.* at *5; *see also Venezia*, 16 F.3d at 212 ("Once the federal defendant has a plausible federal defense, removal is appropriate so that the federal court may determine whether the defense succeeds."). Therefore, the Court should reject Plaintiffs' repeated attempts to have Sater prove his defenses at this stage. *See, e.g.*, Pls. Mem. at 22 ("[I]t had better be proven that she did so under Sater's **lawful** orders to do so, which he gave **lawfully** because he was under **lawful** orders from a federal officer controlling him specifically ordering him to tell her to suborn . . . .").

Sater's compliance with his cooperation agreement and federal court orders provides not only a colorable immunity defense but also a colorable defense of official justification. *See, e.g.*, *Venezia*, 16 F.3d at 212 ("A federal agent or informant who asserts that he was (or is) acting in the course of a criminal investigation is entitled to remove under § 1442(a)(1), presenting to the federal tribunal all questions of justification and immunity . . . ."). These defenses should be determined in federal court because of the overriding and paramount federal interest in protecting cooperators and in ensuring that cooperators do not face adverse consequences for adhering to federal directives and specific court orders.

## B. There Is No Valid Basis for Plaintiffs' Request for an Enlargement of Time

Plaintiffs ask in their brief for an enlargement of time to file and serve a complaint. (Pls.' Mem. at 1.) But no additional time is required or advisable. Under the CPLR, Plaintiffs have four months from the time they file a Summons with Notice to serve that document, then, upon demand by Defendants, Plaintiffs have another 20 days to serve a complaint. *See* N.Y. C.P.L.R. §§ 306-B, 3012(b). Plaintiffs' time to serve the Summons with Notice does not expire until September 7, 2013, and then they will still have at least 20 additional days to file a complaint. If Plaintiffs

cannot prepare and file a complaint almost five months after filing the Summons with Notice, then they should not receive additional time.

## <u>CONCLUSION</u>

For the foregoing reasons, Sater respectfully requests that this Court deny the motion to remand and for an enlargement of time.

Dated:  August 16, 2013

s/ Joshua D. Liston
JOSHUA D. LISTON
BEYS STEIN MOBARGHA & BERLAND LLP
405 Lexington Avenue
New York, New York 10174
Tel.: (646) 755-3601
Email: jliston@beysstein.com

*Attorneys for Defendant*
  *Felix Sater*