# Exhibit 5



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MM:EK:TK
F.#1998R01996

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 17, 2011

**TO BE FILED UNDER SEAL**

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Felix Sater
        <u>Criminal Docket No. 98 CR 1101 (ILG)</u>

Dear Judge Glasser:

   The government writes in response to Mr. Lerner's letter, dated February 3, 2011, demanding that the Court "immediately docket all events that have occurred in this case, from its inception." For the reasons stated below, the government believes that specific docket entries and documents that do not directly reference the defendant's cooperation may be unsealed at this time. However, those documents in which the defendant's cooperation is made plain should remain sealed in order to ensure the defendant's safety, among other reasons. The government will submit a separate, sealed letter, available to the defendant but not to the intervenors or the public, detailing each docket entry and related document and making specific recommendations as to each.[1]

---

[1] Although an appeal of this Court's permanent injunction with respect to the Presentence Report (the "PSR") is currently pending before the Second Circuit Court of Appeals, this Court nevertheless has the jurisdiction to issue rulings with respect to sealing that do not concern the PSR. "[T]he filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal." <u>New York State Nat. Org. for Women v. Terry</u>, 886 F.2d 1339, 1350 (2d Cir. 1989). If an appeal is taken from a judgment that "does not determine the entire action," the district court "may proceed with those matters not involved in the appeal." <u>Id.</u>

**Factual Background**

As the Court is well aware, the defendant worked with prosecutors from the United States Attorney's Offices from the Eastern and Southern Districts of New York and law enforcement agents for over 10 years, providing information crucial to the conviction of over 20 individuals, including those responsible for committing massive financial fraud, members of La Cosa Nostra ("LCN") ███████████████████████████████████████████

However, the fact of the defendant's conviction – as well as speculation and discussion about that fact – has been in the public realm for some time. Articles in both the *New York Times* and *BusinessWeek* – which relied on statements from a co-conspirator and a copy of the defendant's sealed complaint, respectively – mentioned the defendant by name, discussed his role in the RICO conspiracy and speculated about his conviction. More importantly, the government recently learned that on March 2, 2000, the government, in a press release announcing the indictment of 19 other defendants on RICO charges, referred to the defendant by his real name and stated that he had been convicted of related crimes. This press release was reprinted in the Congressional Record, where it can be located today, both on-line and in hard copy.[2] Nothing in the press release references the defendant's cooperation with the government.

**Legal Standard**

Under the common law, the public has a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978). Similarly, under the First Amendment, the public has a "qualified . . . right to attend

---

See also Sokol Holdings, Inc., v. BMB Munai, Inc., 2009 WL 3467756, at *4-*5 (S.D.N.Y. 2009) (where issue on appeal was "whether an arbitration clause warrants a stay or dismissal of any of Plaintiffs' claims," district court found jurisdiction over "aspects of [the] litigation not implicated by the appeal").

[2] The press release was attached to statements that were made in 2000 before a House of Representatives subcommittee that was investigating the mafia's influence on Wall Street.

2

judicial proceedings and to access certain judicial documents." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004); see also Press-Enterprise Co. v. Superior Court of Cal., 478 U.S. 1, 9 (1986). According to the Second Circuit, "[t]ransparency is pivotal to public perception of the judiciary's legitimacy and independence," though it "must at times yield to more compelling interests." United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008).

In applying the common law right of access to determine whether an item can be filed under seal, the district court must (1) determine whether the item is a "judicial document," (2) determine the weight of the presumption of access to any judicial document and (3) balance countervailing interests against the presumption of access. Lugosch v. Pyramid Co., 435 F.3d 110, 119-20 (2d Cir. 2006). The test for whether an item is a "judicial document" is not whether it is filed with the court, United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I"), but rather whether the item is "relevant to the performance of the judicial function and useful in the judicial process," id.[3] The weight of the presumption of access to a judicial

