# Exhibit 15

```
                                                                      1

              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
       - - - - - - - - - - - - - - - X
       UNITED STATES OF AMERICA       :    98-CR-1101

            -against-                      U.S. Courthouse
                                      :    Brooklyn, New York
       JOHN DOE,

              DEFENDANT,              :
                                           April 1, 2011
       - - - - - - - - - - - - - - - X    11:00 o'clock a.m.

              TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE BRIAN M. COGAN
              UNITED STATES DISTRICT JUDGE


       APPEARANCES:

       For the Government:       LORETTA LYNCH
                                 United States Attorney
                                 147 Pierrepont Street
                                 Brooklyn, New York  11201
                                 BY:  TODD KAMINSKY
                                 Assistant U.S. Attorney


       For John Doe:             MICHAEL BEYS, ESQ.
                                 NADER MOBARGHA, ESQ.

       For Mr. Roe:              RICHARD LERNER, ESQ.
                                 DAVID SCHULZ, ESQ.



       Court Reporter:           SHELDON SILVERMAN
                                 Official Court Reporter
                                 225 Cadman Plaza East
                                 Brooklyn, New York 11201
                                 (718) 613-2537


       Proceedings recorded by mechanical stenography. Transcript
       Produced By Computer Aided Transcription.


              SS      OCR      CM      CRR      CSR
```

2

1  THE CLERK: United States versus John Doe.
2  (Appearances noted).
3  THE COURT: Good morning.
4  THE COURT: Who is in the back?
5  MR. KAMINSKY: Kevin Lee, an intern in the Columbia
6  Law School, intern law program assisting with this case.
7  THE COURT: I'll note the record of these
8  proceedings will remain sealed, although depending on what's
9  discussed, I or the circuit may choose to unseal it after.
10  I've reviewed all the papers.
11  Does anyone have anything they want to add to the
12  papers?
13  MR. BEYS: Yes, your Honor. There are two matters,
14  one of which the court may already have on behalf of John Doe.
15  Judge Glasser's scheduling order dated March 23rdrd, I'll pass
16  a copy to your Honor's deputy and also a case we did not cite
17  but is virtually tracking the language of Judge Glasser's
18  order. It's In Re criminal contempt proceedings against
19  Gerald Crawford, Second Circuit 2003 case; the cite, 329 F.3d
20  131, stands for the proposition under the collateral bar
21  doctrine, a party may not challenge a district court's order
22  by violating it, which is closely related to what Judge
23  Glasser stated in his order. I pass that to your Honor's
24  deputy as well.
25  THE COURT: Anything else?

SS    OCR    CM    CRR    CSR

3

| | |
|---|---|
| 1 | MR. LERNER: This decision was just handed up. |
| 2 | THE COURT: I haven't read it anymore than you |
| 3 | have. You dispute the fact that he cannot challenge a sealing |
| 4 | order by violating it? |
| 5 | MR. LERNER: I denied the premise there is a |
| 6 | sealing order -- |
| 7 | THE COURT: I didn't ask you that, sir. If there |
| 8 | is a sealing order, do you think you can challenge it by |
| 9 | violating it? |
| 10 | MR. LERNER: A sealing order is binding on the |
| 11 | court staff. |
| 12 | THE COURT: You're just not going to answer my |
| 13 | question, are you? |
| 14 | Is it your position a sealing order can be |
| 15 | challenged by the party who is enjoined from violating it to |
| 16 | violate? |
| 17 | MR. LERNER: As stated, the answer is no. |
| 18 | However -- |
| 19 | THE COURT: That's all I'm asking you. |
| 20 | MR. LERNER: I would like to ask your Honor if |
| 21 | you've seen the government's letter of March 17th that was |
| 22 | directed to Judge Glasser which moves for the unsealing of the |
| 23 | docket. |
| 24 | THE COURT: That's the one with the grid that |
| 25 | refers to certain documents, a chart or grid? |

