# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

J. KRISS and MICHAEL EJEKAM alone and for BAYROCK,
MERRIMAC LLC; BAYROCK GROUP LLC, BAYROCK SPRING
STREET LLC; BAYROCK WHITESTONE LLC; and BAYROCK
CAMELBACK LLC; and E/O ERNEST, E/O JUDIT GOTTDIENER;
ERVIN TAUSKY; and SUAN INVESTMENTS

        Plaintiffs,

        v.

BAYROCK GROUP LLC; TEVFIK ARIF; JULIUS SCHWARZ;
FELIX SATTER; BRIAN HALBERG; SALVATORE LAURIA;
ALEX SALOMON; JERRY WEINRICH; SALOMON & CO. PC;
AKERMAN SENTERFITT LLP; MARTIN DOMB; CRAIG BROWN;
DUVAL & STACHENFELD LLP; BRUCE STACHENFELD; DAVID
GRANIN; NIXON PEABODY LLP; ADAM GILBERT; ROBERTS &
HOLLAND LLP; ELLIOT PISEM; MICHAEL SAMUEL; MEL
DOGAN; BAYROCK SPRING STREET LLC; JOHN DOES 1-100;
BAYROCK WHITESTONE LLC; BAYROCK CAMELBACK LLC;
BAYROCK MERRIMAC LLC; BAYROCK GROUP INC.TAMIR
SAPIR; ALEX SAPIR; "SAPIR DOES" 1-100;
WALTER SAURACK; SATTERLEE STEPHENS BURKE & BURKE
LLP; KELLY MOORE; MORGAN LEWIS & BOCKIUS LLP; NADER
MOBARGHA; MICHAEL BEYS; BEYS STEIN & MOBARGHA LLP;
ISTAR FINANCIAL; "LENDER INVESTOR DOES" 1-100;
~~NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA.;~~

**13-CV-3905**

**(LGS)**

**AFFIRMATION
AND
MEMORANDUM**

**MOVANTS' REPLY**

---

<div style="background:gray">

## MOTION FOR REMAND
## AND FOR ENLARGEMENT OF TIME
## IN RESPECT OF THAT NOTICE OF REMOVAL OF JUNE 21, 2013 ECF NO. 8

### ORAL ARGUMENT WILL BE REQUESTED BY LETTER

</div>

### 28 U.S.C. §1447, FED. R. CIV. P. 6, LOCAL R. 6.3, IND. R. III(B)

**FREDERICK M. OBERLANDER**
**LAW OFFICE OF FREDERICK M. OBERLANDER, PC**
28 Sycamore Lane (Post Office Box 1870)
Montauk, New York 11954
Telephone:   (212) 826-0357
Facsimile:   (212) 202-7624
Email:    fred55@aol.com

*Counsel for Plaintiffs*

**RICHARD E. LERNER**
**LAW OFFICE OF RICHARD E. LERNER, PC**
255 West 36th Street, Suite 800
New York, NY 10018
Telephone:   (917) 584-4864

Email:    richardlerner@msn.com

*Co-Counsel for Plaintiffs*

# <u>ARGUMENT</u>

Defendant Sater removed solely on federal officer grounds pursuant to 28 U.S.C. §1442(a)(1).

In opposing our motion to remand, he argues his removal petition need only establish these elements:

(1)  He had federal officer status when committing the act(s) we would complain of as a cooperator committing them under the orders of a federal agency or officer *while on duty as an officer in the course of a criminal investigation*;

(2)  There is a causal nexus between the orders and the act(s);

(3)  He has a *colorable **federal*** defense of immunity for those acts (justification is an equivalent, a claim of immunity by reason of exigency) arising from those orders.

*Reiser v. Fitzmaurice*, 1996 WL 54326 (SDNY 1996), on which Sater relies heavily. But, *Reiser* notes, *colorable* doesn't mean any slop put before a judge suffices, and Sater misrepresents *Reiser* and other cases on point. As *Nesbiet v. GE*, 399 F. Supp. 2d 205 (SDNY 2005) following *Reiser*, explained:

> The first requirement for federal officer removal – a colorable **federal** defense – is broadly construed. But, citing *State of Colorado v. Symes*, 286 U.S. 519 (1932), the court added, "When a defendant seeks removal pursuant to the federal officer removal statute…it must fairly appear from the showing made that *the defendant's removal claim is not without foundation and is made in good faith*." [Emph. Add.]

