1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
   - - - - - - - - - - - - - - - - -X

   UNITED STATES OF AMERICA,            03cr833

                  v.                    U.S. Courthouse
                                        Brooklyn, New York
   MYRON GUSHLAK,
                                        November 17, 2010

                       Defendant.       11:15 p.m.
   - - - - - - - - - - - - - - - - -X


             TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
             UNITED STATES DISTRICT JUDGE


   APPEARANCES:

   For the Government:         LORETTA E. LYNCH, ESQ.
                               United States Attorney
                               By:  DANIEL SPECTOR
                               Assistant U.S. Attorney
                               271 Cadman Plaza East
                               Brooklyn, New York 11201

   For the Defendant:          ALAN FUTERFAS, ESQ.

   Also Present;
   Charles Linehan,
   Assistant District
   Attorney, NY County


   Court Reporter:             Burton H. Sulzer
                               225 Cadman Plaza East
                               Brooklyn, New York 11201
                               (718) 613-2481
                               Fax # (718) 613-2505



   Proceedings recorded by mechanical stenography, transcript
   produced by CAT.
```

Burton H. Sulzer - OCR, CM, CRR

                                                                    2

1               (Open court-case called-appearances noted.)
2               THE COURT:  Sorry for the delay.
3               This is a sentencing proceeding for Myron L.
4    Gushlak.  Mr. Gushlak, are you satisfied with the assistance
5    that your attorney has given you thus far in this matter?
6               THE DEFENDANT:  Yes, sir.
7               THE COURT:  We are slowly going to go through the
8    materials that I have reviewed for this sentencing so that we
9    don't miss anything.  There's a presentence investigation
10   report dated March 16, 2009, and then there's an addendum to
11   the presentence report dated December 1, 2009.  Has everyone
12   reviewed these two documents?
13              MR. SPECTOR:  I don't know that I've seen the
14   addendum.
15              MR. FUTERFAS:  Neither have I.
16              THE COURT:  Let me make sure it's the right case.
17   It is for Mr. Gushlak's case.  Let me show you the addendum.
18              Why don't the two lawyers come on up.  Mr. Gushlak
19   may remain seated while we do this.
20              Take a look and then we'll make copies for both
21   counsel.
22              MR. SPECTOR:  Thank you, Judge.
23              (Pause.)
24              MR. FUTERFAS:  All right, thank you, your Honor.  We
25   have had a chance to review it.

```
                                                                    27
 1   that correct?
 2              MR. SPECTOR:  Yes, your Honor.
 3              THE COURT:  The government offers three grounds for
 4   concluding that the defendant has not accepted.  One is that
 5   it's not warranted because of the obstructive conduct, which
 6   we have already discussed, and the second is that the Kealy
 7   e-mail in which he stated that he has no criminal record and
 8   has never had a run-in with the SEC constitutes a basis for
 9   denying him acceptance of responsibility, and the third is his
10   involvement in the alleged German stock fraud.
11              So on the Kealy e-mail, could you just briefly speak
12   to that.
13              MR. SPECTOR:  Certainly, your Honor.
14              THE COURT:  Then I'll hear briefly from the other
15   side -- briefly and briefly.
16              MR. SPECTOR:  There are a number of disturbing
17   aspects to the Kealy e-mail.
18              First of all, the context in which it's made in
19   which he not only says I have no criminal record but attaches
20   the dismissal order from the complaint in this case is clearly
21   intended to convey the false impression that the charges in
22   the case were dismissed.
23              In addition to that, he goes on to then make
24   statements about his relationship with the SEC.  He says, I've
25   had no contact with the SEC ever.  That is particularly
```

