USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 02/25/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :
JODY KRISS, et al.,                              :
                      Plaintiffs,  :
                                   :          13 Civ. 03905 (LGS)
          -against-                  :
                                   :          OPINION AND ORDER
BAYROCK GROUP LLC, et al.,         :
                    Defendants.  :
                                   :
------------------------------------------------------------ :
                                     X

LORNA G. SCHOFIELD, District Judge:

       Before the Court is Plaintiffs' motion to remand the instant action ("*Kriss II*") to state court. For the reasons stated below, Plaintiffs' motion to remand is denied.

**I. Background**

       On December 10, 1998, Felix Sater ("Sater"), one of the defendants in *Kriss II*, pleaded guilty to participating in a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Sater's plea was pursuant to a written cooperation agreement with the United States Attorney's Office for the Eastern District of New York ("Cooperation Agreement"). The Cooperation Agreement required that Sater not reveal his cooperation with federal authorities to anyone without the prior consent of the Government. Judge Glasser, who accepted Sater's guilty plea, ordered that Sater's entire criminal case, including the docket sheet, be sealed. Sater was referred to in court paperwork as "John Doe."

       For over ten years after his guilty plea, Sater worked with federal law enforcement agents and prosecutors in both the Eastern and Southern Districts of New York, providing information on organized crime. The Government has characterized the information provided by Sater as "of

an extraordinary depth and breadth, almost unseen." The specific information provided by Sater remains under seal.

On October 3, 2009, Sater was sentenced to probation and a $25,000 fine. Sater claims that his agreement with the Government to keep his cooperation secret also required him to keep his conviction and sentencing secret because "[a]nyone with rudimentary knowledge of the criminal justice system would know that a person who has been convicted but not sentenced until eleven years later was almost certainly a cooperating witness."

Frederick Oberlander ("Oberlander"), counsel for the plaintiffs in *Kriss II*, obtained some of the information about Sater's criminal case and cooperation with the Government by convincing Joshua Bernstein ("Bernstein"), a former employee of the Bayrock Group, of which Sater was also a former employee, to allow Oberlander access to a back-up hard drive containing information that Bernstein had saved at Sater's direction many years earlier (the "Confidential Information"). Oberlander and his co-counsel then disclosed some of the Confidential Information in a complaint they filed in another matter currently before this Court, 10-cv-03959 ("*Kriss I*"). For example, the Cooperation Agreement was attached to the complaint in *Kriss I* as an exhibit.

On May 14, 2010, Judge Buchwald, the judge then presiding over *Kriss I*, issued orders sealing the complaint and prohibiting its further dissemination. On May 18, 2010, Judge Glasser, who had originally sealed the Confidential Information, issued a temporary restraining order preventing its further dissemination. On June 21, 2010, Judge Glasser permanently enjoined dissemination of the Confidential Information, and on July 20, 2010, Judge Glasser re-affirmed his ruling, finding that dissemination of the Confidential Information would put Sater's

2

safety at risk. Oberlander appealed the permanent injunction to the Second Circuit Court of Appeals, which affirmed Judge Glasser's ruling.

On May 10, 2013, Plaintiffs commenced *Kriss II* by filing a Summons with Notice in the Supreme Court of the State of New York. On June 21, 2013, Sater filed a Notice of Removal, removing *Kriss II* to the Southern District of New York pursuant to 28 U.S.C. § 1442(a)(1), commonly referred to as the "Federal Officer Removal Statute." On July 22, 2013, Plaintiffs filed an interim Motion to Remand, and on August 2, 2013, Plaintiffs filed a final Motion to Remand.

## II. Discussion

Sater removed *Kriss II* to this Court pursuant to the Federal Officer Removal Statute, which provides:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). The Federal Officer Removal Statute is an exception to the general rule that "an anticipated or actual federal defense generally does not qualify a case for removal"; it allows federal officers and those acting under them to remove actions to federal court "despite the nonfederal cast of the complaint" because "the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

The purpose of the Federal Officer Removal Statute has been described by the Supreme Court as giving federal officers, or persons acting under them, the "protection of a federal

3

forum" in which to have any defenses "arising out of their duty to enforce federal law" heard. *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969); *see also Gurda Farms, Inc. v. Monroe Cnty. Legal Assistance Corp.*, 358 F. Supp. 841, 843 (S.D.N.Y. 1973) ("The purpose of [the Federal Officer Removal Statute ], whose ancestry is venerable, is to prevent federal officers or those acting at their direction from being held accountable in state courts for acts done within the scope of their federal duties.").

The Supreme Court has also held that the Federal Officer Removal Statute is to be liberally construed in favor of removal to federal court in order to enforce this stated purpose. *See Willingham*, 395 U.S. at 406-07 ("The federal officer removal statute is not narrow or limited . . . [the] policy [behind the statute] should not be frustrated by a narrow, grudging interpretation") (citation omitted) (internal quotation marks omitted)).

A private party, not employed by a government agency, may invoke the Federal Officer Removal Statute if three conditions are met: (1) he "acted under" the direction of a federal officer or agency; (2) he took the actions for which he is being sued "under color of federal office" – also known as the "causation requirement"; and (3) he has raised a "colorable federal defense." *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (citing *Jefferson Cnty.*, 527 U.S. at 431).

Regarding the first requirement, the Second Circuit has held that the "words 'acting under' are to be interpreted broadly." *Id.* at 136. While a private party "'simply *complying* with the law'" may not properly invoke the Federal Officer Removal Statute, a person who has a "'special relationship'" with the Government and who "'assist[s]'" or "'help[s] carry out'" the "'duties or tasks of the federal superior'" may do so. *Id.* at 136-37 (alterations in original) (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151-57 (2007)).

