# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **J. KRISS** et al.<br>　　　Plaintiffs,<br>v.<br>**BAYROCK GROUP LLC** et al.<br>　　　Defendants | 13 – CV – 3905 (LGS)<br><br>AFFIRMATION<br>AND<br>MEMORANDUM |

**MOTION FOR RECONSIDERATION (REVISION)
OF THAT ORDER OF APRIL 17, 2014 ECF 49**
-----
**ORAL ARGUMENT WILL BE REQUESTED BY LETTER
AUTHORIZATION FOR AFFIDAVITS IS REQUESTED**

FED. R. CIV. P. 54, LOCAL R. 6.3, IND. R. III(B)

**FREDERICK M. OBERLANDER**

**THE LAW OFFICE OF
FREDERICK M. OBERLANDER, PC**
28 Sycamore Lane (P.O. Box 1870)
Montauk, New York 11954
Tel:　　(212) 826-0357
Fax:　　(212) 202-7624
Email:　fred55@aol.com

*Counsel for Plaintiffs*

**RICHARD E. LERNER**

**THE LAW OFFICE OF
RICHARD E. LERNER, PC**
501 Fifth Avenue
New York, NY 10017
Tel:　　(917) 584-4864
Fax:　　(347) 824-2006
Email:　richardlerner@msn.com

*Co-Counsel for Plaintiffs*

# SUMMARY

Plaintiffs seek relief from the court's April 17, 2014 order No. 48 (the "Order") refusing to stay process and hold hearings in respect of Plaintiffs' allegations that they were the victims of witness tampering by defendants Sater, Lauria, and their counsels.

Plaintiffs, continuing to suffer further criminal victimization, now renew their request and call the court's attention to Seventh Circuit authority that holds that where a district court perfunctorily fails to investigate such a charge immediately, including by evidentiary hearing, it's effectively a *per se* abuse of discretion, judicial error absolute. Indeed, it is such a fraud on the institution of the court, properly subject of an FRCP 60(b) motion for a new trial, that the perfunctory failure of the court to conduct a hearing mandates the negation of substantive proceedings decided thereafter and reassignment to a different judge for *de novo* proceedings, starting with such hearings.

In view of this, Plaintiffs, with utmost respect, ask this court introspectively consider whether its *sua sponte* recusal isn't necessary and appropriate. We stress this is no motion for disqualification, but rather a suggestion that the court may not realize the impression its orders create when judged by a hypothetical third party observer.

In the alternative, and to avoid the complexity of mandamus, Plaintiffs request this court certify for 28 U.S.C. §1292(b) immediate interlocutory appeal the question whether its failure to order a hearing in response to the within allegations of witness tampering of this gravity is error.

*****

Plaintiffs attach supporting affidavit testimony, Exh. 5, and pursuant to Local Rule 6.3 ask leave of court that it be appropriately accepted.

## PROCEDURAL HISTORY

On February 25, 2014, this court denied Plaintiffs' motion for remand and directed that a complaint be filed by March 25, 2014.

On March 25, 2014, this court granted Plaintiffs' request for enlargement of time due to the unexpected state court filing by counsels Mobargha and Beys revealing the contents of the sealed complaint in 10-CV-3959 and directed the complaint be filed by April 7, 2014.

On April 7, 2014, undersigned counsels notified the court of clearly felonious witness tampering, the latest to occur that morning, threatening Plaintiff Ejekam with economic ruin if he did not withdraw from the case before a complaint was filed and requesting emergency relief including a stay *sine die* and emergency conference.

On April 8, 2014, this court granted the stay and directed Defendants to respond within five days

On April 14, 2014, Defendants *replied*, but did not *respond*, pointedly failing to admit or deny any of Plaintiffs' allegations of witness tampering.

On April 17, 2014, by order 49, the court vacated the stay, declined to hold a conference, did not *sua sponte* schedule hearings (apparently) declined to receive additional reports of witness tampering or criminal contempt, declined to order criminal referral, and directed a complaint be filed by April 23.

Plaintiffs request relief from that order 49, for reasons set forth herein.

