# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JODY KRISS, *et al.*,

                          **Plaintiffs,**

      **-against-**

BAYROCK GROUP LLC, *et al.*,

                        **Defendants.**

**1:13-CV-3905-LGS-FM**
**("Kriss II")**

---

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE PLAINTIFFS' RULE 41(a)(1)(A)(i) NOTICES OF DISMISSAL *WITHOUT PREJUDICE* UNDER RULE 60(b) AND DISMISS THIS ACTION *WITH PREJUDICE* UNDER RULE 41(b)

MOSES & SINGER LLP
*Attorneys for Defendant Felix Sater*

Robert S. Wolf
405 Lexington Avenue
New York, NY 10174
(212) 554-7525 (phone)
(917) 206-4325 (fax)
*rwolf@mosessinger.com*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

Background.................................................................................................................. 6

Discussion................................................................................................................. 10

A. The Plaintiffs' Notices of Dismissal *Without Prejudice* Should Be Vacated
Under Rule 60(b)................................................................................................ 10

    1. The Relative Applicability of Rule 41(a)(1) .............................................. 10

    2. Vacatur Under Rule 60(b) is the Appropriate Remedy.............................. 13

        a. Rule 60(b)(3) – Misconduct ............................................................ 14

        b. Rule 60(b)(6) – Other Reasons Justifying Vacatur ......................... 16

B. The Plaintiffs Case Should Be Dismissed *With Prejudice* Under Rule 41(b) ....... 20

Conclusion ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Simmons Mkt. Research Bureau, Inc.*,
    839 F.2d 930 (2d Cir. 1988) .................................................................. 16

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ........................................................................... 12

*U.S. ex rel. Drake v. Norden Sys., Inc.*,
    375 F.3d 248 (2d Cir. 2004) .................................................................. 16

*Dunlop v. Pan American World Airways, Inc.*,
    672 F.2d 1044 (2d Cir. 1982) ................................................................ 13

*Fleming v. New York Univ.*,
    865 F.2d 478 (2d Cir. 1989) .............................................................. 11, 12

*Harvey Aluminum v. American Cyanamid*,
    203 F.2d 105 (2d Cir. 1953) ............................................................*passim*

*Hinsdale v. Farmers Nat'l Bank & Trust Co.*,
    823 F.2d 993 (6th Cir. 1987) ................................................................. 10

*In re Hunter*,
    66 F.3d 1002 (9th Cir. 1995) ................................................................. 10

*ISC Holding AG v. Nobel Biocare Finance AG*,
    688 F.3d 98 (2d Cir. 2012) ..................................................................... 9

*ISC Holding AG v. Nobel Biocare Invesments, N.V.*,
    759 F. Supp. 2d 294 (S.D.N.Y. 2010) ................................................*passim*

*Klapprott v. United States*,
    335 U.S. 601 (1949) .......................................................................... 13

*Lewis v. Rawson, et al.*,
    564 F.3d 569 (2d Cir. 2009) .................................................................. 17

*Lucas v. Miles*,
    84 F.3d 532 (2d Cir. 1996) ............................................................... 16, 17

*McDonald v. Head Criminal Court Supervisor Officer*,
   850 F.2d 121 (2d. Cir. 1988)..................................................................... 17

*Nelson v. Napolitano*,
   657 F.3d 586 (7th Cir. 2011) .................................................................... 10

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986)........................................................................ 13

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996)........................................................................ 16

*Peart v. City of New York*,
   992 F.2d 458 (2d Cir. 1993)...................................................................... 17

*Poparic v. Jugo Shop*,
   Case No. 1:08-CV-2081-KAM-JO, 2010 WL 1260598 (E.D.N.Y. Mar.
   31, 2010) .................................................................................. 9, 10, 15, 16

*Randall v. Merrill Lynch*,
   820 F.2d 1317 (D.C. Cir. 1987) ................................................................ 10

*Smith v. Phillips*,
   881 F.2d 902 (10th Cir. 1989) .................................................................. 10

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004)...................................................................... 11

*Thorp v. Scarne*,
   599 F.2d 1169 (2d Cir. 1979)........................................................ 7, 8, 9, 16

*United States v. John Doe*,
   98-CR-1101-ILG............................................................................................ 2

*Yesh Music v. Lakewood Church*,
   727 F.3d 356 (5th Cir. 2013) .................................................................... 10

## Other Authorities

Rule 41, Fed. R. Civ. P. ......................................................................*passim*

Rule 60, Fed. R. Civ. P. ......................................................................*passim*

Defendant Felix Sater ("Mr. Sater"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion, pursuant to Rule 60(b), Fed. R. Civ. P., for an Order: 1) vacating the Plaintiffs' notices of voluntary dismissal (Dkt. Nos. 124, 127); 2) dismissing this action *with prejudice*; and 3) granting any such further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

For the better part of the last decade, the Plaintiffs and their attorneys, Frederick M. Oberlander ("Mr. Oberlander") and Richard E. Lerner ("Mr. Lerner"), have abused the federal and state courts in furtherance of their goal of leveraging stolen confidential information to extort a huge, undeserved settlement from perceived deep-pocketed defendants. Through repeated, deliberate, and often mocking defiance of court orders, the Plaintiffs have pursued these illegitimate ends by protracting not only the instant action, but also its sister cases in this Court—1:10-CV-3959-LGS-FM ("Kriss I") and 1:13-CV-1824-LGS ("Gottdiener Case"). The relief sought by this motion is simple: the dismissal of Kriss II should be converted from one *without prejudice* to one *with prejudice*. But for such an effective deterrent, the Plaintiffs can and will continue to repackage their unfounded claims into new cases with impunity.

