**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

J. KRISS and MICHAEL EJEKAM, et al.,

        Plaintiffs,

        vs.

BAYROCK GROUP LLC, et al.,

        Defendants.

-----------------------------------------------------------------X

13 Civ. 3905 (LGS) (FM)


## MEMORANDA OF LAW OF NON-PARTIES J. KRISS AND MICHAEL EJEKAM IN OPPOSITION TO DEFENDANT FELIX SATER'S MOTION TO VACATE PLAINTIFFS' RULE 41(a) NOTICES OF DISMISSAL AND TO DISMISS THE ACTION WITH PREJUDICE

# I.    INTRODUCTION

Defendant Felix Sater's ("Sater") motion to vacate the voluntary dismissals of former plaintiffs in this action Jody L. Kriss ("Kriss") and Michael Chu'di Ejeckam ("Ejekam," and, jointly with Kriss, "Former Plaintiffs"), and to dismiss their claims with prejudice, represents a new low in the multi-venue campaign by Sater and his attorneys to harass and penalize the Former Plaintiffs.  It insults the intelligence of both the Court and Former Plaintiffs.

As Former Plaintiffs have explained to the Court at length elsewhere,[1] in 10-CV-3959 (LGS) (FM), referred to as "Kriss I," and in an Order to Show Cause before Judge Brian M. Cogan in the Eastern District, 12-MC-557 (BMC), Sater and his attorneys claim that Kriss intentionally and publicly disseminated information found in sealed documents relating to Sater's 1998 criminal conviction in the Eastern District before U.S. District Judge I. Leo Glasser, and the documents themselves.   However, Sater has failed to identify any evidence showing that Mr. Kriss has actively engaged in this activity – activity to which former counsel for Former Plaintiffs, Frederick M. Oberlander ("Oberlander"), has admitted, and which he asserts (to this day) is fully protected by the First Amendment.

The Court, however, need not consider *in connection with this motion* the parties' dispute concerning the extent of Mr. Kriss' involvement in the acquisition and use of the sealed documents and information apart from Oberlander's.  The law in the Second Circuit is crystal clear that alleged or actual misconduct or bad faith ***never*** provides a basis for depriving a plaintiff his categorical right under Fed. R. Civ. P. 41(a)(1)(A)(i) to, "[w]ithout a court order," dismiss without prejudice "before the opposing party serves either an answer or a motion for

---

[1] Former Plaintiffs respectfully refer the Court to the Response of Plaintiffs Jody Kriss and Michael Chu'di Ejeckam (*Kriss I*, ECF No. 184) to Defendant Felix Sater's Objections (*Kriss I*, ECF No. 182) to Chief Magistrate Judge Frank D. Mass' Report and Recommendation of August 13, 2015 (*Kriss I*, ECF No. 178).

summary judgment." Former Plaintiffs exercised this categorical right on May 15, 2015. At that time no Defendant in *Kriss II* had filed an answer or a motion for summary judgement. Accordingly, the Court must deny Sater's motion.

This motion is, in a word, frivolous. The three cases cited by Sater's attorneys in support of the motion to vacate are wholly inapposite and may no longer represent good law in the Second Circuit. The cases may (assuming, *arguendo*, that they represent good law) carve out what is an exceptionally rare exception to Rule 41(a)(1)(A)(i) where *a district court adjudicates the merits of a plaintiffs' claims* in a context other than a summary judgment motion or trial, to such an extent significantly greater than would normally be the case, that the litigation at bar could be said to have reached an "advanced stage." Here, the court has never analyzed, ruled upon or adjudicated any aspect of the Former Plaintiffs' claims in *Kriss II*, or reviewed any evidence or heard any testimony concerning those claims.

Sater's discussion of the application of this exceedingly-rarely-used and disfavored merits-based exception to Rule 41(a)(1)(A)(i) to this case borders on the ludicrous. His motion does not actually discuss "the merits" of Plaintiffs' claims in this action (*Kriss II*). Rather, it discusses what Sater calls "the *actual* merits" of *Kriss II* – which, presumably, represent how Sater's attorneys would like the Court to interpret Plaintiffs' claims – "namely the Plaintiffs' attempts to make public the stolen confidential information at issue." (*Kriss II*, ECF No. 130 at 9 (page 5)). Engaging in such semantics, Sater is thus able to assert that the Court has conducted litigation "on the merits" in *Kriss II*. There is one small problem with these assertions: The exception upon which Sater hangs his hat turns on the adjudication of "the merits" as normally understood by most attorneys and courts – indeed by *all other* attorneys and *all* courts.