---

[3] Courts in the Second Circuit have found the following items to be "judicial documents" triggering a common law presumption of access: documents submitted in connection with sentencing, United States v. Tangorra, 542 F. Supp.2d 233, 237 (E.D.N.Y. 2008) (Wexler, J.), items entered into evidence at trial, In re Application of National Broadcasting Co., Inc., 635 F.2d 945, 952 (2d Cir. 1980) ("In re NBC"), audio recordings played during a bail hearing, United States v. Graham, 257 F.3d 143, 151-53 (2d Cir. 2001), submissions relating to conditions of a pretrial detainee's confinement, United States v. Basciano, Nos. 03-CR-929, 05-CR-060, 2010 WL 1685810 (E.D.N.Y. April 23, 2010) (Garaufis, J.), and search warrant applications (at least upon completion of the investigation), In re Application of Newsday, Inc., 895 F.2d 74, 79 (2d Cir. 1990). On the other hand, courts in the Second Circuit have rejected claims that documents turned over in discovery are "judicial documents," Dorsett v. County of Nassau, No. CV 10-1258, 2011 WL 130324 (E.D.N.Y. Jan. 14, 2011) (Tomlinson, M.J.), and have questioned whether scheduling submissions qualify as such, United States v. Sattar, 471 F. Supp.2d 380, 389-90 (S.D.N.Y. 2006). It should also be noted that the Second Circuit has indicated that Presentence Reports are confidential documents, United States v. Charmer Industries, 711 F.2d 1164, 1171 (2d Cir. 1983), and that Congressional statutes mandating confidentiality can overcome the common law presumption of access, In re Application of New York Times Co., 577 F.3d 401, 408 (2d Cir. 2009) (applying Title III

3

document, which falls along a "continuum," is determined by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II").

In assessing whether the public's qualified First Amendment right to access attaches to a particular item, courts in the Second Circuit have applied two approaches. The first is the "experience and logic" test, which assesses "whether the [items] have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." Lugosch, 435 F.3d at 120 (internal quotation omitted). The second approach considers the extent to which the items are derived from, or a necessary corollary of, the capacity to attend the relevant proceedings. Id. Even where the First Amendment right applies to an item,[4] it is not automatically made public, but may be sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (internal quotation marks omitted). Such findings "may be entered under seal, if appropriate." Aref, 533 F.3d at 82.

Countervailing factors and higher values that must be balanced against the common law and First Amendment rights of access are case-specific, but have been found to include danger to individuals, United States v. Haller, 837 F.2d 84, 87 (2d Cir. 1988); see also United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995) (countervailing factor in courtroom closure context), and the danger of impairing law enforcement, Amodeo II, 71 F.3d at 1050. In assessing the danger of impairing law enforcement, courts have considered the need to protect law enforcement techniques and procedures, Amodeo I, 44 F.3d at 147, the safety of witnesses and law enforcement personnel, id., grand jury

---

standard for disclosure of wiretap documents rather than common law).

[4] Courts in the Second Circuit have found that the qualified First Amendment right to public access applies to docket sheets, Hartford Courant, 380 F.3d at 93, plea agreements, United States v. Haller, 837 F.2d 84, 86-87 (2d Cir. 1988), and papers submitted in connection with suppression and in limine motions, In re New York Times Co., 828 F.2d 110, 114 (2d Cir. 1987), but not to wiretap applications, In re Application of New York Times Co., 577 F.3d at 411.

4

secrecy, Haller, 837 F.2d at 87-88 (2d Cir. 1988), the integrity of ongoing investigations to prevent interference, flight and other obstruction, Amodeo I, 44 F.3d at 147; Haller at 88, and the ability of law enforcement to secure current and future cooperation from persons desiring confidentiality, Amodeo II, 71 F.3d at 1050.

**Analysis**

In essence, the Second Circuit's cases concerning sealing require the Court to balance the public's qualified First Amendment and common law right to judicial documents against other compelling factors. Here, the compelling factors at issue are the safety of the defendant and his family and law enforcement's interest in procuring cooperation from other defendants now and in the future. That the government revealed the defendant's criminal conviction in the March 2, 2000 press release necessarily influences that balancing test. The government has no information that any person has sought to harm the defendant or his family since the press release was issued, nor that the government's ability to secure cooperation has been negatively affected. Therefore, there is not a compelling need for the continued sealing of those docket entries and documents that reveal no more information than was disclosed in the press release. Thus, the government advocates the unsealing of those docket entries and documents that merely reflect the fact that Mr. Sater was a defendant in the Eastern District of New York who pleaded guilty to participating in a RICO conspiracy and was sentenced for the commission of that offense. However, those docket entries and documents that disclose the fact that the defendant cooperated with law enforcement authorities should remain under seal.

    I.    Documents and Entries to be Unsealed

Accordingly, the following entries and documents should be unsealed: 1) the docket itself should be unsealed as a necessary prerequisite to the disclosure of all other items listed below; 2) the defendant's name on the docket sheet should be changed from John Doe to Felix Sater; 3) the fact of the defendant's conviction, including the date of his guilty plea, the crime to which he pleaded guilty and the criminal information should all be unsealed. These entries and items do not mention the defendant's cooperation and reveal little more than that which was previously revealed in the press release. In addition, the public docket should reflect the date of the defendant's sentencing and the sentence issued by the Court. As will be discussed below, while several aspects of the defendant's sentencing should remain sealed, the public's understanding of how a particular defendant is sentenced is "important to the proper functioning of . . . judicial proceedings" and the

5

public's understanding of whether justice was properly meted out. See United States v. Alcantara, 369 F.3d 189, 198 (2d Cir. 2005). Also, while there is little support for the proposition that scheduling orders enjoy a presumption of access under the First Amendment, see United States v. Sattar, 471 F. Supp.2d 380, 389-90 (S.D.N.Y. 2006), the government does not object in this case to the unsealing of those entries and documents that merely reflect the scheduling of the case and other ministerial requests and orders made and issued by the parties and the Court.