SS    OCR    CM    CRR    CSR

4

1  MR. KAMINSKY: Yes, two letters that Mr. Roe did
2  not receive the grid that actually reveals what they are, but
3  received the overall argument in terms of what would be in the
4  grid.
5  THE COURT: Yes, I've seen that.
6  Let me start with that. I don't think you can do
7  that. The circuit has entered an order. It's on appeal.
8  Judge Glasser's decision is on appeal. I don't think he has
9  jurisdiction to go ahead, modify now. I'm sure if you want to
10 unseal certain documents and you have the agreement of
11 Mr. Doe's counsel and, Mr. Learner, I can't imagine why he
12 objects to any unsealing, do a consent motion to the circuit,
13 refer to me -- they may decide it themselves but the notion
14 suggested in a footnote in your letter Judge Glasser still has
15 jurisdiction to modify his orders that are on appeal, he'll
16 determine that ultimately.
17 MR. KAMINSKY: That's fine. It was important to
18 the government that it alert --
19 THE COURT: Appear reasonable in saying certain
20 things don't have to be sealed?
21 MR. KAMINSKY: Yes.
22 THE COURT: I understand that. You have to do it
23 the right way.
24 MR. KAMINSKY: We appreciate that, your Honor.
25 It's certainly we take what you say to heart, also let you

SS    OCR    CM    CRR    CSR

5

1  know we did not cavalierly send the letter to whatever judge
2  was closest. We talked about it and after our understanding
3  of how the case unfolded, we did think it was appropriate,
4  although certainly after speaking with Mr. Doe's counsel, we
5  understand there are arguments against that.
6          One of the reasons we forwarded to your Honor
7  yesterday our letter to the Second Circuit was a bit more of
8  an explanation as to why we did what we did. Of course,
9  hopefully, now the Second Circuit and we would be happy if it
10 were the case, would tell us, the government to hold your
11 horses, you'll get to the unsealing when we say you do.
12         THE COURT: As I say, I suspect without knowing if
13 everyone is consenting, the circuit will allow modification of
14 its order or Judge Glasser's order. You're divested by the
15 notice of appeal if Judge Glasser's injunction and interim
16 injunction from the circuit. I don't think there's power of
17 the district court to go ahead and decide that.
18         The other point I will dispose of quickly. With
19 regard to Mr. Beys's argument, one of the things the circuit
20 intended me to do was to remedy or conduct hearings on prior
21 violations. I don't see that at all. That is not part of the
22 implementation directive I see from the circuit. That I think
23 is not going to happen as to past violations until the circuit
24 resolves the appeal. If you feel differently, you want my
25 mandate to be expanded, you could make a motion to the circuit

SS    OCR    CM    CRR    CSR

```
                                                                    6

 1   to do that and the circuit will determine that how far it
 2   thinks best.
 3            Mr. Beys?
 4            MR. BEYS:  Nothing, thank you.
 5            THE COURT:  With regard to Mr. Lerner's
 6   application, there are two problems.  Number one, still much
 7   too amorphous to lead me to any other conclusion you're
 8   looking advisory opinions that could be used to gradually wear
 9   away at the injunctive orders in place.  No need to bother to
10   deny that.  I will tell you it is sufficiently vague that I'm
11   unable to give you the advice you're looking for.
12            Mr. Roe says he's going to commence a lawsuit.  I
13   won't know whether it violates the injunction the circuit has
14   entered until he goes ahead and commences that lawsuit.  I
15   think there's a very good chance, depending on what he puts in
16   there, that it will.
17            There are numerous, very vague references to matters
18   in the public record.  Some of the public record, you tell me
19   matters are discussed.  They're not discussed.  The press
20   release, for example that was issued in 2000, at least the
21   copy I've been given does not refer by name to Mr. Doe at all,
22   anyone.
23            MR. LERNER:  It does.
24            THE COURT:  My copy doesn't.  I'll tell you, I've
25   been through it with a fine-toothed comb.  Maybe I have a
```