Importantly, while *factual* underpinnings may be interpreted broadly, where *as a matter of law* there is no immunity or justification **federal** defense, there *is* nothing colorable. Despite what Sater would tell you, federal officer removal routinely fails where *as a matter of law* there is no **federal** defense. Two of the best examples are the back-to-back motor vehicle accident cases *State of North Carolia v. Ivory*, 906 F.2d 999 (4th Cir. 1990), and *State of North Carolina v. Cisneros*, 947 F.2d 1135 (4th Cir. 1991).

In those cases, which in turn relied on *Mesa v. California*, 489 U.S. 121 (1989), which predicated officer removal jurisdiction on a **federal** defense arising from a **federal** duty, Defendants were Marines who while in convoy under lawful order had collisions with civilian-operated vehicles under circumstances arguably involving culpability of the military driver under North Carolina traffic laws.

1

In both cases the removal petition tracked the language of §1442. And in both cases the Fourth Circuit held that absent exigency *related to the Marine's federal duties*, there was no *federalized* immunity defense. Because it is so important and so destroys what Sater's papers attempt to argue, we excerpt:

> Of course, an "officer need not win his case before he can have it removed," *Willingham v. Morgan*, 395 U.S. 402 (1969), but under Mesa he must allege facts that would support a colorable immunity defense if those facts were true. …

> Section 1442, of course, operates under the Supremacy Clause…but only to the extent that its constitutionally-derived requirements are met. In the unusual case, where some special exigency exists, the state interest in regulation of its highways must give way under Sec. 1442 to the federal interests implicit in any defense of immunity**. For example, state law will not apply to federal officials "engaged in the performance of a public duty where speed and the right of way are a necessity."**…However, Ivory has alleged nothing which justified his making the left hand turn without yielding the right of way to oncoming vehicles. The convoy was returning from a routine transport of marines; nothing resembling an emergency existed. Ivory had no reason to accelerate through the intersection…There may, of course, be circumstances where military drivers may properly invoke the removal provisions of Sec. 1442(a)(1). **We cannot hold, however, that the mere presence of a driver in a military convoy automatically gives rise to a colorable claim of immunity from local traffic laws.**

> A word is due on the dissenting opinion, which we believe fails to follow the Supreme Court's decision in *Mesa*…

> The dissent contends that Ivory has presented a colorable claim of immunity because he "was under orders from his military superiors to proceed into intersections if he saw that it was safe to do so" and "[h]e did think it was safe to enter into this intersection." This reasoning is, of course, tautological. In point of fact, it is only safe and reasonable to enter an intersection when one has the right of way. The kind of routine order relied upon by Ivory, which outlined the same duty already incumbent upon him under ordinary traffic laws, cannot without more be the basis of federal immunity. **At bottom, the dissent is simply relapsing into the same "scope of employment" test for removal of state prosecutions which was explicitly rejected by the Supreme Court in Mesa…**

> **To be in federal court under Sec. 1442 one must first allege a colorable federal defense, and the only conceivable federal defense here is** <u>immunity</u> **from the criminal enforcement of state and local traffic laws. The dissent would have the very act of driving in a military convoy establish a federal immunity defense, despite the absence of any military emergency, the lack of any order to maintain a discrete distance between convoy trucks, and the absence of any indication to oncoming vehicles that they should stop and yield the right of way. To establish a federal immunity defense in this situation, resulting in dismissal of the criminal charges, is "carte blanche" for drivers in a convoy to proceed as they please, notwithstanding state laws to the contrary.**

If a Marine in convoy running a red light has no **federal** immunity defense even though on duty because there was no aspect of his federal officer status, that is, no aspect of his **duty**, that required him to run that light, then just because Sater – if it's true, as we do **not** concede –served as a cooperator for years does not mean he, either, would have a **federal** immunity defense if he ran a red light on the way to visit his purported FBI handlers absent some exigency requiring him to do so.

And, it should be obvious he would have no **federal** immunity defense if on the way to the FBI he stopped and robbed a bank, even if he needed the cash to buy gas to get to the meeting.

And, it should be obvious he would have no **federal** immunity if he defrauded a bank by concealing his conviction on a loan application, even if he needed the cash to buy gas.