```
 1  galling because it seems to be totally gratuitous.
 2          THE COURT:  What about the argument that pursuant to
 3  his cooperation agreement he was not to disclose the
 4  circumstances of his cooperation?
 5          MR. SPECTOR:  He should have contacted his attorney
 6  and brought that to our attention and we could have dealt with
 7  it appropriately.
 8          That doesn't give him a license to lie and, again,
 9  even if we are assuming that that is the reason the defendant
10  essentially lied to Kealy about his criminal record, it
11  certainly doesn't explain him going on to make the statement
12  about the SEC, which is particularly galling because at the
13  same time he's now devoted ten pages of his brief to talking
14  about how he cooperated extensively with the SEC as well as
15  the government and the state, had all these meetings with the
16  SEC about his own conduct as well as other criminal conduct.
17          Lastly, the timing of this e-mail is disturbing
18  because it was the same -- I think it was the same week in
19  which he was meeting with prosecutors in another case to
20  testify in that case and his attorney certainly said Gushlak
21  was available to testify but implored them to try to avoid
22  using him.
23          Certainly, I can understand no one wants to be a
24  witness in any case, particularly an organized crime case, but
25  at the same time, the timing of this e-mail suggests that his
```

1  real motive, or at least a major component of his real motive,
2  was to avoid public disclosure of the truth, that is his
3  criminal conduct, because if people who deal with him in his
4  business know the truth about him, they are obviously going to
5  be less likely to deal with him.
6           MR. FUTERFAS:  Your Honor, this is being one of the
7  few times you'll hear this, but I actually agree with some of
8  what Mr. Spector said.
9           This raises an issue that I think people who are
10 cooperating in these kinds of cases face, and I think that
11 there certainly could have been a better way to handle this
12 and that's why I agree with Mr. Spector that the appropriate
13 way to handle this, I think, would have been to contact
14 counsel and say, Look, I'm in this situation -- as it turns
15 out, Kealy knew, I mean Kealy knew that Mr. Gushlak had
16 criminal problems, so as a practical matter he knew that
17 Mr. Gushlak had criminal issues and there is a report to that
18 effect.  But aside from that, there was some -- certainly it
19 could have been handled in a better way.
20          I think the question for your Honor, most
21 respectfully, is, was it a relatively rational approach to
22 take when, A, he's meeting with federal authorities during
23 that very same time; 2, and the time line of cooperation we
24 provided to your Honor, he was actively meeting not only with
25 federal authorities but the state authorities, and the last

1          MR. FUTERFAS:  Not beyond the letters that were
2    submitted.
3          THE COURT:  I've read everything.
4          MR. FUTERFAS:  Thank you, your Honor.
5          THE COURT:  Thank you.
6          All right.  Mr. Spector.
7          MR. SPECTOR:  Your Honor, from our perspective the
8    defendant should get absolutely no credit whatsoever for the
9    cooperation in light of everything that has gone on.  One
10   analogy that I think is helpful, because Mr. Futerfas is
11   essentially suggesting, well, if the defendant faces charges
12   somewhere else then we should just ignore that conduct.  That
13   is ridiculous, that is not the law, and an analogy that comes
14   up in --
15         THE COURT:  All I did was say that I wasn't
16   including it for the purpose of establishing the guideline.
17         MR. SPECTOR: I understand that.
18         THE COURT:  I'm not discrediting it or crediting it
19   for any other purpose.
20         MR. SPECTOR:  I appreciate that, Judge, thank you.
21         An analogy we often see where it does come into play
22   is, for example, a felon in possession case where the
23   defendant committed a murder somewhere else that couldn't be
24   proven up or wasn't proven up beyond a reasonable doubt, but
25   can be proven up by a preponderance of the evidence at the