4

Persons cooperating with and providing confidential information to federal law enforcement are an example of private parties courts have found to be acting under the direction of a federal officer or agency for the purpose of invoking the Federal Officer Removal Statute. *See*, *e.g.*, *Reiser v. Fitzmaurice*, No. 94 Civ. 7512, 1996 WL 54326, at *6-7 (S.D.N.Y. Feb. 8, 1996) (denying a motion to remand on the grounds that the Federal Officer Removal Statute applied to the defendants, who were "federal informants working as part of an FBI sting operation" with "written cooperation agreements to prove it").

Regarding the second requirement, known as the "causation requirement," the Second Circuit has held that the "hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. Parties invoking the Federal Officer Removal Statute "must demonstrate that the acts for which they are being sued . . . occurred *because of* what they were asked to do by the Government." *Id.* However, in determining whether the party has established a causal connection, the court "credit[s] [the removing party's] theory of the case." *Id.* This means that a removing party "does not have to prove at the outset that the acts sued upon were *actually* taken under official authority." *Reiser*, 1996 WL 54326, at *6. "Rather, that authority must simply be 'asserted' at the removal stage." *Id.*

Regarding the third requirement, the Second Circuit has held that there are "few limitations on what qualifies as a colorable federal defense." *Isaacson*, 517 F.3d at 138. A colorable federal defense is one that is "defensive," "based in federal law," and "aris[es] out of" the removing party's "official duties" or assistance therewith. *Id.* (internal quotation marks omitted).

"To be 'colorable,' the defense need not be 'clearly sustainable.'" *Id.* at 139 (quoting *Willingham*, 395 U.S. at 407). The Supreme Court reasoned that "allowing removal only when

5

the officers had a clearly sustainable defense" would be "anomalous" with the "primary purpose" of the Federal Officer Removal Statute, which is to "have such defenses litigated in the federal courts." *Willingham*, 395 U.S. at 407. Consequently, a defense may be colorable even if it is ultimately rejected by the court. *See Jefferson Cnty.*, 527 U.S. at 431 (holding that the defense presented was a colorable federal defense for purposes of removal even though the Court ultimately rejected the merits of the defense).

Here, removal of this case was proper under the Federal Officer Removal Statute because Sater meets all three of the requirements discussed above.

First, Sater was clearly acting under the direction of the Government. Sater was a cooperating witness, with whom the Government entered into a written Cooperation Agreement, and who worked with federal law enforcement agents and prosecutors for over ten years, providing information the Government considered extraordinary in volume. Plaintiffs concede that Sater entered into the Cooperation Agreement with the Government.

Second, Sater has met the causal requirement because he asserted in his removal notice that the act complained of, specifically the concealment of his conviction, was undertaken pursuant to the direction of the Government, which is all that is required at the removal stage.

Plaintiffs argue that the Summons with Notice does not actually state any claims, therefore is too vague to create a nexus between Sater's cooperation with the Government and the acts complained of by Plaintiffs. This argument fails. While the Summons with Notice does not list formal claims, it nevertheless contains sufficient information to demonstrate causation and support removal under the Federal Officer Removal Statute.

"A case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading." *Whitaker v. American Telecasting, Inc.*,

6

261 F.3d 196, 205-06 (2d Cir. 2001) (internal quotation marks omitted). "A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support [the] removal petition." *Id.* at 206 (alteration in original) (internal quotation marks omitted).

The Summons with Notice summarizes the instant case as follows:

> Plaintiffs seek relief against those directly and vicariously responsible for the perpetration of perhaps a billion dollars or more of fraud *based on the illegal concealment of Felix Sater's 1998 $40 million federal racketeering conviction, and subsequent 2009 sentencing*, as well as related and other unrelated relief, and declaratory relief against those persons, primarily financial institution[s], insofar as to affix by liquidating judgment thereof such liability is owed to them.

The Summons with Notice also states that the plaintiffs "were defrauded of their rights to restitution, and *because the government illegally concealed Sater's entire case*, their rights to sue him." These statements in the Summons with Notice provide adequate information for Sater to "intelligently ascertain removability" under the Federal Officer Removal Statute and reasonably assert that the acts complained of were undertaken pursuant to his cooperation with the Government.

Third, Sater has raised a colorable federal defense of immunity. Private parties who are confidential informants working with the Government pursuant to a written cooperation agreement may invoke the federal defense of immunity. *See*, *e.g.*, *Reiser*, 1996 WL 54326, at *4 (denying a motion to remand on the grounds that the Federal Officer Removal Statute applied to the defendants, who "have raised a colorable federal defense of immunity . . . despite the fact that they are not federal officers").

Plaintiffs argue in various ways that the federal defense asserted by Sater is not sufficient for purposes of removal because it is not meritorious. These arguments fail. As discussed above, the removing party is not required to prove the merits of its defense at the removal stage. *See Willingham*, 395 U.S. at 407 ("The officer need not win his case before he can have it

7

removed."); *see also Reiser*, 1996 WL 54326, at *4 ("The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made." (internal quotation marks omitted)).

Accordingly, removal of this case was proper under the Federal Officer Removal Statute, and Plaintiff's motion to remand is denied.

### III. Conclusion

For the reasons set forth above, Plaintiffs' motion to remand is DENIED. The Clerk of Court is directed to close the motions at docket numbers 21 and 25.

Plaintiffs are ordered to file their complaint in this case by March 26, 2014.

SO ORDERED.

Dated: February 24, 2014
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**