# FACTUAL HISTORY

On March 13, 2014, there appeared in a blog entitled *queens-politics.com* an article "warning the people of Brooklyn" that Plaintiff Kriss was negotiating with Brooklyn Borough President Adams for a large development project so they should be careful because Kriss was a front for organized crime, might employ the Russian mob on the project, had admitted committing extortion, and had given protected documents to mobsters which for all anyone knew had caused assaults and death threats as a result, concluding with the rhetorical question whether Adams's life was now in danger too.

On March 16, 2014, counsels Mobargha and Beys filed a complaint in behalf of defendant Lauria against Kriss, *Lauria v. Kriss* (N.Y. Sup. Ct. 152324/14), accusing him and his father of secretly running Bayrock to launder proceeds of organized crime for the Russian mob and conspiring with an attorney [Gerry Shargel of Winston & Strawn], giving him protected documents to pass on to organized crime to have Sater and Lauria murdered by a mafioso [Daniel Persico] in furtherance of their extortion of numerous law firms, a plot it claimed resulted in assault and death threats[1].

Soon after, *PRNewswire* began worldwide republication of the *Lauria* complaint and related press releases at the same time persons purporting to be private detectives, one identifying herself as directed by counsel Berland, partner of Mobargha and Beys, swarmed through New York accosting Kriss's employees, partners, customers, and investors, often claiming to be public officials and telling each person that Kriss was "under investigation" in connection with this suit and they could be next.

---

[1] Note the order. The blog was published *before* the complaint, so didn't get the part about using protected documents to assault and murder from the complaint, at least not *after* it was public. The complaint also revealed, by quote with attribution, information from the sealed complaint in 10-cv-3959. True and correct copies of the March 13, 2014 blog entry are attached as Exh. 1, and of the complaint as Exh. 2.

Meanwhile, websites in various permutations of Kriss's name were published, repeating the libels, for example *jodykrissthief.com*. Exh. 3. ICANN shows Sater owns it.

Then anonymous ads appeared, for example in *Real Estate Weekly*, for which the copy was delivered by messenger in an unmarked, untraceable envelope with a bundle of cash, followed by anonymous mailings and emailings of combinations of those ads plus press releases and lists of websites republishing the libels.

One such mailing of interest occurred on the morning of April 7, 2014, which was a bulk email that was apparently sent to every one of the 375 attorneys at Stroock, Kriss's father's firm, containing the same material. That's a key date for two reasons.

First, it's the same day the complaint in this action was due to be filed by order. Second, it's the same day Plaintiff Ejekam became aware that he was now a target, and that's extremely important because the transmission to Ejekam is a pure, direct criminal threat facially evidencing the *mens rea* of witness tampering and obstruction:

On that date Ejekam learned that on April 5th, two days before the complaint was scheduled for filing, the following email had been sent to him. Though it bore the sender name "jkrissinfo@gmail.com," it obviously was not sent by co-plaintiff Kriss, as the text of the email makes plain and as Kriss himself has confirmed:

> **From:** Jody Info [mailto:jkrissinfo@gmail.com]
> **Sent:** 05 April 2014 17:02
> **To:** Michael Chu'di Ejekam
> **Subject:** Fwd: Jody Kriss
>
> **Dear Michael Chu'Di Ejekam,**
>
> **By Monday, Fred has to finalize this absurd extortion of a lawsuit against the largest people, companies and law firms in real estate.**
>
> **If on monday your name remains part of this extortion, you will only have yourself to blame.**

> **See your friend and co-plaintiffs' new lifetime online reality. If you choose to continue with this extortion, It will also be your new online reality for the rest of your life, you can explain to people why these companies owe you**
>
> **$1 BILLION DOLLARS.**
>
> **This is your one and only warning.**

www.jodykriss.net

The email contained two attachments, one the initial coversheet of this action, Exh. 6, the other a list of websites caused to republish the Kriss libels, Exh. 4.