As discussed *infra*, the evidence of the Plaintiffs' bad faith actions and willful noncompliance with court orders is abundant and irrefutable. *See* Kriss I, Dkt. No. 126 at 10 ("Plaintiffs have repeatedly and vexatiously defied the Court's orders.") (attached as Exhibit A). Messrs. Oberlander and Lerner have repeatedly, and in violation of the Second Circuit's and this Courts' orders, disseminated sealed documents and stolen confidential

information to both the press and members of the public with the intent of compromising Mr. Sater's safety and well-being for the Plaintiffs' financial gain. Without a valid complaint to rest upon, the Plaintiffs have filled the docket with nebulous pleadings, groundless motions, and inexcusable attacks on the Court, all in their quest to prolong these proceedings to increase the likelihood of a potential settlement. For instance, in a letter sent to Judge Cogan in the Eastern District case *United States v. John Doe*, Mr. Lerner accused Judge Cogan of issuing "illegal and unlawful" orders and classified the Second Circuit's orders as "sedition constituting high crimes and misdemeanors, including the conspiracy to and actual accomplishment of the falsification of judicial records...." *See* Letter from Richard Lerner to Hon. Brian Cogan dated February 17, 2012 in *United States v. John Doe*, 1:98-CR-1101 (E.D.N.Y.) (ILG) at 8 (attached as <u>Exhibit B</u>). In a June 15, 2014 motion for emergency relief, the Plaintiffs called Judge Maas's prior orders "transparently invalid," and "void and illegal and *so pro tanto brutum fulmen* [to that extent an empty threat]...." *See* Kriss I, Dkt. No. 77 at 4, 12 (attached as <u>Exhibit C</u>). In another attack, the Plaintiffs contended that Judge Maas was "adjudicating by insult, not by reason." *See* Kriss I, Dkt. No. 114 at 20 (attached as <u>Exhibit D</u>).

Recognizing the Plaintiffs' egregious behavior and routine defiance of court orders, the judges of this Court, the Eastern District, and the Second Circuit have justifiably castigated the Plaintiffs and their attorneys for their habitual misconduct over the past five years:

- In a June 14, 2010 hearing in *United States v. John Doe*, Judge Glasser noted that the stolen confidential information the Plaintiffs threatened to disseminate consisted of "**documents [that] if divulged … may seriously jeopardize not only the life**

of the person who was the subject of those documents. **In this case it might also significantly affect matters of national interest.**" *See United States v. John Doe*, Eastern District of New York Case No. 1:98-CR-1101-ILG, Transcript of 6/14/2010 Hearing at 4, 8 (attached as <u>Exhibit E</u>).

- In a July 20, 2010 hearing in *United States v. John Doe*, Judge Glasser rebuked Mr. Oberlander for disseminating the stolen confidential information at issue, stating "**something bad was done, something very bad and perhaps despicable was done by the use of those documents annexed to [the] complaint in [Kriss I]….**" *See United States v. John Doe*, Eastern District of New York Case No. 1:98-CR-1101-ILG, Transcript of 7/20/2010 Hearing at 20. (Attached as <u>Exhibit F</u>).

- In a March 23, 2011 order in *United States v. John Doe*, Judge Glasser found that Mr. Oberlander "**knowingly and intentionally flouted a Court order**" by publicly filing the stolen confidential information at issue. *See United States v. John Doe*, Eastern District of New York Case No. 1:98-CR-1101-ILG, Dkt. No. 104 at 6. (Attached as <u>Exhibit G</u>).

- In a June 29, 2011 summary order, the Second Circuit "**warned [counsel] that the Court's patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute … and that further attempts to re-litigate the issues decided by this order or other future filings of a frivolous nature, may result in sanctions … and monetary penalties.**" *See United States v. John Doe*, Eastern District of New York Case No. 1:98-CR-1101-ILG, Dkt. No. 125 at 9. (Attached as <u>Exhibit H</u>).

- In a May 29, 2014 order, Judge Maas found that "**despite Plaintiffs' effort to make it appear as if they have complied with my directives, what they actually have produced is virtually useless and does not comply with the Court's instructions. Faced with such noncompliance, the Court has the inherent power to impose a number of different sanctions, including dismissal of the entire action or particular claims.**" *See* Kriss I, Dkt. No. 68 at 11 (citing Fed. R. Civ. P. 41(b)). (Attached as <u>Exhibit I</u>).

- In a March 23, 2015 order, the Court noted that the "**Plaintiffs repeatedly failed to comply with -- even defied -- Judge Maas' orders….**" *See* <u>Exhibit A</u> at 3. The Court further lambasted the Plaintiffs for "**engaging in a pattern of arguing implausible and unsupported interpretations of court orders, rather than following them.**" *Id.* at 8.

- In an April 30, 2015 order, Judge Maas warned that if counsel continued to skirt the Court's orders, "**the Court will recommend that <u>Kriss II</u> be dismissed with**

**prejudice, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute.**" *See* Dkt. No. 105 at 2.

- In an August 13, 2015 Report and Recommendation, Judge Maas noted that this "**lawsuit was filed more than five years ago, and for practically that entire time the defendants have had to deal with a uniquely opaque and prolix opaque complaint, as well as the antics of the plaintiffs' prior counsel.**" *See* Kriss I, Dkt. No. 178 at 3. (attached as <u>Exhibit J</u>).