2

As Sater's motion to vacate is patently groundless, Plaintiffs conclude their opposition with a request to the Court for leave to file a motion against Sater and his attorneys under Fed. R. Civ. P. 11(b) for sanctions. Permitting Former Plaintiffs to file such a motion would go far in thwarting the campaign of Sater and his attorneys to extort settlement or dismissal of *Kriss I* by driving up litigation expenses with unnecessary motion practice in *Kriss I* and related litigation.

## II.  BACKGROUND

For reasons that remain unclear to the undersigned, Frederick Oberlander and Richard Lerner, former counsel to Former Plaintiffs, sought to "bifurcate" our clients injuries and claims in a series of federal and state lawsuits, including *Kriss I* and *Kriss II*. The contents of the pleadings filed by Oberlander and Lerner in *Kriss II* overlap considerably with the underlying events, injuries and claims alleged in both the First Amended Complaint (*Kriss I* ECF No. 39), and the Proposed Second Amended Complaint (*Kriss I*, ECF No. 160), filed in *Kriss I*.

In late March 2015, Former Plaintiffs determined that Oberlander was pursuing their claims against Sater, Bayrock Group LLC ("Bayrock Group"), and others in a manner they believed was not in their best interests, including his decision to pursue their claims in more than one lawsuit. They decided it would be best to retain new counsel to represent them in the two actions before this court. On April 14, 2015, appearing on behalf of Messrs. Kriss and Ejekam at a conference before Judge Maas, and in an effort to right the ship, the undersigned agreed to voluntarily dismiss Former Plaintiffs from *Kriss II*, thereby concentrating all of their claims relating to the Defendants that have been named in the numerous cases filed by Oberlander and Lerner in one case, *Kriss I*. (*See Kriss I*, ECF No. 140 at XX).[2] Former Plaintiffs filed their

---

[2] On July 23, 2013, *Kriss I* was referred to Judge Maas for general pretrial purposes, including "resolution of the issues that are the basis for [Bayrock's] objections to the public filing of the

3

Notice of Voluntary Dismissal of *Kriss II* on May 15, 2015 (*see Kriss II*, ECF No. 114); the court approved the Notice on June 23, 2015 (*see Kriss II*, ECF No. 124). In a separate development, on July 10, 2015, the plaintiffs in *Kriss II other than Messrs. Kriss and Ejekam* filed two Notices of Voluntary Dismissal, one with respect to their claims against Sater, another with respect to their claims against the remaining *Kriss II* defendants (*see Kriss II*, ECF Nos. 125, 126); the court approved their Notices on July 13, 2015 (*see Kriss II*, ECF No. 127). On July 13, 2015, the court ordered the Clerk to close *Kriss II*. Id.

In *Kriss I*, during May 2015, Plaintiffs submitted to Judge Maas a Proposed Second Amended Complaint (the "SAC") that, unlike its predecessor, is coherent and cogent, and excludes the sealed and privileged information obtained by Oberlander. At that point, Former Plaintiffs had provided Defendants what they had sought for years: the removal of Oberlander from *Kriss I*, and a lucid complaint that does not expose sealed and privileged information that was obtained from a former employee of Bayrock Group, Joshua Bernstein ("Bernstein"). In an August 2015 Report and Recommendation (*Kriss I*, ECF No. 178), Judge Maas recommended that the court grant Plaintiffs leave to file the proposed SAC publicly and the case be allowed to proceed (the "August 2015 R&R"). Rather than welcoming the opportunity to clear his name, Sater filed Objections to the August 2015 R&R that the Court rejected today. (*See Kriss I*, ECF No. 198. Former Plaintiffs submit that Sater did so because, faced with an intelligible pleading that alleges that he has defrauded scores of individuals and entities, and threatened at least two individuals with bodily harm, he seeks to preempt the litigation of Kriss' claims on the merits at all costs.

---

FAC." (*Kriss I*, ECF Nos. 52, 53). On May 22, 2014, the Court referred *Kriss II* to Judge Maas for general pretrial purposes. (*Kriss II*, ECF No. 68).

### A. Former Plaintiffs' Claims in Kriss I

In *Kriss I*, Former Plaintiffs allege, *inter alia*, that they, like other individuals, investors and banks, were financially injured when they transacted with Defendants, including Sater, because, in part, Sater had concealed from them his 1998 RICO conviction relating to a securities fraud and money laundering scheme. (*See Kriss I*, ECF No. 68, at 2; Excerpts from Former Plaintiffs' First Amended Complaint (the "FAC"), Affirmation of J. Evan Shapiro ("Shapiro Aff."), Ex. 1 (*Kriss I*, ECF No. 184-3); *see also United States v. Sater*, No. 98 Cr. 1101 (the "EDNY Action"), ECF Nos. 2, 18, 92). During the time period at issue in this case, Sater served as the Managing Director of Bayrock Group. (Id.) In their FAC in *Kriss I*, Former Plaintiffs allege that they provided executive financial services to Bayrock and were defrauded of funds due them under the agreements that governed the provision of those services. (*See Kriss I*, ECF No. 184-3, at 75-76). Moreover, they allege that Sater was behind the frauds that injured them (*see Kriss I*, ECF No. 184-3), frauds that are consistent with the criminal activity for which Sater was convicted in 1998. (*See, e.g.,* EDNY Action, ECF No. 18).