## II. Documents and Entries that Should Remain Sealed

The continued sealing of a limited number of documents is essential to preserve the defendant's safety and the government's ability to secure cooperation from other individuals. The defendant cooperated against members of violent criminal organizations, including several families of LCN, among others, that have a demonstrated record of bringing harm to those who assist law enforcement. See, e.g., United States v. Mancuso, 2008 WL 2884397, *2 (E.D.N.Y. July 23, 2008)("[T]he Bonanno family's willingness to interfere with the judicial process, particularly by perpetrating violence against cooperating witnesses, is well-documented."); United States v. Cirillo, 2005 WL 2300217, *2 (2d Cir. Sept. 21, 2005)("The district court's factual finding that the Genovese crime family routinely employs violence to further its interests was . . . amply supported."). Indeed, some of the individuals that the defendant helped convict held leadership positions within their respective criminal organizations. ████████████████████████████████████████

While the presence of sealed docket entries may implicitly convey to a knowledgeable observer that the defendant cooperated, there is a significant difference between such speculation and actual government confirmation of that fact.[5] In

---

[5] In a similar context, courts have recognized a difference in kind between media reports asserting a fact and government documents confirming that fact. See, e.g., Aref, 533 F.3d at 76-78, 81-83 (denying media request to unseal order related to allegedly illegal government surveillance despite anonymous statements regarding that surveillance in a *New York Times* article); Afshar v. Department of State, 702 F.2d 1125, 1130-31

6

addition, if the defendant's cooperation were to be explicitly revealed, it would hinder the government's efforts to obtain future cooperation. See United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("[I]f . . . informants in the present or future cases anticipate that their cooperation will likely become a matter of public knowledge, valuable cooperation might cease."). This concern is especially salient here, as the defendant engaged in pro-active cooperation that at times placed him in danger and concerned matters of national security.

Accordingly, the following documents should remain sealed: 1) those scheduling, travel and other like requests that refer to the defendant's cooperation;[6] 2) the government's letter requesting that the case be related to another existing criminal case, which also explicitly mentions the defendant's cooperation; 3) the minutes of the October 23, 2009 sentencing proceeding; 4) the government's letter submitted pursuant to Section 5K1.1 of the United States Sentencing Guidelines; and 5) the Statement of Reasons, which refers to the fact that the Court issued a sentence below the Guidelines based on Section 5K1.1. With respect to the three items concerning the sentencing, each, if disclosed, would conclusively reveal the defendant's cooperation. The 5K letter and the sentencing minutes in particular would prove most dangerous, as they would specifically identify the individuals the defendant helped convict. Further, both would also reveal matters that impact national security that have not heretofore been disclosed.

**Conclusion**

For the reasons mentioned above, the Court should unseal those docket entries and documents that do not refer to the defendant's cooperation but maintain the rest of the documents under seal. The facts set forth above provide the

---

(D.C. Cir. 1983) ("[E]ven if a fact . . . is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security.")

[6] Some scheduling requests submitted by previous defense counsel refer to the fact that counsel consulted with and received consent from a law enforcement agent, rather than or in addition to an AUSA, before seeking permission from the Court allowing the defendant to travel. In light of the fact that such an arrangement makes the defendant's cooperation plain, we also request that such documents remain sealed.

7

Court with an ample basis to make the necessary on-the-record findings supporting the continued sealing. See Lugosch, 435 F.3d at 120. Any such findings should likely themselves be filed under seal. Aref, 533 F.3d at 82. In light of the fact that the docket is currently entirely under seal and inaccessible to Mr. Lerner, the government is submitting a separate letter, available to the defendant but not to the intervenors or the public, discussing each docket entry and the reason that each one should be unsealed or remain sealed.

Because this letter mentions specific facts that, if revealed, could prejudice the defendant's safety, we request that this letter remain under seal. See United States v. Alcantara, 369 F.3d 189, 200 (2d Cir. 2005) (stating that a motion in support of sealing can itself be kept under seal).

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney
Eastern District of New York

By: _____/s_____
Todd Kaminsky
Elizabeth J. Kramer
Assistant United States Attorneys

cc : Counsel for Richard Roe
Richard Lerner, Esq.

Counsel for John Doe
Michael Beys, Esq.