7

1 redacted copy.
2      MR. LERNER:  Footnote, if you're looking at the
3 press release, JA1153, footnote number 2 on the bottom of that
4 page.
5      THE COURT:  The press release had footnotes?
6      MR. KAMINSKY:  The government can concur with that
7 fact.
8      MR. BEYS:  As does Doe, your Honor.
9      MR. LERNER:  Doe's counsel agreed in their letter
10 that Roe has the knowledge in his letter that Roe may
11 disseminate documents that are already in the public domain.
12 Therefore, we would like a declaration by this court that he
13 may do so.
14      MR. BEYS:  We would object, Judge.
15      THE COURT:  I'm not doing that.  What you can do,
16 if you want me to make a ruling, to give me specifically the
17 documents that you say are in the public domain and then we'll
18 have a hearing as to whether everyone agrees those are in the
19 public domain.
20      MR. LERNER:  Your Honor, I provided the court with
21 the joint appendix with tabbed documents that we contend are
22 already in the public domain.
23      THE COURT:  Your request was not phrased just in
24 terms of distributing those documents.  It was phrased in
25 terms of extrapolating from it, allowed that possibility.  I'm

Case 1:13-cv-03905-LGS Document 32-15 Filed 08/21/13 Page 9 of 17
Case 1:98-cr-01101-ILG Document 107 *SEALED* Filed 04/08/11 Page 12 of 26 PageID #: 1378

8

1  not going to allow you to extrapolate from that. What you're
2  going to have to do, if you want any kind of advisory opinion
3  from me, is to get preclearance of exactly what it is you're
4  going to say.
5       What I suggest to you, you submit a chart. The
6  chart has a left column of single-sentenced statements. It
7  has a right column of where those statements are in the public
8  domain. If that's the case, then I may approve that.
9       Mr. Beys, why would I not approve that?
10      MR. BEYS: We would like the opportunity to speak
11 to the question of inadvertent disclosure. What we said in
12 our papers, we don't think we can stop Mr. Roe from talking
13 about or disseminating what's already out there. We could be
14 wrong. The Second Circuit could have a different view of it
15 and, moreover, we would like the opportunity to brief the
16 issue of whether the government did it inadvertently 11 years
17 ago when it spent 13 years trying to conceal that fact.
18      THE COURT: But if it's in the public domain, isn't
19 it already out there?
20      MR. BEYS: Like I said, your Honor, we think that's
21 the case. We wrote that. We could be wrong. But yes, it's
22 already out there, names Mr. Sater by name in one line.
23      THE COURT: Right. That's what I'm concerned about
24 the tone and nature of Mr. Learner's paper, that you will take
25 one small reference, combine it with other things you know

SS    OCR    CM    CRR    CSR

9

1  from documents that were not in the public domain and give
2  that public domain statement of a minor nature a whole new
3  life and that you will not be permitted to do.
4      I'll be glad to consider specific statements that
5  you wanted to make with sources and then I'll determine if you
6  can make those statements.
7      I also have to tell you, Mr. Learner, I thought your
8  papers were absurd. It was like a comic book characterization
9  of what legal papers are supposed to look like. When you have
10 Mr. Roe talking about engineering decompensation, I just can't
11 imagine any federal judge finding that the least bit
12 persuasive. I'm looking for facts in here. I've got an
13 affidavit, reads similarly to some of the pro se affidavits I
14 get. I don't understand what you're trying to achieve.
15     Is this the way you write in all your cases?
16     MR. LERNER: This is not an ordinary case. We felt
17 it was warranted.
18     THE COURT: I think it's not. No case is ordinary.
19 Every case is entitled to particular special attention and
20 effective advocacy is effective advocacy no matter what the
21 context is. If you want to get to me, at least, or any other
22 judge that's going to touch this case, let's do legal papers
23 the way legal papers are normally done, not like a comic book.
24     Anything further?
25     MR. BEYS: One question. This is what I meant to