Unless his fraud on the bank – or anyone else – arose directly from exigent performance of his duty as a federal officer, meaning as a cooperator committing that robbery or fraud **directly within the context of a criminal investigation** – he has no **federal** immunity defense **as a matter of law**[1].

Moreover, and relatedly, unless his fraud on the bank – or anyone else – was done not only in the performance of his duty as a federal officer, but at the direct and specific control of his superior federal officer, he has no **federal** immunity defense as a matter of law[2].

---

[1] From *Reiser*: [I]n *Venezia v. Robinson*, 16 F.3d 209 (7th Cir. 1994)…Robinson, working as an FBI informant, attempted to solicit a bribe from the owner of a vending and amusement business…The owner refused to pay, and then filed a suit in state court asking for an injunction against extortion…Robinson removed the case under section 1442(a)(1), whereupon the plaintiff sought a remand. The district court denied the motion to remand…In affirming this decision, the Seventh Circuit found that Robinson had proferred a plausible federal defense. Specifically, the court said:

> A federal agent or informant **who asserts that he was (or is) acting in the course of a criminal investigation** is entitled to remove under section § 1442(a)(1)..

[2] From *Reiser*: A defendant meets the second requirement – acting under orders – by showing a "substantial degree of *direct and detailed federal control* over the defendant's work" … "*Courts generally have not found jurisdiction where the government officer did not **directly require** a purported agent to take specific actions.*" [Emph. Add.] See *McGillick v. WTC Props.* LLC, 2004 WL 2049260 (SDNY 2004)

Amazingly, Sater not only fails to meet these requirements, he doesn't even try. Not only has he proffered no evidence (undoubtedly because he has none), you would think somewhere in his papers he would at least allege with specificity even to meet *Iqbal* or *Twombly* plausibility, nevermind the particular rules of §1442(a)(1) colorability, "OK, I concealed my conviction from my partners at Bayrock, and from all the banks from which we borrowed billions, and from my victims, but I did so under such and such an order of this FBI agent or that U.S. Attorney which specifically directed me to do so as an inextricably intertwined part of a particular, ongoing criminal investigation…"[3]

But you'd be wrong. Thus as a matter of law he *has not* established, and indeed as we show now he *cannot* establish, the three requisite elements, not even in black and white, let alone colorably, and his papers are, accordingly, a trifecta of failure because:

(1) As noted in our motion, there are no claims at all with respect to which he can establish his status and defense, the initiating document being merely a Summons with Notice;

(2) Even if given dignity, his argument that our Summons with Notice may be construed as an initial pleading is *based in his own words on* our statement therein that forthcoming claims will sound in *fraud qua **illegal** concealment of his RICO conviction and sentencing*,[1]

(3) He says, entirely basing removal on this, any such fraud claim we make is subject to colorable defenses of immunity and justification because he had been legally ordered by the FBI, U.S. Attorneys, and a federal judge (Glasser, J.) *to hide his conviction*; but…

<u>As to any such purported orders from the FBI and U.S. Attorney:</u>

a. Aside from his cooperation agreement, which we put in evidence as he has not, he gives no evidence of, or even alleges, time, date, place, issuer, authority, or decretal contents of any order requiring him to conceal his conviction; and in any event the agreement only covenants not to disclose cooperation, not conviction;

---

[3] "The burden is on the accused to submit a 'candid specific and positive' statement of the facts so that the court will be able to determine the validity of his claim for removal." *Colorado v. Symes*, 286 U.S. 510 (1932). And he has no Fifth Amendment privilege, as asserting federal officer removal requires he admit to what he is accused of, *Colorado v. Symes*, and in any event that ship has sailed, as he had no trouble admitting at his sentencing that he did indeed defraud banks by concealing his conviction because he knew, thus acted with the specific intent to defraud, they would not lend if they knew of it. See Exhibit 1, the sentencing transcript, at "A".