```
                                                                88
 1    sentencing for the felon in possession.
 2              This case shouldn't be treated any differently just
 3    because it's a more complicated fact pattern.  When you looked
 4    at the facts as we discussed extensively this morning, there
 5    are three witness statements who all say the same thing, and
 6    that is the defendant committed securities fraud.
 7              When you asked the defense what they had to counter
 8    that, their answer essentially was, well, he hasn't been
 9    charged in Germany, which really isn't any answer at all.  So
10    the German fraud by itself in our view completely eviscerates
11    the cooperation credit.
12              But, as you know, that is not the only problem.
13    There is also the Kealy e-mail, which the court has already
14    discussed, and there is also something we have not talked with
15    today and that his posting repeatedly on his Website the
16    GlobalNet Company as an example of a company he helped to take
17    public.
18              We attached printouts from the Website in our
19    sentencing submission.  That by itself is another fraud.  That
20    is a fraud in the inducement because if clients really knew
21    the truth about GlobalNet, they would be very unlikely to deal
22    with the defendant.
23              The reason this is so important when you try to
24    evaluate the cooperation credit is, you can imagine what would
25    have happened if we had put him on the witness stand in some
```

1  of those cases we contemplated and this came out on cross.  It
2  would have been a complete disaster; he would have been total
3  think discredited as a witness, he wouldn't be usable to us as
4  a witness and a person like that, who does these things
5  essentially behind the back of the government for years, is
6  not entitled to any credit for cooperation.
7       I just want to say a couple of points about
8  deterrence because I think it is particularly apt here.  There
9  are two avenues of sentencing that are normally available that
10 are not available here.  The first is supervised release, the
11 supervised release component of sentencing.  He's not
12 supervisable because he's going to be get deported.  Once he's
13 gone, as we've have seen, he can still commit fraud that
14 affects the United States and investors in the United States
15 and there is no effective way to supervise him.
16      The second is the fine.  As the court's noted
17 already, he put $50 million outside the reach of this court
18 or, as far as I can tell, any court.  Because those two
19 avenues are not available a higher range of imprisonment
20 should be imposed than might otherwise have been.
21      Today really is our last best chance from the
22 perspective of the United States government to try to punish
23 the defendant in a way that is going to effectively deter him
24 because he's not going to be in the United States again, and
25 when you look at this, even a sentence of five years, just

# 11-1957

*To Be Argued By*:
Daniel A. Spector

### United States Court of Appeals
#### For the Second Circuit

UNITED STATES OF AMERICA,

*Appellee*,

—against—

MYRON L. GUSHLAK,

*Defendant-Appellant.*

**On Appeal From The United States District Court
For The Eastern District of New York**

### BRIEF FOR THE UNITED STATES

Loretta E. Lynch,
*United States Attorney,
Eastern District of New York.*

Amy Busa,
Daniel A. Spector,
    *Assistant United States Attorneys,
        Of Counsel.*

9

Forfeiture Judgment"), which was paid shortly thereafter. (JA 160, 221). As part of the Revised Forfeiture Judgment, Gushlak represented that he was unable to pay the original $5 million forfeiture judgment. (JA 221).

By 2009, however, Gushlak had amassed a fortune. In a financial statement Gushlak submitted to the government in August 2009, Gushlak listed total net assets of over $80 million. (JA 394-406).

IV. Gushlak's Breach Of His Cooperation Agreement

While Gushlak provided the assistance to law enforcement authorities noted above, he also breached his obligations under the cooperation agreement in numerous ways. After learning of Gushlak's conduct, the government summoned Gushlak to a proffer session in December 2009 and confronted him with evidence of his breach. Immediately after the proffer session, the government sought to revoke Gushlak's bail. The district court conducted a bail revocation hearing and denied the government's application but ordered the government to conduct a full investigation and bring all relevant facts to the court's attention at sentencing. (JA 244, 294).

A. Gushlak's Abuse Of The Secrecy Of His Cooperation To Deceive Business Partners

Gushlak exploited the fact that his case remained sealed by lying to business associates concerning his criminal past. (JA 167). First, in an email exchange in 2007 with Bob Kealy, the

10

CEO of a company with whom Gushlak was doing business, Kealy questioned Gushlak concerning his criminal past. (JA 167-68). In response, Gushlak attached a copy of the dismissal of the Hy-Tech Complaint and continued as follows:

> I have no criminal record in any country period. Also please note that I have no SEC violations nor have I ever crossed paths with the SEC ever. Please have me removed from the report before it goes anywhere and confirm this to me in writing tomorrow.

(JA 230).

Significantly, this email was sent during the same week when Gushlak was meeting with federal prosecutors in preparation for his potential testimony at an upcoming trial. (JA 169). During this period, Gushlak's attorney implored the prosecutors not to use Gushlak as a witness. (Id.). Of course, if Gushlak had testified publicly, his guilty plea would have become public. (Id.).

In addition, a review of the website for Gushlak's company, Blue Water Partners, in December 2009 revealed that Gushlak listed Global Net (the stock fraud for which he pled guilty in this case) as an example of companies that Gushlak had "taken public over the years." (JA 233-37).

B. Allegations Of A German Stock Fraud

In approximately 2008, the government learned that Gushlak was under investigation in Germany for a stock fraud involving three companies traded in Germany: Star Energy, Star Gold