But it wasn't sent to Ejekam alone. That email was simultaneously transmitted to numerous employees and senior officers in international offices of the private equity investment fund where he works, including by unauthorized use of its internal email system, according to Ejekam by obtaining the internal ID necessary to cause his employer's own email system to rebroadcast the same internationally. Such broadcast has already caused severe professional problems for him, and, knowing that other Bayrock employees have testified under oath that Sater threatened to kill them if they told what they knew of his criminal conduct at Bayrock, he feels extremely threatened and vulnerable not only to having his reputation smeared and his livelihood destroyed if he continues in 3905 as a party, derivative party, or even "mere" witness. Accordingly, and frankly entirely foreseeably he is in fear for his safety, the safety of his family, and the safety of Kriss, counsel, and their families.

(At the same time, he was and is well aware of my fiduciary duty to the derivative class of beneficiaries to pursue relief in their behalf.)

Therefore, on Monday, April 7th, Ejekam asked counsel to advise the court of the threats and intimidation, believing the Court would order hearings when such report came from one of its officers under oath.

# THE STANDARD FOR RECONSIDERATION IS "WHERE JUSTICE REQUIRES IT"

A motion for relief from an interlocutory order, regardless how styled, is construed as an FRCP 54(b) motion to revise it. The standard in considering such a motion is far from onerous, in fact quite lenient, described by the Third Circuit as "where consonant with justice," by the District Court for the District of Columbia as "where justice requires," and by the District Court for Minnesota[2] as:

> Since this Court owes no deference to itself and knows it makes mistakes, motions to reconsider will be granted and a change made when convinced an error has been made, manifest or not.

# HERE, JUSTICE ***DEMANDS*** IT

A recent text on litigation observes:

> Litigation is such a hotbed of lies, false accusations, false alibis, and cover-ups, that there's a general agreement within the system to just ignore perjury and get on with business…[T]his is more about keeping the courts rolling than it is about justice. The court system just doesn't have time to deal with [it], and the issue has been swept under the rug[3].

*Defining deviancy down.* Not surprisingly, at least to anyone not inside the system, the result of all this was guaranteed to become, and has become, a court system full of perjury and similar misconduct. Maybe that keeps the wheels rolling and maybe it doesn't, but one things is clear: When miscreant defendants and their counsels threaten our clients with economic, let alone physical, harm if they don't drop a suit against them, whatever's left of justice and due process in America **demands** the wheels come to a screeching halt in an instant and the court take action to shut it down.

---

[2] Respectively, *United States v. Jerry*, 487 F.2d 600 (3d Cir. 1973); *Cobell v. Norton*, 244 F.R.D. 266 (D.D.C. 2004); and *Vosdingh v. Qwest*, 2005 U.S. Dist. LEXIS 10721.

[3] *Fighting Slander*, Carroll, Hastings, 4th Ed. 2012, *passim*.

## AT LEAST, SO SAYS THE SEVENTH CIRCUIT

Counsels assume familiarity with *Beanie Babies*, their creator, Ty Warner, and his involvement in trademark litigation. For reasons that will be obvious, we excerpt from Judge Posner's opinion in *Ty Inc. v. Softbelly's, Inc.*, 353 F.3d 528 (7th Cir. 2003)

> The judge committed a different kind of error in excluding another item of Softbelly's evidence. One of Softbelly's star witnesses was to be a man named Harold Nizamian, a competitor of Ty for whom Ty Warner had worked before forming his own business. Nizamian was prepared to testify that as early as 1988, before Ty began selling "Beanie Babies," the word "beanie" was being used in the trade names of other manufacturers of "plush beanbag animals" and indeed that the word had become generic. On the Friday before the Monday on which the trial began, Softbelly's lawyer deposed Warner and in the course of the deposition disclosed that Nizamian would be testifying that "beanies" was a generic term. On Monday, when the lawyer called Nizamian to schedule his testimony, Nizamian said that he had been telephoned by Warner and was no longer willing to testify. Putting two and two together, at the trial Softbelly's lawyer asked Warner whether he had told Nizamian not to testify. Ty objected and the judge sustained…