Clearly, the actions of the Plaintiffs and their attorneys cannot be viewed in the vacuum of just the instant case. To that end, Kriss II was born out of Kriss I for purely subversive reasons, as the Plaintiffs filed the instant action in state court with the intention of voluntarily dismissing it at their convenience. *See* Dkt. No. 51 at 3-6. Mr. Oberlander admitted this much in an April 14, 2015 conference before Magistrate Judge Frank Maas and stated that Kriss II was "simply bifurcated chronologically" from Kriss I. *See* Kriss II, Transcript of 4/14/2015 Hearing at 11 (Attached as <u>Exhibit K</u>). Further, on June 25, 2015, the Second Circuit upheld the Court's dismissal of the Gottdiener Case—which asserted nearly identical allegations as the Kriss cases—finding that the complaint was barred by law and leave to file an amended complaint would not cure its inherent defects. Indeed, the state court summons with notice in Kriss II acknowledged that it was brought on behalf of the Gottdiener plaintiffs, despite the fact that the Gottdiener plaintiffs had already brought a separate action in this Court. *See* Supreme Court of the State of New York, County of New York Case Index No. 651715/2013, Doc. No. 1. (Attached as <u>Exhibit L</u>). Mr. Oberlander has even acknowledged that a "colorable argument" could be made that *res judicata* or collateral estoppel should have precluded the Plaintiffs from filing Kriss II in the first instance. *See* <u>Exhibit K</u>, Kriss II, Transcript of 4/14/2015 Hearing at 12-13.

Despite years of belligerence, waste, missed deadlines, noncompliance, civil sanctions, and criminal contempt investigations, the Plaintiffs and their attorneys have failed to move these cases forward. During this time the Court and the Defendants have expended tremendous resources litigating the actual merits of this case, namely the Plaintiffs' attempts to make public the stolen confidential information at issue. To this end, the Plaintiffs have recently abandoned the instant action once it became clear that they would not succeed with this goal in *this* case. Unsurprisingly, just days after the Court entered its June 19, 2015 order directing all of the Plaintiffs to appear before the Court to explain their inaction (Dkt. No. 123), the Plaintiffs filed and the Court endorsed voluntary notices to dismiss this case without prejudice under Rule 41(a)(1)(A)(i), Fed. R. Civ. P. *See* Dkt. Nos. 124, 127 (collectively as the "Notices of Dismissal"). As discussed *infra*, these Notices of Dismissal were used by the Plaintiffs to effectuate their version of a judicial "hit and run," and left untouched, the Plaintiffs preserve the option to refile their charade of a case in alternative courts as they look for new venues in which to seek the release of the confidential information at issue.

This tactic should be seen for what it is: a ploy by litigants and lawyers who have repeatedly abused the process of this Court and now wish to avoid the consequences of their actions. Rule 41(a)(1)(A) was not designed to accommodate this kind of behavior. Accordingly, the Notices of Dismissal should be disregarded as a nullity, or, in the alternative should be vacated under Rule 60(b), as settled case law establishes that a literal application of Rule 41(a) is not warranted in these unique and unusual circumstances.

Moreover, this action should be dismissed *with prejudice* under Rule 41(b) or through the use of any other method that the Court deems appropriate.

## BACKGROUND

While the Court is fully aware of the long and tortured history of this case and the related matters surrounding this case, we summarize only briefly here.

Plaintiffs Jody Kriss, Michael Ejekam, BayRock Spring Street LLC, and BayRock Whitestone LLC (collectively, the "Kriss Plaintiffs") filed their complaint in Kriss I on May 10, 2010, alleging that Mr. Sater was involved in a sensational conspiracy accompanied by, among others, the federal government and federal courts at large. Four days later, the Court sealed the Kriss I complaint after becoming aware of the confidential and sensitive nature of the information and exhibits contained therein and the highly questionable methods in which the Kriss Plaintiffs' attorneys obtained them. Indeed, the impropriety of the Kriss Plaintiffs' attorneys' actions have become the center of a still pending criminal contempt investigation. Over the next several years, the Court struggled to get the Kriss Plaintiffs to comply with its numerous orders to identify the portions of its original complaint that were based on non-tainted sources of information so that they could file an amended complaint and move forward with this case. On March 18, 2013, Plaintiffs Estate of Ernest Gottdiener, Estate of Judit Gottdiener, Ervin Tausky, and Suan Investments (collectively, "Gottdiener Plaintiffs") filed a complaint in the Gottdiener Case against Mr. Sater and Defendant Salvatore Lauria, making similar allegations to those in Kriss I. On March 19, 2014, recognizing the insufficiency of the Gottdiener Plaintiffs' conspiracy claims, the Court dismissed the complaint in the Gottdiener Case. *See*

Gottdiener Case Dkt. No. 37. (Attached as <u>Exhibit M</u>). On June 25, 2015, the Second Circuit upheld the Court's dismissal order, and Plaintiffs failed to file a timely petition for a writ of certiorari. *See* Gottdiener Case Dkt. No. 52. (Attached as <u>Exhibit N</u>).

In the midst of these proceedings, the Kriss Plaintiffs and Gottdiener Plaintiffs (collectively, "Plaintiffs") filed Kriss II in the Supreme Court of New York State, New York County on May 10, 2013. Their self-styled "Class Action Complaint" repeated the same salacious, yet nonsensical allegations against the Defendants as those in Kriss I and the Gottdiener Case, but with the hope that a new venue would provide a new opportunity to make the same arguments that were rejected by the federal courts. The outrageousness of the Plaintiffs' complaint is equaled only by its absurdity, namely that dozens of unrelated defendants, including the federal government, an Assistant United States Attorney, numerous law firms, and Donald Trump somehow collaborated over many years to perpetrate a massive conspiracy to defraud the Plaintiffs out of a billion dollars.