On June 5, 2015, Former Plaintiffs filed under seal a Proposed Second Amended Complaint in *Kriss I* (the "SAC"). (ECF Nos. 178, at 2; 160). The SAC includes claims that are based upon events involving Plaintiffs that are discussed in the FAC. (ECF No. 160). However, the SAC dispenses with the obscure, difficult-to-comprehend RICO claims based on violations of federal tax and money laundering statutes found in the FAC. (*See* id.). The SAC replaces these with similar claims based on a series of frauds committed by Defendants, and a series of violations of the National Stolen Property Act, 18 U.S.C. §§ 2314 and 2315 related to those frauds. (*See Kriss I*, ECF No. 160). The SAC also contains state law claims based on the same set of facts as are the SAC's RICO claims. (*See Kriss I*, ECF No. 160).

## B. The Kriss II Complaint

The complaint most recently filed by Oberlander and Lerner in *Kriss II* is ECF No. 70, and was filed under seal (the "Complaint"). It is a casually-written document that is difficult to decipher in terms of legal claims. However, it purports to assert "derivative claims" brought by Former Plaintiffs as equity-holding members of various entities related to Bayrock Group investments, against parties, including Sater, who are also defendants in *Kriss I*. The most recent *Kriss II* complaint also discusses Sater's failure to reveal his 1998 conviction to individuals who worked at Bayrock Group, and others who transacted business with Bayrock Group; the wrongful use of Bayrock Group funds to pay for Sater's expenses and his off-the-books salary of (at least) $1 million per year; and Bayrock Group's failure to disclose Sater's 1998 conviction to (1) investors who invested funds in Bayrock Group's real estate projects and (2) banks that lent funds to Bayrock Group to complete those projects.

## C. The Instant Motion

On October 9, 2015 Sater filed this Motion to Vacate Plaintiffs' Rule 41(a)(1)(A)(i) Notices of Dismissal Without Prejudice Under Rule 60(b) and Dismiss This Action With Prejudice Under Rule 41(b) (the "Motion"). The first nine pages of Sater's Memorandum of Law in Support of the Motion ("Sater's Opening Brief") contains Sater's account of the actions taken by Oberlander and Lerner with respect to the sealed documents relating to Sater's 1998 conviction. (*See Kriss II*, ECF No. 130, at 5-13 (pp. 1-9)). The account is similar in substance to the account set forth in various memoranda of law filed by Sater in *Kriss I*, for example, his recent Objections to the August 2015 R&R. (*See Kriss I*, ECF No. 182). Former Plaintiffs are, obviously, parties to the lawsuits filed by Oberlander and Lerner, and reviewed the contents of pleadings filed in those actions, and thus are mentioned in the account. However, the first two

sections of Sater's Opening Brief, the Preliminary Statement and Background, do not set forth

any evidence establishing that Former Plaintiffs are responsible for the public dissemination of

information from the sealed documents relating to Sater's criminal conviction.

The Preliminary Statement of Sater's Opening Brief makes clear that Sater seeks to

vacate the voluntary dismissals and have the case dismissed with prejudice to punish Oberlander,

Lerner and Former Plaintiffs with the expectation that dismissal of *Kriss II* with prejudice will

act as "an effective deterrent": Sater claims that unless his motion is granted, "Plaintiffs… will

continue to repackage their unfounded claims into new cases with impunity." (*Kriss II*, ECF No.

130, at 5 (page 1)).

### III.   THE COURT SHOULD DENY SATER'S MOTION TO VACATE AND DISMISS WITH PREJUDICE FORMER PLAINTIFFS' CLAIMS

Under unassailable Second Circuit case law, as no defendant in this action had served

either an answer or a motion for summary judgment in this case as of May 15, 2015, the date

Former Plaintiffs filed their Notice of Dismissal, on that date Fed. R. Civ. P. 41(a)(1)(A)(i)

provided them an "'unfettered right voluntarily and unilaterally to dismiss [this] action.'"

*Wolters Kluwer Financial Services v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (quoting

*Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979). The Court properly granted Former

Plaintiffs' voluntary dismissal in June 2015. (*See Kriss II* ECF No. 124).