10

1   ask before, your Honor. Regarding our contempt motion, in
2   addition to writing to the Second Circuit for clarification,
3   would your Honor have a problem with us bringing an order to
4   show cause to Judge Glasser who does still retain jurisdiction
5   over the underlying case? We believe, as we've written --
6           THE COURT: Don't you want to wait for the circuit
7   to affirm or reject those injunctions?
8           Why do you need to do that now?
9           MR. BEYS: For one reason, your Honor. There is a
10  statement that he's going to file a lawsuit in state court.
11          THE COURT: That won't be addressed. If he does
12  that and he has to be put in jail because he does something
13  like that, that will not be addressed by your order to show
14  cause for past violations.
15          MR. BEYS: That's true. That is our one concern.
16          THE COURT: As I said, I'm not advisory opinions.
17  The next thing Mr. Roe may hear from me is why he shouldn't be
18  put in the MDC for violating the Second Circuit's injunction.
19  That's all there is to it. There's nothing more that we can
20  do at this point.
21          MR. BEYS: Thank you.
22          THE COURT: I will tell you, Mr. Learner, the
23  threats, they fall on deaf ears. I have no investment in this
24  case. If Mr. Roe doesn't violate the injunction, I don't have
25  anything to do. If he does, I have something to do. That's

         SS       OCR      CM      CRR      CSR

11

1  it.
2              Anything else?
3              MR. BEYS:   No, your Honor, thank you.
4              THE COURT:   Mr. Kaminsky?
5              MR. KAMINSKY:   Very briefly.  The Second Circuit
6  mandate does specifically entrust your Honor with enforcing
7  the district court's orders.  One such order that still has
8  not been complied with -- it is baffling -- they still
9  maintain the very orders that are subject to the injunction
10 and the TRO.  The case that was handed up to your Honor
11 earlier before by Mr. Beys, the in re contempt proceedings of
12 Gerald Crawford, specifically state that a litigant does not
13 have the ability to say "I'm going to violate the order, hold
14 on to this stuff and wait for the circuit to prove I'm right."
15 He must hand over and/or place those documents in some type of
16 transitory place and wait for the circuit to rule, but he
17 still has them, in direct contravention of the court's order
18 saying give them back, give them to the U.S. Attorney's
19 Office.  No one gave anything.
20             THE COURT:   The directive to give them back is in
21 Judge Glasser's order, not the circuit, right?
22             MR. KAMINSKY:   Right.
23             MR. LERNER:   I would like to object to that
24 statement, your Honor.  There is no order directing the
25 destruction of electronic copies or return of photocopies.

             SS     OCR     CM     CRR     CSR

12

1  The original that was provided to Mr. Roe by Mr. Bernstein,
2  lawfully, at that, was handed up to court. It is in the
3  court's possession. It was stated at the hearings that the
4  original has been returned. Therefore, there is no further
5  original to be returned and there are only electronic copies.
6          THE COURT: Mr. Kaminsky, quote for me the portion
7  of the order upon which you are relying. Direct me to that.
8          MR. KAMINSKY: The Second Circuit mandate of yours
9  or Judge Glasser's order to them?
10         THE COURT: I assume you will agree with me the
11 Second Circuit's order in and of itself does not require the
12 return of either originals or copies, right? It incorporates
13 Judge Glasser's orders?
14         MR. KAMINSKY: That's correct. It says you have
15 the limited mandate of implementing and overseeing compliance
16 with our orders and the previous orders entered by Judge
17 Glasser. That's a quote. One of those orders, your Honor,
18 because I'm currently immersed in drafting the appeal, I have
19 two hearings singed into my head and at the end of the
20 July 20th proceeding, Mr. Doe's counsel at the time,
21 Ms. Moore, says specifically to Judge Glasser we would like
22 you to include in the TRO copies of the documents because
23 although Mr. Roe is telling you he's given them back to you,
24 what good is that if he has the copies? The judge said I
25 agree. Mr. Learner's response is are you issuing a further