b. DOJ regulations require orders to cooperators authorizing them to commit what would, absent such authorization, be fraud – the crux of this removal issue and without which authorization Sater has no colorable claim of immunity – be in writing countersigned by the FBI and U.S. Attorney[II]; by the best evidence rule or its reasonable equitable equivalent Sater must be estopped from alleging their existence when he had every opportunity, under protective order if necessary, to proffer them into evidence or proffer secondary evidence or at least describe them in adequate time, place, manner, and content specificity; moreover,

c. His cooperation agreement provides that at all times for the rest of his life he will provide the government with a list of all his assets and make all of them to the complete exhaustion thereof available for restitution to his victims, so any idea that that agreement allowed him to perpetrate fraud on his victims by concealing or fraudulently transferring his assets to trust (as he did) is facially frivolous; See Exhibit 2, the cooperation agreement, at "A".

d. The frauds we will complain of are frauds to which Sater "came," injecting himself into situations where he **knew** or was reckless in not knowing that concealment of his conviction would be fraud, **choosing** to do so **not because of any order but because of pure greed**, not as a federal officer investigating crime but to make a buck, in his case millions and millions of them, and hide it from his victims.

It's frivolous to argue that a cooperator is entitled based on justification, **which requires exigent and unavoidable emergency action**, to decide on his own, for example, as Sater did, year after year to voluntarily borrow hundreds of millions of dollars from banks and sell securities by what for anyone else would be felony concealment fraud, not disclosing his conviction in the face of legal duty to do so, because the law is clear that where one can simply shut up, one **has** no privilege to open his mouth and defraud[III]. **It isn't justified when a cooperator decides on his own to hide his conviction so he can commit bank and securities fraud by that concealment and live lavishly off the money while occasionally called to cooperate any more than he's justified hiding his conviction so he can own a gun or vote.**

e. Circuit precedent on all fours says where a cooperator fraudulently conceals his conviction even if not final from third parties, **a cooperation provision requiring silence as to cooperation <u>is not a license to lie</u>**, but is fraud, a breach of the agreement justifying revocation *and* justifying sentencing enhancements;[IV] and

f. That precedent also holds such a provision *requires* the felon to ask the government before fraudulently concealing his conviction if he is to be heard to claim the right to conceal it, yet tellingly **and fatally** Sater makes no proffer or allegation that he ever asked let alone ever received permission to lie[V]; no surprise because…

g. **The FBI and U.S. Attorney (Loretta Lynch, same today) and Judge Glasser intentionally placed the facts of his conviction and cooperation in the public domain in 2000 and 2001, respectively, making it <u>impossible</u> for such orders, if they ever existed in the first place, to be lawful after those dates.[VI,VII]**

<u>As to such purported orders from Judge Glasser:</u>

a.  Again Sater puts no such order, nor its decretal language, into evidence, instead alleging his entire case was sealed without producing any such order. Yet…

b.  A case sealed without signed, docketed order is not sealed, but illegally concealed;

c.  No sealing order is lawful which conceals information in the public domain, *a fortiori* where it got there by the deliberate acts of the presiding judge;

d.  No sealing order can lawfully prohibit revealing the same information as is in a sealed document when its provenance is *outside* of the sealed document;[VIII] and

e.  Judge Glasser, who ought to know the scope of any <u>actual</u> order he issued, such as any sealing order that might reach Sater's cooperation agreement, stated on the record years ago that **Sater was always free to distribute his cooperation agreement** (and proffer) to anyone he wanted[IX]; no surprise as…

f.  **Judge Glasser issued a formal order, submitted to the U.S. Supreme Court and to the Second Circuit, confirming <u>Sater's cooperation agreement was never submitted into court and was never subject to any sealing order</u>;[X]**

g.  **In the same order Judge Glasser confirmed Sater's 2009 sentencing was held in <u>open court</u>, under Sater's real name, details of his cooperation read aloud, which Judge Glasser would never have done had "the whole case been sealed," as Sater says it was, but cannot prove given this above all else;[XI]**

h.  The admitted, and obvious, after-the-fact concealment from all public records of his open court sentencing in his own name, *a fortiori* absent post-sentencing motion even to redact his name, *a fortissimo* its concealment from the Gottdiener Plaintiffs and his other RICO victims, was <u>illegal</u>, the falsification of judicial records, the violation of victims' statutory and civil rights, obstruction, and mail and wire fraud, and conspiracy to commit same. No order of any judge or DOJ or other executive official, all constitutionally bound to enforce the law, can ever make it otherwise[XII].