> We do not understand the judge's ruling. If Warner asked Nizamian not to testify, this would entitle the jury to infer that Nizamian's testimony would have supported Softbelly's contention that "beanies" had become a generic term. "[A]n attempt by a litigant to persuade a witness not to testify is properly admissible against him as an indication of his own belief that his claim is weak or unfounded or false."…

> Warner admits that he telephoned Nizamian in order to inquire whether he was going to testify, and after the trial was over Softbelly's lawyer deposed Nizamian who in his deposition stated that Warner had told him that if he testified it would cost Warner "a tremendous amount of money" and cause "a lot of problems;" that he (Warner) "was involved in the Softbelly's case and that if my statement got into the case … it would be very damaging to him." Nizamian added that his situation with respect to Ty was "delicate" because he and Warner had recently discussed the possibility of doing business together and "I realized after speaking to Ty that it was a very important matter to him, and even though I didn't understand all of the particulars, I felt if he felt that strongly about it … maybe it would be best if I did not go." Nizamian did not say that Warner had threatened him, but "because of the seriousness in his voice and the importance to him, … I figured I'd just rather not get involved." **Nizamian's deposition became the basis of Softbelly's Rule 60(b)(3) motion, and we shall get to that in a moment**; our present point is only that the judge should not have cut off the lawyer's cross-examination of Warner concerning his phone conversation with Nizamian.

**We move now to the Rule 60(b)(3) issue**. The rule authorizes the…court to set aside a judgment on the basis of fraud or other misconduct…**We need not…decide whether the conduct alleged as fraud — that Ty Warner had tampered with a prospective witness for Softbelly's… — is better described as "other misconduct" because it did not involve deceit. Misconduct triggers the rule too. Witness tampering is often described as a form of fraud, and it is certainly very serious—indeed, criminal — misconduct, 18 U.S.C. § 1512(b), and for relief under Rule 60(b)(3) the victim of the fraud or other misconduct need show only that it affected his ability to present his case, not that he would have won had the fraud or misconduct not occurred…**

**The district judge's response to the motion was perfunctory. Without conducting a hearing to determine what exactly Warner had told Nizamian, the judge denied relief** on the ground that Nizamian had said in his statement "that the reason he would not testify was due to his own time constraints. The witness also stated that he told Ty Warner that he would testify and that Mr. Warner had made no threats or attempted to dissuade the witness from testifying." It is true that Nizamian gave time constraints as one reason for not testifying, but as is apparent from the passages that we quoted earlier from his deposition, that was not the only reason. Indeed, the deposition suggests that it was not the decisive reason. For it was in answer to the question what the "specific reason" for his changing his mind about testifying was that he said that he had "realized after speaking to Ty that it was a very important matter to him … [and] if he felt that strongly about it, … maybe it would be best if I did not go." Nizamian was not threatened, but there is very little doubt — if his deposition is believed, and the judge gave no reason to disbelieve it — that Warner attempted to dissuade him from testifying.

**Witness tampering is extremely serious misconduct, as we have said, and it would be particularly egregious if committed by a person of Warner's wealth and standing in the business community**. We do not say that he did tamper with Nizamian, that if he did it was the cause of Nizamian's not testifying, or that dismissal of the suit would be the only appropriate sanction…as the Supreme Court emphasized…federal fraud laws do not require proof by clear and convincing evidence, but only by a preponderance of the evidence.

**[W]e hold…that Nizamian's deposition, in conjunction with Warner's admission to having called Nizamian on the eve of trial to discuss the case, required further investigation by the judge**. Had the judge concluded that Nizamian's version of the phone conversation was accurate, there would have been compelling evidence of serious misconduct on Warner's part, requiring a commensurately severe sanction, quite possibly dismissal of Ty's suit…

The judgment for Ty and the order denying Softbelly's Rule 60(b)(3) motion are reversed and the case is remanded for further proceedings consistent with this opinion. **Circuit Rule 36 [reassignment to a new judge] shall apply on remand**. [Emph. Add., citations omitted]

## WHAT SAYS THIS COURT?

There is more than reasonable belief, and more than probable cause, to accuse felony witness tampering, without question thanks to the emails to Ejekam and his colleagues all tying together an explicit, direct threat to him if he did not withdraw from the case with the defamation campaign directed at Kriss, traceable to Sater *et al.* by, *inter alia*, their use of name-derived web sites owned by Sater to defame Kriss.