On June 7, 2013, Defendant AUSA Todd Kaminsky filed a notice to remove Kriss II to this Court pursuant to 28 U.S.C. § 1442(a)(1), on the grounds that AUSA Kaminsky is an officer of an agency of the United States. *See* Dkt. No. 1. The Plaintiffs attempted to remand Kriss II back to state court, but on February 25, 2014, this Court denied the Plaintiffs' remand motion and "ordered Plaintiffs to file their complaint in this case by March 26, 2014." *See* Dkt. No. 40. On March 25, 2014, the eve of their first deadline, the Plaintiffs sought a "10-day enlargement of time to file their complaint." *See* Dkt. No. 40. While the Plaintiffs failed to explain any good cause for their requested relief—instead telling the Court that they would "elaborate [their basis for seeking an extension] in a

request for emergency relief"—the Court nevertheless granted the Plaintiffs a short extension until April 7, 2014 to file their complaint, but indicated that "[n]o further extensions will be granted absent extraordinary circumstances." *Id*. In spite of the Court's order, the Plaintiffs sent an *ex parte* letter to the Court on April 7, 2014 once again asking for emergency relief to extend the deadline to file their complaint. The Defendants responded with an April 14, 2014 letter, which rightfully acknowledged the Plaintiffs' "desperate ploy to permanently delay filing an actual pleading in this bad faith, $1 billion extortionate lawsuit…." Dkt. No. 46 at 1. The Defendants further noted that the Plaintiffs "prefer to dwell in [a] quasi-litigation limbo where they can write endless letters to the court, continue to disparage Defendants Sater and Lauria, … but are never actually held accountable…." *Id.* After reviewing these letters, the Court entered an April 17, 2014 order denying the Plaintiffs' requests for additional extensions and directing that the complaint be filed no later than April 23, 2014. *See* Dkt. No. 49. The Court explicitly noted that, considering the Plaintiff's trickery, it would "entertain any motions to dismiss for failure to prosecute" under Rule 41(b) should the Plaintiffs' attempt to once again skirt the Court's directives. *Id*.

On April 23, 2014, the Plaintiffs finally filed their "Class Action Complaint," which, by the Plaintiffs' attorneys' own admission, replicated extensive portions and several hundred paragraphs of the complaint in Kriss I. Throughout this rambling harangue of incoherent babble, the Plaintiffs indicated that they would eventually invoke the voluntary dismissal provisions of Rule 41(a), but would still continue with "motion practice" in the interim. *See* Dkt. No. 51 at 3-6. By this time, it was clear that this case was being

perpetuated by the Plaintiffs' lawyers, and not the Plaintiffs, themselves. By order of the Court, the "Class Action Complaint" was promptly sealed pending resolution of various issues surrounding the complaint in Kriss I. Over the course of the next year, both the Court and the Defendants worked to compel the Plaintiffs to file acceptable complaints in Kriss I and II. Yet, despite numerous scheduling orders, conferences, delays, and extensions, the Plaintiffs continued to miss deadlines and circumvent the Court's orders.

Finally, after a year of the Plaintiffs' misdirection, the Court held a conference on April 14, 2015 and entered an accompanying April 30, 2015 order that, among other things, removed Messrs. Oberlander and Lerner as counsel for the Plaintiffs in Kriss I and directed Messrs. Oberlander and Lerner to identify the Plaintiffs, if any, that they represented in Kriss II. *See* Dkt. No. 105. The Court noted that if "counsel fail to comply with this order the Court will recommend that Kriss II be dismissed *with prejudice* pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute." *Id*. at 2 (emphasis added). On June 19, 2015, following several more months of noncompliance with these and other orders, the Court issued and Order directing all Plaintiffs to appear for a conference on July 13, 2015. Dkt. No. 123. However, on June 23, 2015, four days after this Order, and as prophesized by their own "Class Action Complaint," the Kriss Plaintiffs filed their Notice of Voluntary Dismissal (Dkt. No. 124) under Rule 41(a)(1)(A)(i), which was soon after followed by the Gottdiener Plaintiffs' Notice of Voluntary Dismissal (Dkt. No. 127). For the reasons discussed *infra*, these Notices of Dismissal should be vacated, and the Court should dismiss this action *with prejudice* under Rule 41(b) or by any other method the Court deems appropriate.

**DISCUSSION**

### A. The Plaintiffs' Notices of Dismissal *Without Prejudice* Should Be Vacated Under Rule 60(b)

#### 1. The Relative Applicability of Rule 41(a)(1)

Rule 41(a)(1)(A), Fed. R. Civ. P., provides, in pertinent part, that "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment," and unless the notice says otherwise, "the dismissal is without prejudice." Fed. R. Civ. P. 41(a)(1)(A). For most cases, the availability of voluntary dismissal under Rule 41(a)(1) has been recognized as-of-right. *See Thorp v. Scarne*, 599 F.2d 1169 (2d Cir. 1979). However, as the Court is well aware, Kriss II hardly falls under the umbrella of "most cases."