Although Sater has identified *three out of thousands of instances (at least)* in which

Second Circuit courts have refused to allow plaintiffs to exercise their Rule 41(a)(1)(A)(i)

dismissal right even though their opposing party had not yet served either an answer or a

summary judgment motion, those three cases are easily distinguishable from the instant matter.

In each of these exceedingly rare cases, the district court had adjudicated *the merits* of the

plaintiffs' claims to such an extent that the case could be said to have reached "an advanced stage," even though no summary judgment motion had been made, and no trial had occured. *See Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105, 107-108 (2d Cir. 1953); *Poparic v. Jugo Shop*, No. 08-CV-2081 (KAM) (JO), 2010 U.S. Dist. LEXIS 31385, at *21-22 (E.D.N.Y. Mar. 31, 2010); *ISC Holding AG v. Nobel Biocare Invs. N.V.*, 759 F. Supp. 2d 294, 296-297 (S.D.N.Y. 2010).

In no respect can this matter be said to have reached "an advanced stage." Sater has not even attempted to make such an argument. Instead, he contends that the Court should deprive Former Plaintiffs, along with all of the other plaintiffs in this case, of their Rule 41(a)(1)(A)(i) dismissal right, to deter Oberlander and Lerner from bringing additional actions in the future based on the events and transactions recounted in the Complaint. Second Circuit courts have explicitly rejected requests to deprive plaintiffs of their Rule 41(a)(1)(A)(i) dismissal rights based on legitimate concerns of a defendant that plaintiffs intend to litigate the claims raised in the dismissed action at a later time or in another venue. *See, e.g., Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir. 1979); *BH Seven, LLC v. Ambit Energy, L.P.*, 11-CV-2483 (ARR) (RER), 2012 U.S. Dist. LEXIS 137496, at *5-*6; *Bressler v. Liebman*, 96 Civ. 9310 (LAP), 1998 U.S. Dist. LEXIS 4691, at *8 (S.D.N.Y. Apr. 6, 1998). Further, such courts routinely deny motions such as Sater's, based solely on allegations that the plaintiff had engaged in bad faith or misconduct, no matter how substantiated. *See e.g., Ashford Fin. LLC v. Anhui Tech. Imp. & Exp. Co.*, 09 Civ. 7975 (RLE), 2010 U.S. Dist. LEXIS 112757, at *4-*5 (S.D.N.Y. Oct. 22, 2010); *BH Seven, LLC*, 2012 U.S. Dist. LEXIS 137496, at *1, *7-*8.

Accordingly, the Court must deny Sater's motion to vacate.

## A. **A Plaintiff's "Unfettered Right" to Dismiss Without Prejudice Under Fed. R. Civ. P. 41(a)(1)(A)(i).**

Fed. R. Civ. P. 41(a)(1)(A)(i) permits a plaintiff to dismiss an action by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." As recently as 2009, the Second Circuit has reaffirmed that "a plaintiff who has not been served with an answer or motion for summary judgment has an 'unfettered right voluntarily and unilaterally to dismiss an action.'" *Wolters Kluwer Financial Services v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (quoting *Thorp v. Scarne*, 599 F.2d 1169, 1175 (2d Cir. 1979)). Moreover, the Court noted in that 2009 opinion, that as "long as the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to [dismiss] ... are not for us to judge." *Id.* (quoting *Thorp*, 599 F.2d at 1177 n. 10).

"Within the limitations set forth by the rule itself, the right to dismiss pursuant to Rule 41(a)(1) is absolute. Thus, where the conditions set forth in the Rule have been met, neither the Court nor a defendant may prevent Rule 41(a)(1)(i) dismissal." *Adar 980 Realty, LLC v. Sofer*, 14-CV-2977 (ARR); 14-CV-3031 (ARR), 2014 U.S. Dist. LEXIS 108951, at *19 (E.D.N.Y. Aug. 5, 2014) (quoting *Medina v. N.Y. State Dep't of Corr. Servs.*, No. 03 Civ.9249 (RWS), 2004 U.S. Dist. LEXIS 21485, at *3 (S.D.N.Y. Oct. 26, 2004) (internal quotation marks and citations omitted)). As this Court explained as recently as May 2015, "[t]his rule is intended to "establish[] a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally to dismiss an action." *Estate of Schneider Sauter v. Citigroup Inc.*, 14 Civ. 05812 (LGS), 2015 U.S. Dist. LEXIS 68942, at *9-*10 (quoting *Thorp*, 599 F.2d at 1175) (holding that "[s]ince no answer or motion for summary judgment has been filed, Plaintiff's dismissal without prejudice will not be vacated").