SS     OCR     CM     CRR     CSR

13

1 TRO? The judge says I am.
2     THE COURT: I need to see that. I'm sure you're
3 not misrepresenting that but I need to see it.
4     MR. LERNER: There's no specific directive by the
5 court --
6     THE COURT: I'll look at it and then I'll see.
7     MR. BEYS: If the government doesn't submit it,
8 we'll gladly submit it to your Honor.
9     THE COURT: Does anybody have it here?
10     MR. BEYS: We don't have the transcript here. We
11 have a joint appendix.
12     MR. KAMINSKY: I point you to, beginning on line 4
13 of page 706 of the transcript.
14     THE COURT: Mr. Learner, you want to respond to
15 what the transcript says?
16     MR. LERNER: May I take my copy?
17     THE COURT: Sure. That's our copy but you can look
18 at ours or we can trade, whichever you prefer.
19     (Pause.)
20     MR. LERNER: Page 706 of the joint appendix?
21     THE COURT: Correct, line 4.
22     (Pause.)
23     MR. LERNER: There's no specific directive by Judge
24 Glasser to destroy the electronic copies of the document and
25 there's been no dissemination of the document. Therefore,

    SS    OCR    CM    CRR    CSR

14

1 there's been no violation of any TRO and we would request
2 further briefing before you wish to entertain this issue.
3    THE COURT: No, it's absolutely clear on its face
4 Judge Glasser intended you to destroy electronic copies and to
5 return any photocopies. If that is not done by the end of
6 Monday, I will hold your client in contempt.
7    MR. LERNER: We would need to brief that. I would
8 like the court to be aware it is actually impossible to purge
9 electronic files.
10    THE COURT: I understand. They can always be dug
11 up by a technician, that the most you can do is overwrite
12 them. You can also remove from the first level of the
13 recording media those documents so that they cannot be
14 accessed by anyone but a technician. That's fairly easy to
15 do.
16    Mr. Learner, are you playing games with me?
17    MR. LERNER: No.
18    THE COURT: You think I don't know how these things
19 work?
20    MR. LERNER: No, I don't know what your Honor
21 knows.
22    THE COURT: They're stored on files, on the
23 C drive. You find the copies, you delete them. I understand
24 that doesn't mean a technician couldn't unpeel the layers of
25 data written over them and find them at some point. I'm not

     SS  OCR  CM  CRR  CSR

Case 1:13-cv-03905-LGS Document 32-15 Filed 08/21/13 Page 16 of 17
Case 1:98-cr-01101-ILG Document 107 SEALED Filed 04/06/11 Page 19 of 26 PageID #: 1385

15

1  requiring you to do that at this point but I am requiring you
2  to delete them.  Don't tell me that can't be done, sir.
3              MR. LERNER:  Your Honor, these files are backed up
4  every night on the computers.  They're on an off-site service.
5  That is the problem.
6              THE COURT:  The backups?
7              MR. LERNER:  Yes.
8              THE COURT:  Mr. Kaminsky, what's your view as to
9  backup tapes?
10             MR. KAMINSKY:  Your Honor, I'm actually trying to
11 process this.  I think, programs -- the best thing to do is to
12 possibly get an affirmation from someone that works at the
13 company that that backup will be kept in a certain place by a
14 certain proprietor, will not be able to be accessed.
15             There is the possibility the circuit will disagree
16 with Judge Glasser and then that document may need to be
17 accessed.  We just don't think they should have access to it
18 at this time.
19             THE COURT:  I think, for that reason, it's good
20 enough for now to have no accessible copies from any desktop
21 computer.  The fact that they're in backup tapes, we might
22 require a purging of those later, but we will not require it
23 now.  If they're on backup tapes, that's fine.  I don't want
24 anyone with access to the network that your client uses to be
25 able to get into that network from a desktop or laptop

```
                                                              16
 1  computer and access those documents, but solely resident on
 2  the backup tapes.
 3          Anything else?
 4          (No response.)
 5          THE COURT:    Thank you all.
 6          This transcript is available to both sides if they
 7  wish to order it.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

              SS    OCR    CM    CRR    CSR
```