i.  Unlike the executive, which can exercise prosecutorial discretion and immunize persons against criminal liability, by separation of powers a federal judge is devoid of authority to do so, *de facto* or *de jure*, especially as to strangers to the case; and

<u>In either case, whether purported orders of the FBI, U.S. Attorney, or Judge Glasser:</u>

j.  Sater knows his argument is swill, as no later than 2007 he told Bayrock's CEO of his secret conviction, so couldn't have thought revealing it was prohibited (or, if he asked and got permission to tell Schwarz, his failure to proffer, or allege, he asked and was denied permission to tell everyone else he defrauded, so "had" to defraud them, or that was told to go defraud them, is fatal to his removal).[XIII]

k.  Given absence of proffer or allegation his fraud were committed by direct orders, if the court allows removal it is *sub silentio* ruling that to preserve his viability a cooperator can lawfully steal by fraud and deceit under "implied" orders and lawfully keep the money, immune from suit by his victims, by definition thus ruling

that, as a lawful taking by fraud is not in fact fraud but is a Fifth Amendment taking, adjudicating what is forbidden it, as only the Court of Claims can do so.

1. ***Sater has admitted in sworn testimony in 2010 his knowledge, given to him by the advice of his own counsel who as a former EDNY AUSA ought to know, that <u>his prior concealments of his conviction, exactly the acts of concealment fraud we would complaint of, were indeed criminal</u>.***[XIV]

<h3 style="text-align:center">C<span style="font-variant:small-caps">ONCLUSION</span></h3>

For all the foregoing reasons, the motion to remand must be granted at this time, or a fact-finding (evidentiary) hearing must be held, and all other relief as is just and equitable be granted.

Pursuant to 28 USC §1746 the undersigned attest under penalty of perjury that the referenced exhibits are true to the originals as cited and all adjudicative and legislative facts stated herein are true and correct to their best knowledge.

For technical reasons (ADOBE law office failure) the exhibits will be uploaded to ECF separately.

Respectfully submitted August 27, 2013,

/s/ Frederick M. Oberlander        /s/ Richard Lerner
Counsel for Plaintiffs              Co-Counsel

[I] See, generally, Department of Justice Guidelines Regarding the Use of Confidential Informants. The following is excerpted from the Office of Inspector General Special Report, September 2005, available at http://www.justice.gov/oig/special/0509/:

> The Confidential Informant Guidelines permit the FBI to authorize confidential informants to engage in activities that would otherwise constitute crimes under state or federal law if engaged in by someone without such authorization. Such conduct is termed "otherwise illegal activity" or "OIA."
>
> There are two types, or levels, of OIA: "Tier 1 OIA" and "Tier 2 OIA." Tier I OIA, the most serious, is defined as any activity that would constitute a misdemeanor or felony under federal, state, or local law if engaged in by a person acting without authorization and that involves the commission or the significant risk of the commission of certain offenses, including acts of violence; corrupt conduct by senior federal, state, or local public officials; or the manufacture, importing, exporting, possession, or trafficking in controlled substances of certain quantities.177 "Tier 2 OIA" is defined as any other activity that would constitute a misdemeanor or felony under federal, state, or local law if engaged in by a person acting without authorization.
>
> **Both Tier 1 and Tier 2 OIA must be authorized in advance, in writing, for a specified period not to exceed 90 days.**
>
> **Tier 1 OIA must be approved by an FBI SAC and the "appropriate Chief Federal Prosecutor," typically the U.S. Attorney in the district that is participating in the investigation utilizing the CI.**
>
> **Tier 2 OIA may be approved by a senior FBI field manager (usually an Assistant Special Agent in Charge (ASAC) or a Supervisory Special Agent (SSA)), but does not require the approval of the U.S. Attorney.180 The Guidelines state that the FBI is never permitted to authorize a CI to participate in an act of violence, obstruction of justice, or other enumerated unlawful activities. CI Guidelines § III.C.1.b.**