The question is, what will this court do about it?

We wish to be direct. Respectful, but direct. There is no gray here. This is a defilement. Moreover, though we will not waive work product privilege, we undersigned counsels state under penalty of perjury that the complaint filed in this action is not the entire complaint we wished to and intended to file (and of course can amend to file) and the missing parts are emphatically the direct result of this tampering, as we have clients who with extremely good reason have questioned how they can be expected to participate in this forum when they are under such serious threats and the court declines to take action to investigate it. We have no answer.

We do know this, however. Soon after your honor declined to take action, the intimidation commenced again, this time with anonymous bulk mailings (physical mail, so that involves the Postal Inspection Service now as well as the FBI and Marshal Service) including to everyone in Kriss's residential building telling them that a Russian mob associate (Kriss) lives with them. As respectfully as we can say this, Sater *et al.* were and are emboldened by this court's failure to act. No one can be surprised they'd be emboldened to continue, apparently confident they won't be held to answer for it by the one authority most directly affected.

# ON THE ISSUE OF RECUSAL

We make no motion for recusal. However, we do respectfully call the court's attention to the standard for *sua sponte* recusal, 28 U.S.C. §455(a), which provides:

> Any justice, judge, or magistrate judge…shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

We also call the court's attention to this excerpt from the Order [Emph. Add.]:

> **Should Plaintiffs fail to [file a complaint by April 23, 2014], the Court will entertain any motions to dismiss for failure to prosecute, which Defendants may file without exchanging letters with Plaintiffs pursuant to the Court's Individual Rule III.A.3.**

We also call the court's attention to these excerpts from the LEXIS web page annotating FRCP 41 with respect to motions to dismiss for failure to prosecute:

> Dismissal for lack of reasonable prosecution is too harsh except in extreme circumstances…record of contumacious conduct…harsh remedy to be utilized only in extreme situations…reserved for delays measured in years…should be granted most sparingly, and, in fact, only in extreme circumstances…extreme…**to be used only when integrity of judicial process is threatened…in such way that court is left with no choice except to deny…plaintiff its benefits**.

We ask the court reflect whether the requisite informed, impartial observer seeing a sworn filing by officers of the court alleging criminal contempt and witness tampering which if true would justify entry of judgment against the culpable *defendants* morphed into this court's refusal to investigate either charge plus its invitation for the *perpetrators* to move for extraordinary, quasi-criminal sanction against the *plaintiffs* could come to any conclusion other than that the court harbors "a thinly veiled hostility," *Kasalo v Harris*, 656 F3d 557 (CA7 2011) toward Plaintiffs or counsels, even if the court is unaware of it, and with good reason doubt the court's impartiality. In brief, the Court compelled Plaintiff's to choose between their safety and dismissal for failure to prosecute.  Confronted by this Plaintiffs, were wrongly compelled to 'pull their punches' and refrain from seeking the full measure of justice to which they are entitled.

## CONCLUSION

Wherefore, Plaintiffs respectfully request the within motion be granted in all respects, that defendants and counsels be ordered to admit or deny (or assert Fifth Amendment rights) the allegations herein and in the original "confidential" letter of April 7th, 2014, and that emergency conference be scheduled at the earliest conceivable date to coordinate the forthcoming evidentiary hearings which, never mind Judge Posner, simple fair play and the due administration of justice demand be scheduled, and request all other relief as may be just and proper.

Pursuant to 28 U.S.C. §1746, undersigned counsels hereby swear under penalty of perjury that the facts herein alleged are true and correct to the best of their individual knowledge and belief.

Dated: May 1, 2014

/s/ Frederick M. Oberlander
Montauk, New York

/s/ Richard E. Lerner
New York, New York