The Second Circuit first recognized an exception to the literal interpretation of Rule 41(a)(1) in *Harvey Aluminum v. American Cyanamid*, 203 F.2d 105 (2d Cir. 1953). The *Harvey Aluminum* court noted that while Rule 41(a)(1) was meant to "limit [voluntary dismissals] to an early stage of the proceedings," voluntary dismissals would not be available to all plaintiffs who have met the literal criteria of the rule. *Id*. at 107. Instead, the *Harvey Aluminum* court looked at whether the merits of the case were effectively raised prior to the plaintiff's Rule 41(a)(1) notice of voluntary dismissal. *Id*. The Second Circuit considered the unique and unusual circumstances of the *Harvey Aluminum* case and determined that the "merits of the controversy were squarely raised," based on the plaintiff's "motion for a preliminary injunction [which] required several days of argument

and testimony, yielding a record of some 420 pages." *Id.* at 107-08. Consequently, the court found that "although the voluntary dismissal was attempted before any paper labeled 'answer' or 'motion for summary judgment' was filed, a literal application of Rule 41(a)[(1)] to the present controversy would not be in accord with its essential purpose of preventing arbitrary dismissals after an advanced stage of a suit has been reached." *Id.* at 108 (citations omitted). For this reason, the court vacated the plaintiff's Rule 41(a)(1) notice of voluntary dismissal. *Id.*

While a court's vacatur of a Rule 41(a)(1) notice of voluntary dismissal is rare, the Second Circuit has since recognized its holding in *Harvey Aluminum*. *See Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir. 1979) (noting that "there may be a point in legal proceedings where the purpose of Rule 41(a)(1)(i) would be better served by abandoning a literal interpretation….") (citing *Harvey Aluminum v. American Cyanamid*, 203 F.2d 105, 107-08 (2d Cir. 1953)). District courts in the Second Circuit have similarly recognized the applicability of *Harvey Aluminum* to unusual cases with unique procedural posture. In *ISC Holding AG v. Nobel Biocare Invesments, N.V.*, the court vacated the plaintiff's notice of voluntary dismissal in spite of the fact that it met the literal criteria of Rule 41(a)(1). *See ISC Holding AG v. Nobel Biocare Invesments, N.V.*, 759 F. Supp. 2d 294 (S.D.N.Y. 2010). The *ISC Holding* court explained why vacatur of the notice of dismissal was warranted under the "extreme" circumstances of the case:

> This case has the extreme facts justifying vacating petitioner's notice of dismissal: petitioner filed its notice 22 months into a proceeding that has no provision for service of an answer or summary judgment motion, after a decision on the merits and briefing, argument and remand by the Court of

> Appeals, on the eve of a hearing in which the merits of the controversy were
> to be squarely raised for a third time.
>
> …
>
> In this case "the purpose of Rule 41(a)(1)(i) would be better served by
> abandoning a literal interpretation." *Thorp*, 599 F.2d at 1176. To do
> otherwise would leave respondent deprived of its long-awaited hearing and
> threatened with having to oppose the petition anew, despite having litigated
> the case for nearly two years, through a decision on the merits, appeal,
> remand and discovery, to the eve of a final hearing, simply because the
> procedures governing this case do not provide for service of an answer.

*Id*. at 296-97. On appeal, the Second Circuit upheld the district court's ruling using an

alternative analysis of the case. *See ISC Holding AG v. Nobel Biocare Finance AG*, 688

F.3d 98 (2d Cir. 2012). However, the court "nonetheless agree[d] with [the district] court's

conclusion that ISC's notice of dismissal was properly vacated and … therefore [found] no

abuse of discretion in the court's Rule 60(b)(6) ruling." *Id*. at 116-17 (noting the

"anomalous procedural posture of this case").

In the Eastern District of New York case *Poparic v. Jugo Shop*, the court considered

the magistrate judge's *sua sponte* supplemental report and recommendation to vacate the

plaintiff's notice of voluntary dismissal following the plaintiff's recently filed motion for

default judgment. *See Poparic v. Jugo Shop*, Case No. 1:08-CV-2081-KAM-JO, 2010 WL

1260598 (E.D.N.Y. Mar. 31, 2010). Invoking the holdings in *Harvey Aluminum* and

*Thorp*, the court found that the "unique circumstances of the case" precluded the plaintiff

from voluntarily dismissing the case without prejudice. *See id*. at *6. "By moving for

default judgment against defendants and submitting evidence in support hereof," the court

found that the "plaintiff has 'squarely raised' the 'merits of the controversy' for the court's

evaluation at an 'advanced stage' of the case." *Id*. (citing *Harvey Aluminum v. American Cyanamid*, 203 F.2d 105, 107-08 (2d Cir. 1953)). While the *Poparic* court "decline[d] to deem plaintiff's default judgment motion the 'functional equivalent of a motion for summary judgment by the defendants,'" it instead noted that the plaintiff sought voluntary dismissal under Rule 41(a) just days after the court's "careful consideration of the merits…." *Id*. at *7. The court concluded that the plaintiff's ability to voluntarily dismiss the action without prejudice would be inconsistent with the underlying purpose of the Federal Rules of Civil Procedure, which "should be construed and administered to secure just, speedy, and inexpensive determination of every action and proceeding." *Id*. (citing Fed. R. Civ. P. 1).