Moreover, the "mere expenditure of time and money by a defendant . . . does not bar a plaintiff from timely dismissing an action under Rule 41(a)(1)(i)." *Johnson Chem. Co. v. Home Care Prods., Inc.*, 823 F.2d 28, 31 (2d Cir. 1987), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990); *see also Seippel v. Jenkens & Gilchrist, P.C.*, 03 Civ. 6942 (SAS), 2004 U.S. Dist. LEXIS 24566, at *7 (S.D.N.Y. Dec. 3, 2004).

Indeed, as the Second Circuit explained in *Thorp*:

> Although application of Rule 41(a)(1)(i) as written may no doubt on occasion be a source of great frustration to a defendant whose hopes of early victory on the merits are dashed by the filing of a notice of dismissal by a plaintiff seeking to avoid defeat, it does not follow that a defendant is left defenseless against the whim and caprice of the plaintiff. . . . (Plaintiff's) ability to harass defendant by the filing and dismissing of successive actions involving the same claim or claims is limited and can be cut off completely by the diligence required in the filing (and service) of an answer or motion for summary judgment.

*Thorp*, 599 F.2d at 1176 (quoting *D. C. Electronics, Inc. v. Nartron Corp.*, 511 F.2d 294, 298 (6th Cir. 1975) (internal quotation marks omitted)).

## B.  The Three Cases Supporting Sater's Motion to Vacate Are Wholly Inapposite.

Sater hangs his hat on an extreme outlier that obviously has no application here: *Harvey Aluminum*. "The Second Circuit has recognized a limited exception to the absolute nature of Rule 41(a)(1)(A)(i) for cases *where the Court has for some reason delved deeply into the merits of the case* prior to the filing of an answer or summary judgment motion." *Katzman v. American Airlines*, 97 Civ. 8321 (JSM), 1997 U.S. Dist. LEXIS 19303, at *2 (S.D.N.Y. Dec. 4, 1997) (citing *Harvey Aluminum*) (emphasis added). Moreover, as this Court has explained, in *Thorp*, decided 26 years after *Harvey Aluminum*, the Circuit "stated that, in cases falling short of the extreme exemplified by *Harvey Aluminum*, notices of dismissal filed in conformance with the explicit requirements of Rule 41(a)(1)(A)(i) are not subject to vacatur on the ground that the

merits of the controversy had been raised before the court." *Estate of Schneider Sauter*, 2015 U.S. Dist. LEXIS 68942, at *10 (quoting *Thorp*, 599 F.2d at 1174) (internal quotation marks and citations omitted).

In *Harvey Aluminum,* a district court held a hearing on plaintiffs' motion for a preliminary injunction based on their claims that the defendants owed them specific performance of an alleged agreement to sell tangible assets of mining company. 203 F.2d at 106-07. The hearing "required several days of argument and testimony, which yield[ed] a record of some 420 pages." *Id.* at 107. "The merits of the controversy were squarely raised [in the hearing]," *id.*; the district court denied the motion, finding, *inter alia*, "that the plaintiffs' chances of success on the ultimate trial were 'remote, if not completely nil.'" *Id.* at 107.

In addition to *Harvey Aluminum,* Sater has cited *Poparic*. There, plaintiff sued defendants for copyright infringement. Believing that he would be granted all the relief he sought in his complaint if he did so, the plaintiff moved for a default judgment against the defendants. Judge Matsumoto of the Eastern District referred the case to Magistrate Judge James Orenstein "to conduct an inquest as to jurisdiction, damages, attorneys' fees, and injunctive relief." 2010 U.S. Dist. LEXIS 31385, at *1-*2 (citation omitted). Judge Orenstein issued an 18-page Report and Recommendation that "analyze[d] plaintiff's claims under the applicable legal standards and point[ed] out the significant pleading defects in the Complaint as related to plaintiff's claims against [one] defendant [ ], alleged liability under Connecticut common law and the Lanham Act, and [plaintiff's] request for a permanent injunction." *Id.* at *7. The Report also recommended the amount of statutory damages, fees and costs to which plaintiff was entitled. *Id.* Obviously displeased with Judge Orenstein's recommendations, the plaintiff filed a notice dismissing the entire action without prejudice 12 days after Judge Orenstein issued his

report and recommendation. The court held that since "all that remained was this court's review of the R&R," the plaintiff had effectively filed the notice at "an 'advanced stage' of the litigation" *Id.* at \*21.