[III] From *In re Par Pharm. Sec. Litig.*, 733 F. Supp. 668 (SDNY 1990): "Defendants rely heavily on a line of cases holding that a corporation is under no duty to announce publicly that it or its officers are guilty of uncharged criminal behavior, or to accuse itself of antisocial or illegal policies. See *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, (1st Cir. 1987); *United States v. Matthews*, 787 F.2d 38 (2d Cir. 1986); *GAF Corp. v. Heyman*, 724 F.2d 727 (2d Cir. 1983); *Amalgamated Clothing and Textile Workers Union v. J.P. Stevens & Co.*, 475 F. Supp. 328 (S.D.N.Y. 1979), vacated as moot, 638 F.2d 7 (2d Cir. 1980); *Crouse-Hinds Co. v. InterNorth, Inc.*, 518 F. Supp. 416, (N.D.N.Y. 1980). However, these cases are not dispositive here. The illegality of corporate behavior is not a justification for withholding information that the corporation is otherwise obligated to disclose. See also Roeder, 814 F.2d at 25 ("The securities laws do not operate under the assumption that material information need not be disclosed if management has reason to suppress it."); *Ballan v. Wilfred American Educational Corp.*, 720 F. Supp. 241, 249 (E.D.N.Y. 1989) ("The fact that a defendant's act may be a crime does not justify its concealment.").

FN: [H]e cites no authority for the proposition that a person may mislead the investing community with impunity merely because the information necessary to make the statements not misleading may include incriminating information. Rather than force him to incriminate himself, the federal securities laws require him to refrain from issuing misleading statements. He did not have to permit the issuance of the misleading statements which created the duty to disclose the incriminating information. The decision in *United States v. Matthews*, 787 F.2d 38 (2d Cir. 1986), on which R.K. Patel relies in support of his argument, is not inconsistent with this statement of the law. Furthermore, R.K. Patel never asserted his fifth amendment privilege as a ground for not disclosing the information at the time disclosure was called for. See *Ballan*, 720 F. Supp. at 248.

IV Exhibit 6 is a selection of pages from the sentencing transcript of Myron Gushlak, *United States v. Gushlak*, 03-CR-833 EDNY (Garaufis, J.) and from the appellate brief of the United States and the resulting Second Circuit decision showing the governments termination of cooperation agreement on grounds of breach where, *inter alia*, defendant fraudulently concealed his conviction for securities fraud while cooperating, prior to sentencing, as did Sater, and judge refused to give acceptance of responsibility credit, sentencing upheld in all aspects by the Second Circuit.

V (See preceding endnote.)

VI Exhibit 3 is a March 2, 2000 Press Release issued jointly by the FBI, the United States Attorney, EDNY (Lynch), and the NYPD, noting at "A" that Sater had previously been convicted (by his guilty plea) of racketeering charges.

VII Exhibit 4 is a set of documents, official public court records from the files of U.S. v. Coppa, 00-CR-196 EDNY (Glasser, J.) proving that no later than November 2001 the Assistant United States Attorney, EDNY, with the knowledge of presiding judge the Hon. I. Leo Glasser, publicly docketed and filed and so made part of the public record forever the fact of Sater's cooperation.

VIII *Butterworth v. Smith*, 494 U.S. 624 (1990).

IX Exhibit 5 is a July 20, 2010 transcript of an open court proceeding before Judge Glasser which at "A" states that Doe (Sater) had every right to disseminate his cooperation and proffer agreements.

X See *In re Application to Unseal the Docket and Contents of 98-CR-1101*, 12-MC-150 EDNY (Glasser, J.) and accompanying email transmission to court under separate cover.

XI *Id.*

XII See *Ex Parte United States*, 242 U.S. 27 (unanimous mandate absolute that no federal court has the authority under any theory of law or equity to refuse to sentence according to mandatory statutes. See also 18 U.S.C. §3663A (sentence of restitution is mandatory). See also, variously, 18 U.S.C §371, 18 U.S.C. §3771 (mandating government attorneys notify victims of statutory rights, including rights to petition for restitution and for writ of mandamus as to same, and requiring trial judge to enforce such), 18 U.S.C. 242, 18 U.S.C. §1506 (felony obstruction to conceal judicial records so judgment does not take effect), 18 U.S.C. §1962 *et seq.*, 18 U.S.C. §1341 and §1343. See U.S. v. Porcelli, 865 F.2d 1352 (2nd Cir. 1989) (failure to inform potential plaintiff of cause of action on the part of one with duty to so

disclose is mail or wire fraud, if so facilitated, and thus RICO predicate).

[XIII] See accompanying email transmission to court under separate cover.

[XIV] See Exhibit 7.