## 2. Vacatur Under Rule 60(b) is the Appropriate Remedy

Rule 60(b), Fed. R. Civ. P., provides on "motion and just terms," relief from a final judgment, order, or proceeding on the basis of "(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party" or for "(6) any other reason that justified relief." Fed. R. Civ. P. 60(b). A motion under Rule 60(b) must be made "within a reasonable time—and for reasons … (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). In addition to the cases cited *supra*, other circuits have recognized, in general, that voluntary dismissals under Rule 41(a)(1) are generally subject to vacatur under Rule 60(b). *See Yesh Music v. Lakewood Church*, 727 F.3d 356, 362-63 (5th Cir. 2013) ("[W]e are satisfied that a Rule 41(a)(1)(A) voluntary dismissal without prejudice qualifies as a 'final proceeding.' Accordingly, Yesh Music's voluntary dismissal is subject to vacatur under

Rule 60(b)."); *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011) ("We agree that there may be instances where a district court may grant relief under Rule 60(b) to a plaintiff who has voluntarily dismissed the action."); *In re Hunter*, 66 F.3d 1002, 1004-05 (9th Cir. 1995); *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989); *Hinsdale v. Farmers Nat'l Bank & Trust Co.*, 823 F.2d 993, 995-96 (6th Cir. 1987); *Randall v. Merrill Lynch*, 820 F.2d 1317, 1320 (D.C. Cir. 1987). Here, the facts and procedure of this case demonstrate that vacatur of the Notices of Dismissal is indeed appropriate under Rules 60(b)(3) and 60(b)(6).

### a.      Rule 60(b)(3) – Misconduct

At the outset, the Plaintiffs' Notices of Dismissal *without prejudice* should be vacated under Rule 60(b)(3) on account of the Plaintiffs' repeated misconduct, noncompliance with court orders and directives, and bad faith throughout the course of this case and its sister cases before the Court and the Eastern District of New York. "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004). Further, a "Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits." *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989).

As the Court is well aware, the Plaintiffs have repeatedly and deliberately disobeyed the Court's orders and have engaged in numerous dilatory tactics meant to stifle progress in this case, of which they have been incredibly successful. *See* <u>Exhibit A</u>, Kriss I, Dkt.

No. 126 at 8 ("Plaintiffs are being sanctioned for engaging in a pattern of arguing implausible and unsupported interpretations of court orders rather than following them."); Exhibit J, Kriss I, Dkt. No. 178 at 3 ("This lawsuit was filed more than five years ago, and for practically that entire time the defendants have had to deal with a uniquely opaque and prolix complaint, as well as the antics of the plaintiffs' prior counsel."). The Plaintiffs have focused their energies on delaying these matters as long as possible and maintaining a quasi-litigation limbo in order to perpetuate their frivolous arguments. There is no question that these bad faith actions have prevented the Defendants from fully and fairly defending their case. Despite repeated warnings and adverse rulings on the merits, the Plaintiffs continue to attempt to unseal or leak to third parties the illegally obtained confidential information at issue. This misconduct has resulted not only in sanctions and the threat of total dismissal by this Court, but also civil contempt proceedings and referrals for criminal contempt proceedings. To the extent that clear and convincing evidence is required, the Court has stated in unambiguous terms that the "Plaintiffs' conduct has been more than negligent and meets the standard for willful and vexatious defiance of court orders." *See* Exhibit A, Kriss I, Dkt. No. 126 at 10. In addition to Rule 60(b)(3), the Supreme Court has recognized the inherent power of a court to act as needed in response to bad-faith actions and misconduct, which may "be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49-50 (1991) ("But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.").

Vacating the Plaintiffs' Notices of Dismissal would not function to "relitigate the merits" in this case. *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989). To the contrary, the result of vacatur under Rule 60(b)(3) would be to allow for the dismissal of this case *with prejudice*, which is reasonable considering the extreme facts of this case and which would prevent the "relitigation" of the merits in the future. Based on the clear and convincing evidence demonstrating misconduct, the Court should not allow the Plaintiffs to simply abandon their case at this juncture *without prejudice*. Without such a meaningful deterrent, whether by the Court's inherent power to sanction bad-faith conduct or under Rule 60(b)(3), the Plaintiffs will continue to seek new methods of abusing judicial resources.

### b. Rule 60(b)(6) – Other Reasons Justifying Vacatur

In addition to Rule 60(b)(3), vacatur is also warranted under Rule 60(b)(6) for the reasons stated in *Harvey Aluminum* and its progeny. Rule 60(b)(6) provides that a motion to vacate may be granted for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). This portion of the Rule is properly invoked only when there are "extraordinary circumstances justifying relief," when the contested order or judgment may work an "extreme and undue hardship," and when the "asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." *See Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) (internal citations omitted). The Second Circuit has recognized that, in comparison to the other clauses of Rule 60(b), clause (6) represents a "grand reservoir of equitable power (that should be) liberally applied." *See Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044, 1051 (2d Cir. 1982) (citing *United States v. Cirami*, 563 F.2d

26, 32 (2d Cir. 1977) (internal citations omitted)).  As the Supreme Court stated in *Klapprott v. United States*, 335 U.S. 601, 615 (1949), it "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."

Where the *Harvey Aluminum* court vacated the plaintiff's notice of dismissal because it had previously "squarely raised" the merits of the case, here, the Plaintiffs have similarly raised the merits of this case throughout its hundreds of filings, letters to the Court, and hearings across the several intertwined sister cases.  The Court has considered these merits through numerous orders and reports and recommendations.  To the Plaintiffs, whose goal is not to move forward with a usable complaint, but rather to make public the confidential information under seal, the past five years have progressed precisely as intended, and the Court has recognized these tactics.  *See* Exhibit J, Kriss I, Dkt. No. 178 at 3 ("This lawsuit was filed more than five years ago, and for practically that entire time the defendants have had to deal with a uniquely opaque and prolix complaint, as well as the antics of the plaintiffs' prior counsel.").  Yet, compared to the mere 420-page record described in *Harvey Aluminum*, this case has encompassed a far more expansive record through countless numbers of pages of filings, attached exhibits, and hearing testimony from the various parties and their attorneys.