Sater has also cited *ISC Holding AG v. Nobel Biocare Invs. N.V.*, deceptively suggesting that the application of *Harvey Aluminum* in that matter still represents good Second Circuit law.[3] In fact it does not. In *ISC Holding*, **a proceeding initiated by a petition to compel arbitration**, the district court held that the case before it entailed "extreme facts justifying vacating [the] petitioner's notice of dismissal" under Rule 41(a)(1)(A)(i). 759 F. Supp. 2d at 296. These included (1) the parties had "undert[aken] discovery, which [had] generated over 2300 pages of documents and more than 1,300 pages of deposition testimony of five witnesses on both sides of the Atlantic Ocean"; (2) the case had proceeded for 22 months yet the defendants could not serve an answer or summary judgment motion; **and** (3) the following had occurred in the case: "a decision on the merits [and] briefing, argument and remand by the Court of Appeals." *Id.* (internal quotation marks and citations omitted). On appeal, the Second Circuit held that the plaintiff was not entitled to a voluntary dismissal under Rule 41(a)(1)(A)(i) because that provision of the Federal Rules of Civil Procedure did not apply to petitions to compel under 9 U.S.C. § 4. *ISC Holding*, 688 F. 3d 98, 116 (2d Cir. 2012). Discussing the grounds upon which the district court had vacated the petitioner's voluntary dismissal, the Court stated: "Though we do not reach the issue given our resolution of the case, we note our skepticism that *Harvey Aluminum* is still good law, even confined to the exceedingly narrow compass allowed by our precedent." *Id.*

---

[3] Sater asserts with respect to *ISC Holding AG v. Nobel Biocare Invs. N.V.*, 759 F. Supp. 2d 294, (S.D.N.Y. 2010) that "[o]n appeal, the Second Circuit upheld the district court's ruling using an alternative analysis of the case…. [h]owever, "nonetheless agree[d] with [the district] court's conclusion…" (*Kriss II*, ECF No. 130, at 16 (p. 12).

The initial problem with Sater's contention that the *Harvey Aluminum* exception applies to this action is his failure even to identify "the merits" of Plaintiffs' claims in *Kriss II*. On this question, his Opening Brief discusses the first Kriss II complaint, filed in New York State court: "Their self-styled "Class Action Complaint" repeated the same salacious, yet nonsensical allegations against the Defendants as those in Kriss I... namely that dozens of unrelated defendants... somehow collaborated over many years to perpetrate a massive conspiracy to defraud the Plaintiffs out of a billion dollars." (*Kriss II*, ECF No. 130 at 11 (page 7)). It then discusses the current complaint in *Kriss II*, which, according to Sater, "replicated extensive portions and several hundred paragraphs of the complaint in Kriss I." (*Kriss II*, ECF No. 130 at 12 (page 8)). Sater's motion nowhere mentions any litigation by this Court concerning "a massive conspiracy to defraud the Plaintiffs out of a billion dollars" or of assertions made in "several hundred paragraphs of the complaint in Kriss I." Instead, Sater asserts that the "actual merits" of *Kriss II* are the acts of Oberlander, Lerner and Former Plaintiffs to which Sater and his attorneys have objected over the last three years. It is difficult to fathom that the handful of Second Circuit courts that have carved out an extremely rare exception to the "unfettered" right of plaintiffs to voluntarily dismiss under Rule 41(a)(1)(A)(i) – Sater has only identified three cases in which the exception has been held to apply – had in mind Sater's concept of "actual merits" when they crafted their careful rulings.

In this case, the Court has not adjudicated – even on a preliminary basis – Former Plaintiffs' claims that Sater and the Bayrock Group entities, or other defendants that are named in both *Kriss I and Kriss II*, injured them financially in connection with payments made by Bayrock Group to Sater and others in violation of their rights as equity members of Bayrock Group entities. That a considerable amount of litigation in this action and elsewhere concerning

13

the use of information from sealed documents pertaining to Sater's 1998 Eastern District conviction has occured does not alter this irrefutable fact. In neither *Kriss I* nor *Kriss II* has either Your Honor or Judge Maas ever reviewed, adjudicated, discussed at any length or reflected upon Former Plaintiffs' claims that Sater, Bayrock Group entities and others injured them financially by making undisclosed payments to Sater, and entering into a $50 million dollar transaction that essentially deprived them of their equity rights in Bayrock Group investments. Sater's contention that dissemination of the sealed documents and information contained therein somehow constitute "the merits" of the Complaint is patently absurd and insults the intelligence of Former Plaintiffs, counsel and the Court. (*See* ECF No. 130, at 9 (p. 5). It is beyond dispute that Plaintiffs in *Kriss II* surely are *not* seeking relief from the dissemination of any sealed documents or of any information contained therein.

The "rare" exception to the plain wording of Rule 41(a)(1)(A)(i), applied in *Harvey Aluminum*, *ISC Holding*, and *Poparic* does not apply here and thus fails to form a basis upon which to grant the instant motion to vacate Former Plaintiffs' notice of voluntary dismissal.