In addition, the Plaintiffs have attempted to unilaterally terminate the proceeding at a far more "advanced stage" than that in which the plaintiff sought dismissal in *Harvey Aluminum*.  Like the "extreme facts" that justified vacating the notice of dismissal in *ISC Holding*—namely that the plaintiff filed its notice of dismissal twenty-two months into a

proceeding that provided no method of serving an answer or summary judgment motion—the Kriss Cases have been pending for over five years. By the Plaintiff's purposeful delay tactics, the Defendants have also been deprived the opportunity to file an answer or motion for summary judgment in this case. *See ISC Holding AG v. Nobel Biocare Invesments, N.V.*, 759 F. Supp. 2d 294, 296-97 (S.D.N.Y. 2010). Further, like the plaintiff in *ISC Holding*, the Plaintiffs in this case have attempted to terminate the proceedings at a point when far more time and greater resources have been expended by the Court and the Defendants than were expended in *Harvey Aluminum*.

The pervasiveness of the evidence demonstrating the Plaintiffs' chicanery is not limited to their actions within this case alone, or even this Court alone. For example, in the Eastern District of New York case *In Re Applications to Unseal 98 CR 1101*, Judge I. Leo Glasser scolded Messrs. Lerner and Oberlander for continually failing to abide by federal and local rules through their motions to reconsider, where it was clear that the purposes of those motions was not to achieve a legitimate goal, but rather to prolong the case and disrespect the Court. In his May 15, 2013 order denying the Plaintiffs' motion for reconsideration, Judge Glasser stated:

> On April 19, 2013, a nineteen page Joint Motion for Reconsideration was filed, Docket No. 113. That submission contains not a sentence, a word or even a syllable which smacks of a matter or controlling decision which counsel doesn't even purport to believe the Court overlooked to require reconsideration of its March 15, 2013 Memorandum and Order.
>
> In a letter response dated April 26, 2013, Docket No. 115, to their motion to reconsider, the government opposed it for essentially the same reasons.
>
> Having made reference to the Local Rule and blatantly ignored it, they manifest as well an indifference to the certification required by Rule

11(B)(1), Fed. R. Civ. P. that their motion was not presented "for any improper purpose." Their "Joint Motion to Reconsider" is a transparent pretext for airing, yet again, arguments they have repeatedly made and scurrilous charges they have leveled at judges, courts, prosecutors and other lawyers. Those include, for example, "discussion must be made of the intellectual dishonest EDNY history of attempting to restrain the speech of the 'little people' who don't buy info by the barrel, most infamously in the context of Zyprexa," at p. 5; referring to the opinion in Zyprexa, "we assume the court knew perfectly well what was the law and what it was doing and made a bet that the individuals whose civil rights it was violating wouldn't or couldn't pay to appeal. *That's* intellectual dishonesty. Or judicial hubris. Either works." at p. 6-7, "We assert that U.S. v Doe, the 1995 2d Circuit case around which too many judges in this district seems to have built a cottage industry of sealing whatever the government or cooperator wants on the mere 'possibility' of a threat is unconstitutional per se." at p. 10; this Court "illegally hid a felony conviction" at p. 9.

The tenor of that submission and of countless others to which the few excerpts above give barely a hint, magnify the failure to obey the Local Rule and require, if not compel, that their Joint Motion be and it is, hereby denied.

*See* Eastern District of New York Case No. 1:12-MC-150-ILG, Dkt. No. 118 at 1-3 (footnotes omitted) (attached as Exhibit O).

Finally, by filing their Notices of Dismissals at this stage in the various cases, the Plaintiffs have demonstrated no less gamesmanship and a blatant attempt to manipulate the legal system than was evident in *Harvey Aluminum*. There, the plaintiffs' notice of dismissal was plainly designed to avoid an adverse ruling on the merits and to give the plaintiff the flexibility to re-file its proceeding in the same or another jurisdiction. The same was true in *ISC Holding* and *Poparic*, and the same is true in this case. As there has already been a Kriss II, there will too be a Kriss III and a Kriss IV so long as the Plaintiffs' action is dismissed *without prejudice*.

In light of the Court's recent orders chastising the Plaintiffs and their attorneys and casting doubt on the ability of the Plaintiffs to move forward with additional delay tactics, the Plaintiffs had every reason to anticipate not only an adverse ruling on their ultimate merits of this case, but also the imposition of additional sanctions. In this context, and mere days after the Court arranged for the Plaintiffs to appear for a status conference, the Plaintiffs filed their Notices of Dismissal. The Plaintiffs chose to call off this proceeding *without prejudice* in order to give themselves the option to re-file from scratch at a later time and in another court. This tactic is precisely what Rule 41(a)(1) was designed to prohibit. *See Poparic v. Jugo Shop*, Case No. 1:08-CV-2081-KAM-JO, 2010 WL 1260598, at *7 (E.D.N.Y. Mar. 31, 2010). As was the case in *Harvey Aluminum*, *ISC Holding*, and *Poparic*, here, "the purpose of Rule 41(a)(1)(i) would be better served by abandoning a literal interpretation" considering the unique and unusual circumstances of this case. *Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir. 1979). Therefore, the Court should vacate the Notices of Dismissal and, for the reasons discussed in the next section, dismiss the Plaintiffs' case *with prejudice* under Rule 41(b).