**C. <u>District Courts in the Second Circuit Routinely Reject Fears of Continuing Vexatious Litigation and Allegations of Bad Faith as Insufficient Bases Upon Which to Deprive Plaintiffs of Their Unfettered Right to Voluntarily Dismiss Without Prejudice Under Rule 41(a)(1)(A)(i).</u>**

Second Circuit law is clear: District courts are barred from depriving a plaintiff of his unfettered right to voluntarily dismiss, before the opposing party files an answer or summary judgment motion, in order to foreclose the plaintiff from initiating future litigation. *See, e.g., Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir. 1979); *Bressler v. Liebman*, 96 Civ. 9310 (LAP), 1998 U.S. Dist. LEXIS 4691, at *8 (S.D.N.Y. Apr. 6, 1998).

In *Thorp*, when the plaintiff moved the district court for a temporary restraining order, "the court indicated an inclination to grant a motion by defendants for partial summary judgment

if such a motion were to be made and [ ] the defense indicated an inclination to make such a motion"; in addition, the court "directed" the defendants to make that motion. 599 F.2d at 1172-73. Defendant failed to file or serve a summary judgment motion, partial or otherwise, before the plaintiff filed a notice of voluntary dismissal under Rule 41(a)(1)(i). The district court, which had essentially expressed its intention to grant the summary judgment motion if filed, vacated the plaintiff's notice. *Id.* at 1173. It did so after concluding that "the defendants' brief in opposition" to the plaintiff's motion for preliminary relief was the "equivalent" of a summary judgment motion, the service of which "had terminated [the plaintiff's] right unilaterally to dismiss his action under Rule 41(a)(1)(i)." *Id.* The Second Circuit rejected the district court's reasoning, and held that a defendant is protected from a plaintiff's "ability to harass [him] by the filing and dismissing of successive actions involving the same claim or claims," in two ways: (1) such ability "can be cut off completely by the diligence required in the filing (and service) of an answer or motion for summary judgment"; and (2) the provision in Rule 41(a)(1)(A) that a plaintiff "can but once voluntarily dismiss without prejudice." *Id.* at 1176.

In the words of the district court, *Bressler* involved a "seemingly endless campaign" mounted by the plaintiff against the defendants. 1998 U.S. Dist. LEXIS 4691, at *1. Based on the previous misconduct of the plaintiff, the court, on August 14, 1998, ordered that he post a $50,000 bond as security for the defendants' fees and costs in defending the case "within five days of the date hereof," and that if he failed to do so "the action w[ould] be dismissed." *Id.* The plaintiff failed to post the bond, and on August 21, 1998, Judge Loretta A. Preska received from the Clerk of Court a so-ordered "Rule 41 Notice of Dismissal," which was a letter from plaintiff dated August 15, 1998 stating that he was voluntarily dismissing the action." *Id.* at *1-*2. The defendants moved to vacate the plaintiff's notice arguing that the case had terminated pursuant to

her order before the effective date of plaintiff's notice. *Id.* at \*3-\*5. However, because of the rules concerning the method of computing periods of time prescribed by the court in effect at that time, the court determined that plaintiff had through August 21, 1998 to post the bond. *Id.* at \*5.

Accordingly, Judge Preska therefore denied defendant's motion. However, she discussed her considerable empathy for the defendants' plight: "defendants understandably seek to prevent [the plaintiff] from instituting a similar action against them in the future." At the same time, she held that "the outcome under Rule 41(a)(1)(i) cannot change even though [the plaintiff] is a vexatious litigant pressing flawed claims; the mere prospect of a second lawsuit is not sufficient to render a dismissal 'on the merits' within the meaning of the Rule. *Id.* at \*8 (citing *Debruyn Produce Co. v. Sobiech*, 1992 U.S. Dist. LEXIS 9744, No. 91 Civ. 7995 (PKL) (S.D.N.Y. June 30, 1992)). *See also BH Seven, LLC*, 2012 U.S. Dist. LEXIS 137496, at \*5 (where court denied defendants' motion to vacate the voluntary dismissal of a plaintiff who had filed four complaints, the court noted that "defendants are not left without protection against duplicative future litigation").

Second Circuit courts also routinely reject arguments, such as that made by Sater on this motion, that under *Harvey Aluminum* an "exception" to Rule 41(a)(1)(A)(i) can be made based upon a plaintiff's misconduct or bad faith, or allegations thereof. *See, e.g., Ashford Fin. LLC*, 2010 U.S. Dist. LEXIS 112757, at \*4 ("There is no question that Ashford has wasted judicial resources and caused other parties to incur attorney's fees and expenses. Moreover, the timing of its voluntary dismissal raises some questions concerning its good faith. The fact remains, however, that BLB did not file an answer or a motion for summary judgment, and Ashford retained its right to voluntarily dismiss the action"); *Estate of Schneider Sauter*, 2015 U.S. Dist. LEXIS 68942, at \*9-\*12 (court rejected defendants' motion to vacate plaintiff's notice of