**B.    The Plaintiffs Case Should Be Dismissed *With Prejudice* Under Rule 41(b)**

Rule 41(b), Fed. R. Civ. P., states that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule … operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). In determining whether a case should be dismissed under

Rule 41(b), courts are guided by a number of factors: (1) the duration of the plaintiff's failure(s) to comply with court orders, (2) whether the plaintiff was on notice that its failure to comply would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996); *Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988). In making use of this test, "[n]o one factor is dispositive, and ultimately [the Court] must review dismissal in light of the record as a whole." *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004); *see also Palmieri v. Defaria*, 88 F.3d 136, 140 (2d Cir. 1996) (holding that proper review of dismissal under Rule 41(b) requires careful examination of "each case in its own factual circumstances") (internal quotation marks omitted)).

Significantly, courts have dismissed cases for failure to prosecute largely where plaintiffs fail to timely file a complaint, respond to motions, or otherwise comply with a court's orders. *See, e.g., Lewis v. Rawson, et al.*, 564 F.3d 569, 576 (2d Cir. 2009) (missing deadline for filing amended complaint); *Lucas v. Miles*, 84 F.3d 532, 534-35 (2d Cir. 1996) (failing to timely file amended complaint); *Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir. 1993) (failing "to comply with two court orders and otherwise demonstra[ting] a lack of respect for the court," culminating in failure to appear at start of trial). Indeed, as the Second Circuit has bluntly held, when a litigant fails to comply with court orders, "litigants must suffer the consequences of their actions." *McDonald v. Head Criminal*

*Court Supervisor Officer,* 850 F.2d 121, 124 (2d. Cir. 1988). Here, as the Court is well aware, the Plaintiffs willfully and repeatedly failed to prosecute their case and comply with the Court's orders, and all five factors weigh in the favor of dismissal *with prejudice* under Rule 41(b).

First, the length of total time and frequency with which the Plaintiffs have defied the court's orders in this case and its sister cases is well known by the Court. *See* <u>Exhibit I</u>, Kriss I, Dkt. No. 68 at 11 ("In short, despite Plaintiffs' effort to make it appear as if they have complied with my directives, what they actually have produced is virtually useless and does not comply with the Court's instructions."); Kriss I, Dkt. No. 97 at 2 ("Plaintiffs repeatedly have failed to comply with the 2014 Order and prior directives to the same effect.") (attached hereto as <u>Exhibit P</u>); <u>Exhibit A</u>, Kriss I, Dkt. No. 126 at 10 ("Plaintiffs have repeatedly and vexatiously defied the Court's orders.").

Second, the Plaintiffs have received adequate notice that their continued failure to prosecute this case and comply with the Court's orders would carry grave consequences, including the prospect of dismissal *with prejudice*. *See* Dkt. No. 105 (threatening dismissal *with prejudice* under Rule 41(b) if the Plaintiffs continued to skirt the Court's orders); *see also* <u>Exhibit I</u>, Kriss I, Dkt. No. 68 at 11 ("Faced with such noncompliance, the Court has the inherent power to impose a number of different sanctions, including dismissal of the entire action or particular claims." (citing Fed. R. Civ. P. 41(b))); <u>Exhibit A</u>, Kriss I, Dkt. No. 126 at 10 ("The May 2014 Order warned them that failure to comply would result in a recommendation of outright dismissal with prejudice.").

Third, Mr. Sater, who has been dragged through the mud by the Plaintiffs' abusive tactics for over five years and whose safety is the primary reason for sealing the stolen confidential information in the first place, would suffer severe prejudice if the Plaintiffs are left to wantonly reopen this matter in another court at another time. As stated *supra*, the main goal of the Plaintiff's case is to extort settlements from the Defendants based on the threat of release of stolen confidential information.

Fourth, as it has indicated through numerous orders and reports and recommendations revealing its understandable frustration, the Court has gone above and beyond to preserve the Plaintiffs' due process rights and interest in receiving a fair opportunity to proceed in this case. At multiple times during the course of this case, the Court could have dismissed it in its entirety due to the Plaintiffs' repeated misconduct, failure to prosecute, and failure to comply with orders. Yet, in the interest of fairness, the Court allowed the Plaintiffs chance after chance to remedy their repeated mistakes. After all of this, the Plaintiffs' Notices of Dismissal *without prejudice* demonstrate, if anything, that the Court's efforts fell on deaf ears, as the Plaintiffs' chief purpose in filing this case was not to obtain justice, but to frustrate the Defendants at any expense.

Fifth, the Court has, on multiple occasions, considered sanctions less severe than dismissal *with prejudice*. However, the present motion does not seek to outright dismiss Kriss II on its own, but rather to "convert" the Notices of Dismissal *without prejudice* into a dismissal *with prejudice* under Rule 41(b) or, at the Court's discretion, another method it deems appropriate. Ultimately, when viewing the unique and unusual administrative

record as a whole, it is clear that dismissal *with prejudice* under Rule 41(b) is not only a reasonable option, but it is the necessary option in this case.

## <u>CONCLUSION</u>

Based on the foregoing, Mr. Sater respectfully requests an Order vacating the Plaintiffs' Rule 41(a)(1) Notices of Voluntary Dismissal *without prejudice* under Rule 60(b) and dismissing the Plaintiffs case *with prejudice* under Rule 41(b), or through the use of any other method that the Court deems appropriate.

Dated: October 9, 2015
      New York, NY

MOSES & SINGER LLP
*Attorneys for Defendant Felix Sater*

By:___/s/_____
Robert S. Wolf
405 Lexington Avenue
New York, NY 10174
(212) 554-7525 (phone)
(917) 206-4325 (fax)
*rwolf@mosessinger.com*

cc: All Parties via ECF

24