voluntary dismissal where defendants asserted that the plaintiff and his counsel "unreasonably multiplied the proceedings in bad faith"); *BH Seven, LLC*, 2012 U.S. Dist. LEXIS 137496, at *1, *7-*8 (same where "[a]fter two futile attempts to amend the significant substantive and jurisdictional infirmities in its original Complaint, plaintiff was granted the opportunity to file a fourth and final complaint," the court "conditioned the filing of plaintiffs' final complaint upon payment of the reasonable attorneys' fees and costs that defendants had incurred in moving to dismiss plaintiff's Second Amended Complaint, as "defendants had expended [considerable resources] in defending against plaintiffs'[*sic*] successive, deficient complaints"); *Seippel*, 2004 U.S. Dist. LEXIS 24566, at *7-*9 (court held plaintiff's notice of voluntary dismissal to be valid even where court sympathized with defendants' argument that plaintiffs sought dismissal "solely to evade the implications" of an order of the court which ruled that plaintiffs' malpractice claims against a defendant law firm were time-barred); *Katzman*, 1997 U.S. Dist. LEXIS 19303, at *1-*2 (same where defendant asserted that the plaintiff had acted improperly by filing her complaint originally in state court, and – after defendant removed the case to federal court – refiled in state court, pleading only $74,000 in damages to avoid federal jurisdiction).

### D. <u>Former Plaintiffs Would Suffer Serious Prejudice Were the Court to Grant the Instant Motion.</u>

Sater asks the Court to dismiss their claims with prejudice pursuant to Fed. R. Civ. P. 41(b), once Former Plaintiffs' voluntary dismissals have been vacated. (*See Kriss II*, ECF No. 130 at 5, 24-208 (pp. 1, 20-24)). "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986); *see also Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 327 (1955); *Samuels v. Northern Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991). "A dismissal with prejudice is res judicata not only as to the

matters actually litigated in the previous action, 'but as to all relevant issues which could have been but were not raised and litigated in the suit.'" *Samuels*, 942 F.2d at 836 (quoting *Nemaizer*, 793 F.2d at 61) (citation omitted).

If granted, the Motion would encourage Sater and his attorneys to seek to assert *res judicata* and/or collateral estoppel in *Kriss I*, as well as in the future state action that Former Plaintiffs would be required to bring in the event that in the future this Court dismisses *Kriss I* for lack of federal subject matter jurisdiction.

## IV. FORMER PLAINTIFFS REQUEST THAT THE COURT GRANT THEM LEAVE TO SEEK SANCTIONS AGAINST SATER AND HIS COUNSEL UNDER FED. R. CIV. P. 11 FOR MAKING THIS GROUNDLESS MOTION

Notwithstanding the fact that this case has been closed, the Court retains jurisdiction over such "collateral" matters as sanctions applications. As the Supreme Court has held, "district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990); *see also Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist., Inc.*, 71 F.3d 1053, 1056 (2d Cir. 1995); *Leiching v. Conrail*, 92-CV-1170, 1997 U.S. Dist. LEXIS 3561, at *11 (N.D.N.Y. Mar. 22, 1997) ("the Second Circuit has accepted the position advanced by the Supreme Court that matters such as sanctions are collateral, and thus, a Court retains jurisdiction to entertain such matters even after termination of the case").

Fed. R. Civ. P. 11 states in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted
by existing law or by a nonfrivolous argument for extending,
modifying, or reversing existing law or for establishing new law;
…

Here, Sater has moved to vacate Former Plaintiffs' notices of voluntary dismissal,

contending that his position is supported by governing case law when the most rudimentary legal

research and analysis of the relevant Second Circuit cases would notify any attorney that not a

single one of these cases supports Sater's motion. Former Plaintiffs believe that Sater and his

attorneys have made the Motion to harass them, to delay their moving forward with their claims

in *Kriss I*, and to needlessly increase the cost of litigation. Accordingly, there exists a basis for

granting Former Plaintiffs sanctions against Sater and his counsel for filing the Motion.

Former Plaintiffs therefore request that the Court grant them leave to file a motion for

sanctions against Sater and his counsel under Fed. R. Civ. P. 11 on such grounds, or, alternately,

to schedule a promotion conference in *Kriss II* to discuss Former Plaintiffs' intention to file such

a motion, at the Court's earliest convenience.

## V.   CONCLUSION

For the reasons set forth above, the Court should deny the Motion.

Dated:  New York, New York                              By: _____
        November 9, 2015                                   J. Evan Shapiro (JS 9903)
                                          Bradley D. Simon
                                          Simon & Partners LLP

                                          *Attorneys for Non-Parties Jody Kriss and*
                                          *Michael "Chu'di" Ejekam*